# 25-2742

## United States Court of Appeals
*for the*
## Second Circuit

In Re: HO WAN KWOK,

*Debtor.*

LUC A. DESPINS, Chapter 11 Trustee,

*Plaintiff-Appellee,*

– v. –

GREENWICH LAND, LLC, HING CHI NGOK,

*Defendants-Appellants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT (NEW HAVEN) IN NO. 3:24-CV-1185

## REDACTED BRIEF AND SPECIAL APPENDIX FOR DEFENDANTS-APPELLANTS

STEPHEN M. KINDSETH
JAMES M. MORIARTY
ZEISLER & ZEISLER, P.C.
*Attorneys for Defendants-Appellants*
10 Middle Street, 15th Floor
Bridgeport, Connecticut 06604
(203) 368-4234

COUNSEL PRESS (800) 4-APPEAL • (390167)

# CORPORATE DISCLOSURE STATEMENT

***In re: Kwok*, No. 25-2742**

Pursuant to Federal Rule of Appellate Procedure 26.1, the appellant Greenwich Land, LLC, by and through its undersigned counsel of record, makes the following disclosure:

Greenwich Land, LLC has no parent corporation and no publicly held company owns 10% or more of its stock.

# TABLE OF CONTENTS


TABLE OF AUTHORIES ........................................................................ iv

JURISDICTIONAL STATEMENT ..................................................................1

STATEMENT OF ISSUES PRESENTED ..........................................................2

STATEMENT OF THE CASE........................................................................3

I. Factual Background ............................................................................ 3

A. Greenwich Land and its Real Estate Transactions........................................3

B. Role of Margaret E. Conboy, Esq. ...............................................................6

C. Role of Emile de Neree ...............................................................................8

II. Procedural History ..............................................................................11

SUMMARY OF ARGUMENT......................................................................14

ARGUMENT ..........................................................................................15

I. The Bankruptcy Court Erred in Certain Evidentiary Rulings......................... 15

A. Applicable Legal Standard. .........................................................................15

B. The Bankruptcy Court Erred in Applying the Law of the Case Doctrine to Factual Determinations Made in Separate Adversary Proceedings to Which the Appellants Were Not Parties. ......................................................16

C. The Bankruptcy Court Erred in Excluding Ngok's Prior Sworn Testimony Concerning Her Son Purchasing Real Estate For Her. ............23

D. The Bankruptcy Court Erred in Drawing Adverse Inferences Based upon the Debtor's and Mei Guo's Invocation of Their Fifth Amendment Right Against Self-Incrimination..............................................27

E. The Bankruptcy Court Erred in Excluding the Portions of de Neree's Testimony Relied upon by the Appellants to Establish His Lack of Personal Knowledge.......................................................................................30

II. Whether Greenwich Land Constituted the Debtor's *Alter Ego* Presented Genuine Issues of Material Fact.......................................................................... 34

A. Applicable Legal Standards.......................................................................35

B. The Traditional Alter Ego Factors Raise Genuine Issues of Material Fact. ....................................................................................................38

C. The Fraud and Similar Injustice Factors Raise Genuine Issues of Material Fact. ..........................................................................................43

D. The Legitimate Expectations of Greenwich Land's Owner Raised Genuine Issues of Material Fact. ........ 44

III. Whether the Debtor Beneficially Owned Greenwich Land Presented Genuine Issues of Material Fact. ........ 46

CONCLUSION ........ 50

## TABLE OF AUTHORIES

**Cases**

*650 Fifth Ave. v. Alavi Found.*, 830 F.3d 66 (2d Cir. 2016) ....................................27
*AHO Enters. v. State Farm Mut. Auto. Ins. Co.*, No. 4:08-cv-4133 (SBA), 2009 U.S. Dist. LEXIS 14373 (N.D. Cal. Feb. 10, 2009)...........................................19
*Allied World Ins. Co. v. Keating*, No. 3:21-cv-00058 (VLB), 2022 U.S. Dist. LEXIS 229106 (D. Conn. Dec. 20, 2022)..........................................................29
Bullard v. Blue Hills Bank, 575 U.S. 496 (2015) ....................................................1
*Geltzer v. Soshkin (In re Brizinova)*, 588 B.R. 311 (Bankr. E.D.N.Y. 2018)...........19
*Higgins v. Smith*, 308 U.S. 473, 60 S. Ct. 355, 84 L. Ed. 406 (1940) .....................48
*In re Dana Corp.*, 574 F.3d 129 (2d Cir. 2009) ....................................................35
*In re Manhattan Investment Fund Ltd.*, 310 B.R. 500 (Bankr. S.D.N.Y. 2002)......20
*In re Motors Liquidation Co.*, 590 B.R. 39 (S.D.N.Y. 2018) .......................... 20, 21
*In re Schultz*, 250 B.R. 22 (Bankr. E.D.N.Y. 2000) ...............................................20
*In re Vaso Active Pharms., Inc.*, 500 B.R. 384 (Bankr. D. Del. 2013) ....................18
*In re W.R. Grace & Co.*, 591 F.3d 164 (3d Cir. 2009) ..........................................18
*Kasiotis v. N.Y. Black Car Operators' Inj. Comp. Fund, Inc.*, 90 F.4th 95 (2d Cir. 2024))..........................................................................................................16
*Kingdom 5-KR-41, Ltd. v. Star Cruises PLC*, No. 1:01-cv-2946 (DLC), 1:01-cv-7670 (DLC), 2004 U.S. Dist. LEXIS 2777 (S.D.N.Y. Feb. 26, 2004).................18
*Krakowski v. Am. Airlines, Inc.*, 610 B.R. 714 (S.D.N.Y. 2019), *aff'd sub nom. In re AMR Corp.*, 834 F. App'x 660 (2d Cir. 2021).............................................22
*LiButti v. United States*, 968 F.Supp. 71 (N.D.N.Y. 1997), *rev'd in part on other grounds*, 178 F.3d 114 (2d Cir. 1999)......................................................... 46, 47
*Liona Corp. v. PCH Associates (In re PCH Assocs.)*, 949 F.2d 585 (2d Cir. 1991)19
*Manichaean Capital, LLC v. Exela Techs., Inc.*, 251 A.3d 694 (Del. Ch. 2021)... 35, 36, 37, 38
*Marvel Characters, Inc. v. Simon*, 310 F.3d 280 (2d Cir. 2002)............................35
*Moise v. Ocwen Loan Servicing LLC (In re Moise)*, 575 B.R. 191 (Bankr. E.D.N.Y. 2017)..........................................................................................................22
*Nat'l Bank v. Case*, 99 U.S. 628, 25 L. Ed. 448 (1878) ........................................47
*Paloian v. Dordevic (In re Dordevic)*, 67 F.4th 372 (7th Cir. 2023)........................46
*Patterson v. Balsamico*, 440 F.3d 104 (2d Cir. 2006) ..........................................26
*Picard, Tr. For SIPA Liquidation of Bernard L. Madoff Inv. Sec. LLC v. JABA Assocs. LP*, 49 F.4th 170 (2d Cir. 2022)..........................................................16
*R.B. Ventures Ltd. v. Shane*, 112 F.3d 54 (2d Cir. 1997) ........................................35
*Russo v. Wyandanch Union Free Sch. Dist.*, No. 23-716, 2024 U.S. App. LEXIS 12404 (2d Cir. May 23, 2024) (Summary Order) ..............................................16
*SEC v. Ahmed*, 783 F. Supp. 3d 652 (D. Conn. 2025) ..................................... 47, 48

*Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC*, 603 B.R. 68 (Bankr. S.D.N.Y. 2019)....................22
*Speeney v. Rutgers*, 369 Fed. App'x. 357 (3d Cir. 2010)....................17
*Stewart v. Beach*, 701 F.3d 1322 (10th Cir. 2012)....................18
*Stichting ter Behartiging van de Belangen van Oudaandeelhouders in het Kapitaal van Saybolt Int'l B.V. v. Schreiber*, 407 F.3d 34 (2d Cir. 2005)....................27
*Trans-Orient Marine Corp. v. Star Trading & Marine, Inc.*, 925 F.2d 566 (2d Cir. 1991)....................23
*United States v. Canamari*, No. 87-5207, 1992 U.S. App. LEXIS 29573 (9th Cir. Nov. 4, 1992)....................18
*United States v. Carr*, 557 F.3d 92 (2d Cir. 2009)....................17
*United States v. Case*, No. 5:06-CV-570 (FJS/CFH); 5:22-CV-856 (FJS/CFH) 2024 U.S. Dist. LEXIS 22705 (N.D.N.Y. Jan. 22, 2024)....................47
*United States v. Maybusher*, 735 F.2d 366 (9th Cir. 1984)....................18
*Virgin Atl. Airways, Ltd. v. Nat'l. Mediation Bd.*, 956 F.2d 1245 (2d Cir. 1992)... 17, 18
*Westerbeke Corp. v. Daihatsu Motor Co.*, 304 F.3d 200, 219 (2d Cir. 2002)... 17, 18

**Statutes**

11 U.S.C. § 158....................1
11 U.S.C. § 544....................36

**Rules**

Fed. R, of App. P. 4....................2
Fed. R. Bank. P. 7003....................19
Fed. R. Bankr. P. 2004....................24
Fed. R. Bankr. P. 7001 *et seq*.....................20
Fed. R. Bankr. P. 8002....................1

## JURISDICTIONAL STATEMENT

On July 2, 2024, in this adversary proceeding commenced by Luc A. Despins, Trustee (the "Trustee" or the "Appellee"), the bankruptcy court entered summary judgment against the appellants, Hing Chi Ngok ("Ngok") and Greenwich Land, LLC ("Greenwich Land" and together with Ngok, the "Appellants") ("Summary Judgment"). SA-0062-64. The Summary Judgment decided the only two causes of action alleged by the Trustee in this adversary proceeding. *Id*. The Appellants had not filed a counterclaim.

On July 10, 2024, the Appellants timely filed their Notice of Appeal to the district court pursuant to 11 U.S.C. § 158(a)(1) and Fed. R. Bankr. P. 8002(a). A-2478-80. The district court had jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a)(1), which grants the district court jurisdiction to hear appeals from final judgments, orders, and decrees entered by bankruptcy courts.

On September 11, 2025, the district court entered its Memorandum of Decision affirming in its entirety Summary Judgment by the bankruptcy court in favor of the Trustee. SA-0065-91. On September 29, 2026, the district court entered its final judgment in accordance with its Memorandum of Decision. SA-0092. The district court's order was final because it fully resolved the issues presented on appeal from the bankruptcy court and left nothing further for the district court to adjudicate. *See Bullard v. Blue Hills Bank*, 575 U.S. 496 (2015). On October 28,

2025, the Appellants filed their Notice of Appeal within the time prescribed by Fed. R, of App. P. 4(a). A-3007. Thus, this Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(d)(1) which provides that "[t]he courts of appeals shall have jurisdiction of appeals from all final decisions, judgments, orders, and decrees entered under subsections (a) and (b) of this section."

## STATEMENT OF ISSUES PRESENTED

1. Whether the bankruptcy court erred in applying the law of the case doctrine to factual determinations made in separate adversary proceedings.

2. Whether the bankruptcy court erred in excluding Ngok's prior testimony concerned her son purchasing real estate for her.

3. Whether the bankruptcy court erred in drawing adverse inferences based on the debtor's and Mei Guo's invocation of the Fifth Amendment right against self-incrimination.

4. Whether the bankruptcy court erred in excluding portions of Emile de Neree's testimony.

5. Whether the bankruptcy court erred in determining that there were no genuine issues of material fact and Greenwich Land constituted the debtor's *alter ego* as a matter of law.

6. Whether the bankruptcy court erred in determining that there were no genuine issues of material fact and the debtor constituted the beneficial owner of Greenwich Land as a matter of law.

## STATEMENT OF THE CASE

### I. Factual Background

Ngok came to the United States from China in 2017. A-1053 (Tr. 16:3-6). Ngok speaks and reads Mandarin. A-1042 (Tr. 5:11-14), A-1046 (Tr. 9:2-8), A-1047 (Tr. 10:1-6), A-1067-68 (Tr. 30:24-31:3); A-1071 (Tr. 34:21-25), A-1072 (Tr. 35:1-6), A-1124 (Tr. 87:3-6), A-1190 (Tr. 7:10-8:6), A-1190-91 (Tr. 8:25-9:5). Other than four words, she cannot speak, read or understand English. A-1042 (Tr. 5:11-14), A-1046 (Tr. 9:2-8), A-1047 (Tr. 10:1-6), A-1067-68 (Tr. 30:24-31:3); A-1071 (Tr. 34:21-25), A-1072 (Tr. 35:1-6), A-1124 (Tr. 87:3-6), A-1190 (Tr. 7:10-8:6), A-1190-91 (Tr. 8:25-9:5). Ngok is and has been at all relevant times married to the debtor in this bankruptcy case, Ho Wan Kwok ("Kwok" or the "Debtor"). A-1062-63 (Tr. 25:7-26:12).

#### A. Greenwich Land and its Real Estate Transactions

Upon coming to the United States in 2017, Ngok resided in New York City in an apartment at The Sherry-Netherland. A-1053 (Tr. 16:3-7), A-1088-89 (Tr. 51:23-52:2). On August 30, 2019, Greenwich Land purchased the property known as 33 Ferncliff Rd., Greenwich, Connecticut. A-708-800. Greenwich Land bought the

property for Ngok to reside in "but due to the location, it was too rural," so Ngok was "scared" and "never reside[d] in this property." A-1058 (Tr. 21:1-7).

Greenwich Land had been duly formed approximately two months before on July 3, 2019, through its Certificate of Formation of Greenwich Land, LLC filed with the Secretary of State for the State of Delaware. A-0533. [redacted]

On the date of Greenwich Land's formation, July 3, 2019, Ngok entered into that certain Limited Liability Company Agreement of Greenwich Land, LLC (the "GL LLC Agreement") identifying her, in paragraph 5, as the sole member and in Schedule A thereto as holding 100% of the membership interest in Greenwich Land. A-0535. The GL LLC Agreement further provided as follows:

> Power of Member. The business and affairs of the Company shall be managed by the Member. The Member shall have the power and authority to do any and all acts necessary or convenient to or for the furtherance of the purposes described herein, including all power and authorities, statutory or otherwise, possessed by members

> of limited liability companies under the laws of the state of Delaware.

A-0535-36.

The GL LLC Agreement also provided that "[t]he Member may from time to time designate one or more individuals as officers of the Company who will have such titles and exercise such powers and duties as are assigned to them from time to time by the Member." A-0536. The GL LLC Agreement then designated Ngok as the President and the individual, Yanping (Yvette) Wang ("Wang") as the Vice President. *Id*. A week later, on July 11, 2019, Ngok entered into that certain Consent of Sole Member Without a Meeting providing Wang with check signing authority. A-2116-17. Also on July 11, 2019, Ngok entered into that certain Consent of Sole Member Without a Meeting on behalf of Greenwich Land appointing the individual, Max Krasner, ("Krasner") to serve as Vice President. A-2119-20.

Ngok picked out the property, 33 Ferncliff Rd., to purchase. A-1058 (Tr. 21:20-22). Her son, Qiang Guo took her to visit the property and showed her the property before it was purchased. A-1058-59 (Tr. 21:8-22:9). To Ngok's knowledge, Kwok did not have any input prior to the purchase of 33 Ferncliff Rd. and she did not discuss the purchase with Kwok. A-1061 (Tr. 24:10-18). On August 19, 2019, Krasner, on behalf of Greenwich Land, entered into that certain Residential Real Estate Sales Agreement and related documents A-713-733. He subsequently entered into Amendment to Contract of Sale on behalf of Greenwich Land. A-0764.

Ultimately, her son, Qiang Guo, purchased the property for his mother, Ngok. A-1058 (Tr. 21:8-16), A-1059 (Tr. 22:7-14). While Ngok's son purchased the property for her, Ngok testified that she did not know who actually paid for the property; meaning, she did not know the actual source of the funds used to acquire 33 Ferncliff Rd. A-1059 (Tr. 22:7-14), A-1090 (Tr. 53:15-18). At closing, Krasner signed the Escrow Agreement on behalf of Greenwich Land which appears to be on the only document signed by the buyer at closing (other than those signed by the buyer's attorney). A-0774. Ngok thereafter decided to sell 33 Ferncliff Road and asked her son to sell it. A-1151 (Tr. 114:21-23).

Ngok testified that her husband did not have any input with regard to what house to purchase when she was considering buying 373 Taconic Rd. A-1065 (Tr. 28:3-6). On February 14, 2020, Krasner on behalf of Greenwich Land entered into that certain Residential Real Estate Sales Agreement and related documents to purchase 373 Taconic Rd. A-802-33. Thereafter, Ngok's son purchased the property for her. A-1066 (Tr. 29:11-13). Once again, however, Ngok acknowledged that she did not know the actual source of funds to purchase the property. A-1071 (Tr. 34:3-25), A-1072 (Tr. 35:7-9), A-1090 (Tr. 53:15-18).

**B. Role of Margaret E. Conboy, Esq.**

Originally, in connection with the purchase of 33 Ferncliff Rd., Attorney Conboy entered into a retention agreement dated August 16, 2019, on behalf of her

law firm and Krasner entered into the retention agreement on behalf of the client, Golden Spring (New York) Limited ("Golden Spring"). A-0953-54 (Tr. 23:12-24:1), A-1030-31.[1]

In response to the question, [redacted] Attorney Conboy responded, [redacted] A-0954 (Tr. 24:6-9). In response to the statement by Trustee's counsel that [redacted] Attorney Conboy answered:

> [redacted]

*Id*. (Tr. 24:13-22).

In response to counsel's assertion that [redacted] Attorney Conboy states again [redacted] followed with [redacted] A-0957 (Tr. 27:4-10). Counsel for the Trustee then

---

[1] Procedurally, the Trustee conducted this examination pursuant to Fed. R. Bankr. P. 2004 before the commencement of the instant adversary proceeding. No evidence was submitted that either Attorney Conboy or the Trustee provided notice of the examination Attorney Conboy's clients about whom she would be testifying. [redacted]

asserted that [redacted] and Attorney Conboy responded [redacted] A-0957 (Tr. 27:15-18).

The Trustee's counsel asked Attorney Conboy [redacted] she answered that [redacted] A-0958 (Tr. 28:5-9). When asked, [redacted] Attorney Conboy answered, [redacted] A-0984 (Tr. 54:10-15).

Despite having consistently testified that [redacted] Conboy, after a fifteen minute recess at the end of her examination by the Trustee's counsel, when asked if she had [redacted] she said [redacted] A-0120 (Tr. 90:6-12). The Trustee's counsel then asked whether she had [redacted] and Attorney Conboy answered [redacted] *Id*. (Tr. 90:13-16).

**C. Role of Emile de Neree**

Emile de Neree ("de Neree") is a licensed real estate salesperson. A-1796 (Tr. 8:10-13). At the times relevant here, de Neree worked for Coldwell Banker Residential Brokerage ("Coldwell Banker"). A-1796-97 (Tr. 8:23-9:3). In approximately November of 2018, Krasner began working with de Neree to locate a property in Greenwich that Kwok may "have an interest in seeing" or that "might interest" Kwok. A-1924-25 (referred to in the texts as "Miles"). On cross-examination at his deposition, de Neree conceded that his belief that the "Miles" was the actual buyer "as far as [he] was concerned" was an "assumption" on his part. A-1876-77 (Tr. 88:20-89:5).

Krasner signed the Exclusive Right to Represent Buyer Agreement with Coldwell Banker on behalf of the identified buyer "Hudson Diamond," not Kwok. A-1871-72 (Tr. 83:25-84:25), A-1919-20. The document is dated January 13, 2019. *Id*. While de Neree's name is printed on the signature line below Coldwell Banker, he did not and no one else signed the agreement for Coldwell Banker. A-1919-20. De Neree did not participate as a broker in any transaction that Hudson Diamond NY LLC ("HDNY") participated in. A-1873 (Tr. 85:6-9).

De Neree did not testify that he had any involvement in Greenwich Land's purchase and subsequent sale of 33 Ferncliff Rd. The Residential Real Estate Sales Agreement for the purchase of 33 Ferncliff Rd. by Greenwich Land dated August

20, 2019, identifies the buyer's broker as Sotheby's International Realty, not Coldwell Banker. A-0716.

With respect to 373 Taconic Rd., de Neree testified that when he showed the property, Kwok was present with his wife, daughter and son. A-1880 (Tr. 92:2-15). They all looked at the property and walked around both the inside of the house and the grounds. A-1890-91 (Tr. 102:4-103:2). During this time, they had conversations in a "Chinese language whether that be Mandarin or Cantonese," and de Neree did not understand what was being said. A-1891-92 (Tr. 103:3-104:11). All of this happened before the closing of the purchase of 373 Taconic Rd. A-1892 (Tr. 104:13-18). On cross-examination, de Neree further conceded that he had "no knowledge of who provided the money to purchase" 373 Taconic Rd. and did not know the identity of any member of Greenwich Land. A-1875-76 (Tr. 87:24-88:2), A-1887 (Tr. 99:6-20). De Neree also admitted that he did not know the source of funds used to pay for 373 Taconic Rd. A-1875-76 (Tr. 87:24-88:4); *see also* A-1877-78 (Tr. 89:23-90:14).

The first time de Neree spoke with someone from Paul Hastings regarding Kwok or the bankruptcy or any property, including but not limited to 373 Taconic Rd., was when the Trustee personally contacted him and said, "your name has come up as having done business with this person Miles." A-1858 (Tr. 70:7-24). De Neree has previously represented a partner of Paul Hastings in connection with a potential real estate transaction, and he considers this individual to be a "friend and client."

A-1889 (Tr. 101:7-11). De Neree also testified that this Paul Hasting's partner "has definitely promoted me and helped me get other listings or buyers." *Id*. (Tr. 101:12-18). De Neree also worked on transactions with the brother of this Paul Hasting's partner. *Id*. (Tr. 101:19-22).

## II. Procedural History

The Debtor filed his voluntary petition for bankruptcy relief under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. § 101-1530 ("Bankruptcy Code"), on February 15, 2022. A-2596-2609. On July 8, 2022, the bankruptcy court entered its Order Granting Appointment of Chapter 11 Trustee which granted the appointment of Luc A. Despins to serve as trustee pursuant to Bankruptcy Code § 1104(d). A-2718.

The Trustee commenced this adversary proceeding on March 27, 2023, by filing his Complaint of Chapter 11 Trustee for Estate of Ho Wan Kwok Seeking (I) Declaratory Judgment that Greenwich Land LLC is Alter Ego of Debtor, and (II) Related Relief. The Trustee alleged in his First Claim that Greenwich Land constituted the *alter ego* of the Debtor and in the Second Claim that the Debtor equitably owned Greenwich Land. A-0001-28. Based on the *alter ego* theory, the Trustee further sought determinations by the bankruptcy court that: (i) "any and all of the assets held by Greenwich Land at any time prior to the Debtor's petition date of February 15, 2022 constituted property of the Debtor"; and (ii) "any and all assets

held by Greenwich Land at any time from the date of the Debtor's February 15, 2022 chapter 11 petition to the present constituted and constitute, as applicable, property of the Debtor's chapter 11 estate." A-0026-27.

On May 9, 2023, the Appellants filed the Defendants' Answer and Affirmative Defenses to the Chapter 11 Trustee's Adversary Complaint. A-0032-43. The Appellants denied many of the Trustee's material factual allegations against them and asserted affirmative defenses. A-0032-40

On October 10, 2023, the Trustee filed his Motion of Chapter 11 Trustee for Estate of Ho Wan Kwok for Summary Judgment with Respect to Alter Ego and Equitable Ownership Claims. A-0049-58. In support thereof, the Trustee filed, *inter alia*, his Local Rule 56(a)1 Statement of Undisputed Material Facts in Support of Trustee's Motion For Summary Judgment and Declaration of Douglass Barron in Support of Memorandum of Law in Support of Motion of Chapter 11 Trustee for Estate of Ho Wan Kwok for Summary Judgment with Respect to Alter Ego and Equitable Ownership Claims. A-0089-102.

On November 14, 2023, the Appellants filed, *inter alia*, their Defendants' Local Rule 56(a)(2) Statement of Facts in Opposition to Summary Judgment and Additional Material Facts, A-0355-87, and Declaration of Christopher J. Major. A-0103-105. In response to the arguments made by the Appellants, on December 8, 2023, the Trustee filed, *inter alia*, Supplemental Declaration of Douglass Barron in

Support of Reply in Support of Motion of Chapter 11 Trustee for Estate of Ho Wan Kwok for Summary Judgment with Respect to Alter Ego and Equitable Ownership Claims ("Supp. Barron Decl."). A-0524-531.

On January 15, 2024, the Appellants' filed their Defendants Greenwich Land, LLC and Hing Chi Ngok's Motion to Strike Chapter 11 Trustee's New Evidence on Reply and His Improper Reply to Defendants' Local Rule 56(a)(2) Statement of Facts in Opposition to Summary Judgment and Additional Material Facts (ECF 112). A-2284-87. On January 7, 2024, the Trustee filed his Trustee's Opposition to Defendant Greenwich Land, LLC and Hing Chi Ngok's Motion to Strike. A-2288-95.

On January 9, 2024, the bankruptcy court heard the Trustee's motion for summary judgment and took the matter under advisement. On July 2, 2024, the bankruptcy court entered its Memorandum of Decision and Order Granting Motion for Summary Judgment (the "Summary Judgment Decision"), SA-0001-61, and separately its Summary Judgment. SA-0062-64. On September 30, 2024, the Trustee filed his motion seeking bankruptcy court authority and approval for the sale of 373 Taconic Rd. in exchange for the purchase price of Six Million Nine Hundred Thousand Dollars ($6,900,000). A-2739-87. Also on October 15, 2024, the bankruptcy court entered its order authorizing and approving the sale of 373 Taconic Rd. A-2788-801.

As set forth more fully above in the Jurisdictional Statement, the Appellants timely appealed the Summary Judgment to the district court and the district court thereafter affirmed the bankruptcy court's decision. A-0065-91, A-0092.

## SUMMARY OF ARGUMENT

This appeal arises from the bankruptcy court's erroneous grant of summary judgment determining that, at all times both before and after the commencement of this bankruptcy case, Greenwich Land constituted the *alter ego* of the Debtor under applicable Delaware law, and that the Debtor equitably owned Greenwich Land. In reaching its conclusion, the bankruptcy court erroneously applied the law of the case doctrine to adopt as purportedly "undisputed facts" the bankruptcy court's prior determinations entered in separate adversary proceedings based upon, in one instance, a default judgment and, in another, a preliminary injunction. These decisions did not establish law of the case in this adversary proceeding especially when considering that Greenwich Land and its sole member, Ngok, were not parties to those separate adversary proceedings.

The bankruptcy court also erroneously determined that Ngok and Greenwich Land had "abandoned" Ngok's testimony concerning her son. Her son's purchase of certain properties is perfectly consistent with Ngok not knowing the actual source of funding. The subject interrogatory answers were also subject to pending objections.

The bankruptcy court also erroneously drew adverse inferences against the Appellants based on the Debtor's and Mei Guo's invocation of their Fifth Amendment right against self-incrimination. The bankruptcy court inferred from such Fifth Amendment invocation the absence of dispute as to the factual predicates posed to then conclude that such factual predicates were "undisputed."

Appropriately considering the record presented, the bankruptcy court should have concluded that the multi-factored, fact-intensive and equity-balancing standard under Delaware law to find an *alter ego* based on reverse veil piercing presented genuine issues of material fact. Rather than viewing the evidence in favor of the Appellants as the bankruptcy court was required to do, the bankruptcy court improperly resolved disputed factual issues, drew inferences and weighed credibility—functions reserved exclusively for the trier of fact—against the non-movants. In doing so, the bankruptcy court departed from well-established principles governing summary judgment and deprived the Appellants of their right to have disputed issues of material fact decided at trial. Summary judgment should be reversed, and this matter should be remanded to the bankruptcy court for further proceedings.

## ARGUMENT

### I. The Bankruptcy Court Erred in Certain Evidentiary Rulings.

#### A. Applicable Legal Standard.

In *Russo v. Wyandanch Union Free Sch. Dist.*, No. 23-716, 2024 U.S. App. LEXIS 12404, at *2-3 (2d Cir. May 23, 2024) (Summary Order), this Court recently reiterated the standards applicable to a party's appellate challenge to evidentiary rulings underling the lower court's grant of summary judgment, as follows:

> "When a party challenges the district court's evidentiary rulings underlying a grant of summary judgment, we undertake a two-step inquiry." *Picard, Tr. For SIPA Liquidation of Bernard L. Madoff Inv. Sec. LLC v. JABA Assocs. LP*, 49 F.4th 170, 180-81 (2d Cir. 2022). "First, we review the trial court's evidentiary rulings, which define the summary judgment record," for abuse of discretion; "[o]nly admissible evidence need be considered by the trial court in ruling on a motion for summary judgment." *Id.* at 181. "A district court abuses its discretion when it bases its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence, or render[s] a decision that cannot be located within the range of permissible decisions." *Id*. Second, "with the record defined, we review the trial court's summary judgment decision de novo, construing all evidence in the light most favorable to the nonmoving party," *id*., "and will affirm when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," *Kasiotis v. N.Y. Black Car Operators' Inj. Comp. Fund, Inc.*, 90 F.4th 95, 98 (2d Cir. 2024)).

### B. The Bankruptcy Court Erred in Applying the Law of the Case Doctrine to Factual Determinations Made in Separate Adversary Proceedings to Which the Appellants Were Not Parties.

The bankruptcy court erred in holding that "its prior determinations that Golden Spring [(New York) Limited ("Golden Spring")] and HK International Funds Investments (USA) Limited, LLC ('HK USA') are *alter egos* of the Individual

Debtor and the Saraca Media Group, Inc. ('Saraca') is related to the Individual Debtor's media ventures," constitute law of the case and establish "undisputed facts" in support of summary judgment in favor of the Trustee. *See* SA-0021. By applying law of the case in conflict with its essential elements, the bankruptcy court imposed an "erroneous view of the law." Alternatively, by applying law of the case in a manner antithetical to its fundamental principles, the bankruptcy court's decision "cannot be located within the range of permissible decisions." Either way, the bankruptcy court abused its discretion.

The law of the case doctrine derives from "considerations of fairness to the parties, judicial economy, and the societal interest in finality." *United States v. Carr*, 557 F.3d 92, 102 (2d Cir. 2009). "[W]here litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." *Virgin Atl. Airways, Ltd. v. Nat'l. Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992) (citation and internal quotation marks omitted). Thus, "the 'law of the case' doctrine may be properly invoked only if the parties had a 'full and fair' opportunity to litigate the initial determination." *Westerbeke Corp. v. Daihatsu Motor Co.*, 304 F.3d 200, 219 (2d Cir. 2002) (internal quotation marks and citation omitted); *see also Speeney v. Rutgers*, 369 Fed. App'x. 357, 360 (3d Cir. 2010) (citing *Westerbeke* for the proposition that the "law of the case doctrine only precludes relitigation of issues that the parties had a full and fair opportunity to

litigate"); *Kingdom 5-KR-41, Ltd. v. Star Cruises PLC*, No. 1:01-cv-2946 (DLC), 1:01-cv-7670 (DLC), 2004 U.S. Dist. LEXIS 2777, at *19-20 (S.D.N.Y. Feb. 26, 2004) (same); *In re Vaso Active Pharms., Inc.*, 500 B.R. 384, 399 (Bankr. D. Del. 2013) ("[i]n the interests of finality and judicial economy, the law of the case doctrine precludes relitigation of issues in which parties have already had a full and fair opportunity to litigate").

Accordingly, the law of the case doctrine cannot be applied to a person who was not a party to the prior decision relied upon to establish the claimed "law of the case." Such non-party did not have "a full and fair opportunity to litigate the initial determination"; they were not one of the litigants who had previously "battled for the court's decision" and now seek to re-litigate that issue. *See Westerbeke Corp.*, 304 F.3d at 219; *see also Virgin Atl. Airways, Ltd.*, 956 F.2d at 1255; *Stewart v. Beach*, 701 F.3d 1322, 1328 n.6 (10th Cir. 2012) (holding that law of the case cannot apply to a defendant who was not before the court in the prior matter); *In re W.R. Grace & Co.*, 591 F.3d 164, 174 (3d Cir. 2009) (explaining that application of the law of the case doctrine requires "the same parties and issues"); *United States v. Maybusher*, 735 F.2d 366, 370 (9th Cir. 1984) (explaining that law of the case "typically applies to the same case when the parties in the subsequent proceeding were also the parties to the former appellate decision"); *United States v. Canamari*, No. 87-5207, 1992 U.S. App. LEXIS 29573, at *3-4 (9th Cir. Nov. 4, 1992) ("It is

axiomatic that law of the case requires an identity of the parties to be bound."); *AHO Enters. v. State Farm Mut. Auto. Ins. Co.*, No. 4:08-cv-4133 (SBA), 2009 U.S. Dist. LEXIS 14373, at *7 (N.D. Cal. Feb. 10, 2009) ("[A] district court's decision is only binding on itself if it establishes the law of the case as it pertains to rulings for same parties based on same patterns of facts or events."); *Geltzer v. Soshkin (In re Brizinova)*, 588 B.R. 311, 323 (Bankr. E.D.N.Y. 2018) ("As to the question of identity of the parties, courts consistently find that this is necessary for [law of the case] doctrine to apply.") (citations omitted).

Consistent with those principles, this Court in *Liona Corp. v. PCH Associates (In re PCH Assocs.)*, 949 F.2d 585, 592 (2d Cir. 1991), recognized that "[w]hile the [law of the case] doctrine is ordinarily applied in later stages of the same lawsuit, it also has application to different lawsuits between the same parties." (Citation omitted.) The inverse, as reflected in the above authority, is also true: law of the case does not apply to separate proceedings among distinct parties.

Although the separate adversary proceedings relied upon by the Trustee and the bankruptcy court had been commenced within the same bankruptcy case, they constituted separate and distinct civil actions. *See* Fed. R. Bank. P. 7003 (incorporating by reference Fed. R. Civ. P. 3 which provides that "[a] civil action is commenced by filing a complaint with the court"). The Federal Rules of Bankruptcy Procedure incorporate by reference in large part the Federal Rules of Civil Procedure

and make them applicable to adversary proceedings. *See* Fed. R. Bankr. P. 7001 *et seq*.

The district court's decision in *In re Motors Liquidation Co.*, 590 B.R. 39, 62-63, 66-67 (S.D.N.Y. 2018), relied upon by the bankruptcy court, SA-0020, is readily distinguishable. While the district court in *In re Motors Liquidation Co.* noted that the plaintiffs "cite no precedent suggesting that a court is obligated to revise a prior ruling on a question of law merely because certain parties did not participate in the earlier ruling," the district court then addressed the authority relied upon by the plaintiffs. *Id*. at 62-63. The district court recognized that law of the case did not apply in those cases because, in one decision, the "earlier ruling … arose in an action to which the Trustee was not a party at all," and the "same was true" in the other cited decision. *Id*. at 62 (citing *In re Manhattan Investment Fund Ltd.*, 310 B.R. 500, 513 (Bankr. S.D.N.Y. 2002), and *In re Schultz*, 250 B.R. 22, 33-35 (Bankr. E.D.N.Y. 2000)). The district court in *In re Motors Liquidation Co.* concluded that two of the plaintiffs were bound by law of the case with respect to the bankruptcy court's prior legal determination entered in 2015 because they "were parties to the case – that is, the broader bankruptcy proceedings – from its inception and declined to appeal [the applicable decision which entered in the bankruptcy case] to protect their rights." *Id*. at 63.

As to the remaining plaintiff, Kaitlyn Reichwaldt, the district court acknowledged that she had not been a party to the bankruptcy case at the time of the earlier decision in 2015 and had not received adequate notice. *Id*. at 66. Although the district court made the ambiguous point that "the law-of-the-case doctrine does not turn on whether all parties to a proceeding participated in the earlier resolutions of a legal issue," the gravamen of the district court's decision with respect to Reichwaldt was that she was barred by *res judicata* arising from a subsequent decision entered by the bankruptcy court in 2017. *Id*. at 66-67. As to that later decision, Reichwaldt had received notice of an order to show cause issued in December of 2016 which "was more than sufficient to put [her] on notice that the [subsequent decision] might address [her issue]." *Id*. at 67. Notwithstanding, Reichwaldt "did not file any papers, appear at the hearing [on the Order to Show Cause] or appeal the decision." *Id*. A contrary reading of *In re Motors Liquidation Co.* would render it in direct conflict with the overwhelming weight of authority including decisions entered by this Court.

While other courts in this district have restated the general concept stated *In re Motors Liquidation Co.* and relied upon by the bankruptcy court, these cases are equally distinguishable because they either involved the same parties or issues of law that had precedential weight regardless. *Krakowski v. Am. Airlines, Inc.*, 610 B.R. 714, 724 (S.D.N.Y. 2019), *aff'd sub nom. In re AMR Corp.*, 834 F. App'x 660

(2d Cir. 2021) (same parties); *Moise v. Ocwen Loan Servicing LLC (In re Moise)*, 575 B.R. 191, 205 (Bankr. E.D.N.Y. 2017) (same parties); *Sec. Inv. Prot. Corp. v. Bernard L. Madoff Inv. Sec., LLC*, 603 B.R. 682, 700 (Bankr. S.D.N.Y. 2019) (issues of law presented and "the Court would follow earlier precedent for the reasons they explained").

Here, the Trustee sought to apply law of the case to satisfy his burden of proof by relying on factual determinations made in separate adversary proceedings to which the Appellants were not parties. The Trustee sought to avoid having to submit any evidence on those issues in support of the Trustee's motion for summary judgment. The bankruptcy court and the district court relied heavily on the absence of contrary evidence submitted by the Appellants to disprove the Trustee's contention separately decided by the bankruptcy court upon a default judgment, a summary judgment presently on appeal to this Court, or a preliminary injunction. But it was not the Appellants' burden to disprove the Trustee's unsupported factual contentions and law of the case cannot be applied based on factual determinations made in separate proceedings to which the Appellants were not parties. This is especially true when the prior factual "determinations" were not actually or only preliminarily litigated.

The Trustee's causes of action depend entirely upon the Trustee's theory that the Debtor engaged in an international "shell game" among countless *alter egos*.

A-0003 (¶ 11). The Trustee is not relieved of his burden of proof to establish the "shell game" because he separately obtained a default judgment, summary judgment and a preliminary injunction against other parties. The burden of proof did not shift to the Appellants to disprove the Trustee's unsubstantiated "shell game" theory to avoid the application of law of the case. The doctrine of law of the case does not apply to these circumstances. The bankruptcy court abused its discretion in applying law of the case to the default judgment entered against Golden Spring, the summary judgment decision entered against HK USA, and the preliminary injunction against the Debtor to establish "undisputed facts" against the Appellants.

### C. The Bankruptcy Court Erred in Excluding Ngok's Prior Sworn Testimony Concerning Her Son Purchasing Real Estate For Her.

The bankruptcy court held that it "will not consider [Ngok's] prior testimony regarding her son in determining the undisputed material facts for the purposes of summary judgment." A-0031. In support of excluding all Ngok's testimony regarding her son, the bankruptcy court cited *Trans-Orient Marine Corp. v. Star Trading & Marine, Inc.*, 925 F.2d 566, 572-73 (2d Cir. 1991) ("*Trans-Orient*"). *Trans-Orient* stands for the proposition that "a party may not, in order to defeat a summary judgment motion, create a material issue of fact by submitting an affidavit disputing his own prior sworn testimony." *Id*. This legal principle did not apply because the Appellants were not "creating a material issue of fact" with new

evidence that contradicted their own prior testimony. They were offering Ngok's prior testimony in opposition to summary judgment.

The Appellants did not prepare and submit an affidavit by Ngok in response to summary judgment to contradict Ngok's prior testimony. Ngok's testimony offered by the Appellants and excluded by the bankruptcy court had taken place on January 5, 2023, prior to the motion for summary judgment and even prior to the subject adversary proceeding (commenced on March 27, 2023). A-1038. Furthermore, the Trustee himself submitted the Rule 2004 examination transcript in support of his motion for summary judgment, A-1038-187 (Ex. 20 to Supp. Barron Decl). The legal principle enunciated by *Trans-Orient* simply did not apply to justify precluding Ngok's testimony in opposition to summary judgment. *See* 925 F.2d 566, 572-73.

Moreover, Ngok's testimony during her examination pursuant to Fed. R. Bankr. P. 2004 was not inconsistent with the Appellants' subsequent positions. Ngok consistently testified during her Rule 2004 examination that her son had arranged for funding but that she was unaware of the precise source of funds. A-1059 (Tr. 22:7-14), A-1066 (Tr. 29:11-18), A-1072 (Tr. 35:7-9), A-1099-100 (Tr. 62:24-63:2), A-1100 (Tr. 63:17-22). Despite having extensively testified about her son's involvement in Greenwich Land, during the subsequent deposition of Ngok by the Trustee, the Trustee's counsel never asked any further questions about Ngok's son

role and so it should come as no surprise that she did not restate her prior testimony. *See, generally*, A-1189-1237. In the only instance when the son is mentioned during the subsequent deposition, Ngok answered the open question, [redacted] and then clarified that [redacted] A-1211 (Tr. 92:17-22).

In excluding Ngok's prior testimony, the bankruptcy court concluded that "the Greenwich Parties do not dispute that they failed to include Mr. [Qiang] Guo among their initial disclosures as a person with relevant knowledge." SA-0023. The bankruptcy court engaged in no further analysis concerning the alleged failure to disclose. Rule 26(a)(1)(A) of the Federal Rules of Civil Procedure requires each party to provide to the other party:

> (i) the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—***that the disclosing party may use to support its claims or defenses***, unless the use would be solely for impeachment;

Fed. R. Civ. P. 26(a)(1)(A) (emphasis added).

Ngok and Greenwich Land did not attempt to use Ngok's son's testimony or affidavit in opposition to summary judgment. There is nothing in the record to establish that Ngok and Greenwich Land intended to use his testimony to support their claims or defenses. Ngok offered her own prior testimony concerning her

knowledge and belief concerning her son's role in Greenwich Land (which the Trustee included in his original submissions in support of summary judgment). The Trustee and the bankruptcy court also did not even attempt to establish any of the factors considered to determine whether to exclude evidence based on a prior failure to disclose pursuant to Rule 26(a). *See Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006).[2]

With respect to the Appellants' interrogatory answers, they were subject generally to objections based on their being:

> [V]ague, ambiguous, unreasonably cumulative, duplicative (of each other, or Bankruptcy Rule 2004 discovery requests the Trustee has already served on Greenwich Land in Bankruptcy Rule 2004 discovery, as discussed below), insufficiently particularized, capable of multiple interpretations and/or would require Greenwich Land to speculate as to the nature and/or scope of information sought.

A-0543 (¶ 4). In particular, concerning the "source of all funds used to acquire 33 Ferncliff Rd., 373 Taconic Rd., and any other property or Assets that Defendants

[2] Applying these factors, the Appellants were not required to disclose Qiang Guo since they did not intend to rely on his testimony. Ngok's prior testimony was critical to the Appellants' opposition to summary judgment. The Trustee was not prejudiced by her prior testimony since he (through his counsel) actually conducted the examination, subsequently deposed her and submitted her prior testimony with his motion for summary judgment. There was no need for a continuance since, again, the Trustee was fully aware of the prior testimony and had already deposed Ngok a second time in this adversary proceeding. *See Patterson*, 440 F.3d at 117 (setting forth factors relevant to consider whether to exclude testimony based on a prior non-disclosure).

contend are owned or controlled by Greenwich Land," the Appellants objected that the interrogatory was "overly broad, unduly burdensome, and vague." A-0548-49. Notwithstanding, the Appellants provided a response "subject to this objection." *Id*. The Trustee never sought an adjudication with respect to these objections.

Thus, the bankruptcy court abused its discretion in excluding Ngok's testimony that her son had purchased 33 Ferncliff Rd. and 373 Taconic Rd. for her. It should have been for the trier of fact to assess the credibility of Ngok's testimony in the context of entire record submitted at trial.

### D. The Bankruptcy Court Erred in Drawing Adverse Inferences Based upon the Debtor's and Mei Guo's Invocation of Their Fifth Amendment Right Against Self-Incrimination.

The bankruptcy court below recognized that "an adverse inference on the basis of an invocation of Fifth Amendment rights against self-incrimination is improper at summary judgment." SA-0018 (citing *Stichting ter Behartiging van de Belangen van Oudaandeelhouders in het Kapitaal van Saybolt Int'l B.V. v. Schreiber*, 407 F.3d 34, 55 (2d Cir. 2005); *see also*, *650 Fifth Ave. v. Alavi Found.*, 830 F.3d 66, 93 n.25 (2d Cir. 2016) (explaining that Fifth Amendment invocations notwithstanding, "a court may not draw negative inferences against a nonmoving party on a summary judgment motion."). Notwithstanding, the bankruptcy court proceeded to do exactly what it acknowledged it could not: draw adverse inferences against the Appellants based upon the Debtor's and Ms. Guo's invocation of their

Fifth Amendment rights against self-incrimination. And the bankruptcy court drew these adverse inferences not against the Debtor and Ms. Guo, but against Ngok and Greenwich Land.

The bankruptcy court did not characterize the factual conclusions drawn as "adverse inferences." Instead, the bankruptcy court re-characterized its reliance, claiming that "the Individual Debtor's and Ms. Guo's invocation of the Fifth Amendment has limited relevance insofar as it establishes they do not dispute the testimony of Ms. Ngok, Ms. Conboy and Mr. de Neree." A-0018-19.

The bankruptcy court proceeded to find as "undisputed facts" instances where in response to questions posed by the Trustee's counsel concerning factual contentions critical to the Trustee's case, the Debtor and Ms. Guo asserted their Fifth Amended right against self-incrimination. SA-0027-28 (¶¶ 11-12), SA-0028 (¶ 15), SA-0031 (¶¶ 34-35), SA-0034 (¶¶ 48, 51-52), SA-0037-38 (¶ 73), SA-0040 (¶ 86). Then, in holding that no genuine issue of material fact existed as to these critical contentions, the bankruptcy court relied upon the fact that the Debtor or Ms. Guo or both "did not dispute" the underlying allegations. SA-0048 ("[p]rovided the opportunity, the Individual Debtor did not dispute his control over Mr. Krasner"); SA-0049 ("[t]he Individual Debtor and Ms. Guo do not dispute the testimony of Attorney Conboy and Mr. de Neree"); SA-0050 ("[t]he record owner of HDNY, Ms. Guo, did not dispute that her father, the Individual Debtor, funded the purchase of

the Ferncliff Property"); *Id*. ("Ms. Guo did not dispute that the Individual Debtor caused HDNY to transfer the funds").

These allegations relied upon by the Trustee had been undermined by each witness's contradictory testimony or acknowledgments that they did not know or had made an "assumption." A-0931-1028; A-1876-77 (Tr. 88:20-89:5). The bankruptcy court relied upon the inferred absence of dispute by the Debtor and Ms. Guo to conclude that these allegations were "undisputed."

Contrary to the bankruptcy court's re-characterization, these are adverse inferences against the Appellants based upon the Debtor's and Ms. Guo's Fifth Amendment invocation. Otherwise, there would have been no reason for the bankruptcy court to include the "do not dispute" point repeatedly in support of summary judgment. Such adverse inferences are not permitted to support summary judgment. *See Allied World Ins. Co. v. Keating*, No. 3:21-cv-00058 (VLB), 2022 U.S. Dist. LEXIS 229106, at *15 (D. Conn. Dec. 20, 2022) (noting that the court was "prohibited from drawing an adverse inference against every fact [the individual defendant] did not deny as a result of invoking his Fifth Amendment rights against self-incrimination during his deposition" and denying plaintiffs' motion for summary judgment, without any opposition from the defendants, because the motion relied to a large extent on asserted adverse inferences that the court could not draw).

### E. The Bankruptcy Court Erred in Excluding the Portions of de Neree's Testimony Relied upon by the Appellants to Establish His Lack of Personal Knowledge.

It was undisputed below and de Neree even acknowledged during his deposition that he did not understand Mandarin and then could not know what Ngok and her son, daughter and husband were discussing when viewing 373 Taconic Rd. before Greenwich Land purchased it. 103:3-104:18. The bankruptcy court excluded this fact and the additional related facts offered by the Appellants because, according to the bankruptcy court, "the Court will not speculate as to the content of those conversations at summary judgment and the proposed additional facts on this issue are, therefore, irrelevant." SA-0024. The Appellants offered these facts to establish that de Neree lacked personal knowledge of the matters to which he testified and that de Neree's beliefs were nothing more than speculation on his part. A-0404. So, the bankruptcy court excluded those facts that established that de Neree lacked personal knowledge on the basis that their significance would only matter if the bankruptcy court engaged in speculation, to then admit and find as "undisputed facts" de Neree's rampant speculation. In doing so, the bankruptcy court abused its discretion.

On cross-examination, de Neree acknowledged his lack of personal knowledge:

Q You had no knowledge of where the funds came from?

A No. I mean, they came from the buyer and that's, you know, as far as I was concerned it was Miles.

Q Mr. de Neree, as I said at the top of this – of my questioning; I want to avoid you speculating. So when you say as far as you were concerned it was Miles, that was your assumption, right?

A Correct.

A-1876-77 (88:20-89:5). The Appellants' proposed additional material facts at issue here included the following:

> 30. Emile de Neree testified that [Ngok] visited the Taconic Road property with her children before Greenwich Land purchased it. De Neree Dep. Tr. (Ex. 48 to Barron Declr.), 69:7- 23.
>
> 31. Mr. de Neree does not speak Mandarin. *Id*., 69:24-25.
>
> …
>
> 34. Mr. de Neree testified that he has no knowledge about the source of funds used to purchase the Taconic Road property or to pay his firm a commission, and that he did no diligence concerning that issue. *Id*., 86:3-90:14.
>
> …
>
> 38. Mr. de Neree testified that Greenwich Land made the offer to purchase the Taconic Road property. *Id*., 49:2-50:5.
>
> 39. Mr. de Neree testified he never asked about any relationship between Greenwich Land and the Debtor. *Id*., 50:13-5:90.
>
> 40. Mr. de Neree testified that he did not do any due diligence to determine the source of funds used to purchase the Taconic Road property. *Id*., 86:3-90:14.
>
> 41. As Mr. de Neree testified: "That was not my function. Once we have an accepted offer, all details are negotiated and discussed between the two lawyers. The selling or seller's attorney and the

> buyer's attorney. And so I was left out of any discussion as to where the funds were coming from and how and all that stuff." *Id*., 86:3-16.
>
> …
>
> 43. Mr. de Neree conceded on cross examination that his statement that the Debtor was involved was just his assumption. *Id*., 88:25-89:5.
>
> 44. Mr. de Neree testified that he texted with Max Krasner and never with the Debtor. *Id*., 91:9-92:1.
>
> 45. Mr. de Neree testified that Mrs. Guo and her children visited the Taconic Road property before Greenwich Land purchased it. *Id*., 92:2-15.
>
> 46. According to Mr. de Neree, Greenwich Land is the only purchaser of the Taconic Road property. *Id*., 100:4-15.
>
> 47. Mr. de Neree received a copy of the purchase and sale contract, it listed Greenwich Land as the buyer, and he never saw another buyer listed. *Id*., 100:4-15.
>
> 48. Mr. de Neree does not know the identity of the member or members of Greenwich Land. *Id*., 99:6-20.
>
> 49. Mr. de Neree testified that Mrs. Guo and her family toured the Taconic Road property, including the grounds and the interior, and spoke to one another in Chinese (he did not know whether it was Mandarin or Cantonese). *Id*., 102:4-104:11.

A-0383-85.

Excluding the forgoing portions of de Neree's testimony, the bankruptcy court then relied upon separate portions of de Neree's testimony to establish as "undisputed facts" that: (i) the Individual Debtor was willing to make an offer to purchase the Taconic Property, SA-0040 (¶ 87(a)); (ii) "it was the Individual Debtor

who was purchasing the Taconic Property under Greenwich Land," *Id*. (¶ 87(b)); and (iii) "the Individual Debtor made the decision to purchase the Taconic Property." *Id*. (¶ 87(c)). Based upon these purportedly "undisputed facts," the bankruptcy court then concluded that Neree's testimony supported findings that: (i) "the Individual Debtor, through various entities at different times, and through his agent, Mr. Krasner, controlled the purchase of the Taconic Property," SA-0049; (ii) de Neree "was told directly by the Individual Debtor that he would purchase the Taconic Property," *id*.; "the Individual Debtor intended to purchase the Taconic Property," SA-0050; and "the Individual Debtor funded Greenwich Land's real estate transactions." *Id*.

But de Neree admitted that he did not know the source of funding for the purchase of 373 Taconic Rd. and that his belief that the Debtor was the buyer was an "assumption" on his part. A-1876-77 (Tr. 88:20-89:5). The testimony relied upon by the Appellants and the circumstances they established should have supported reasonable inferences in favor the Appellants that while the Debtor may have communicated certain things in English to de Neree, such was not inconsistent with Ngok's ownership interest in Greenwich Land and Greenwich Land's legitimate purchase of 373 Taconic Rd. following discussions, in Mandarin, between Ngok and her son, daughter and husband who were all present at the time. This testimony and the related circumstances should not have been excluded as "speculation" so the

bankruptcy court could then rely upon de Neree's unfounded assumptions as "undisputed facts" and grant summary judgment based upon the purported absence of any genuine issue of material fact.

In excluding the specific portions of de Neree's testimony that contradicted the Trustee's factual inferences and assumptions, the bankruptcy court abused its discretion. The bankruptcy court's assessment of the evidence was clearly erroneous and the bankruptcy court's exclusion of evidence establishing a genuine issue of material fact cannot be located within the range of permissible decisions.

## II. Whether Greenwich Land Constituted the Debtor's *Alter Ego* Presented Genuine Issues of Material Fact.

Pervasive throughout the bankruptcy court's reasoning set forth in the Summary Judgment Decision are inferences drawn, evidence weighed and factual determinations made even in the face of conflicting evidence, all against the non-movants. The bankruptcy court applied this approach in the context of a multi-factored fact-intensive and equity-balancing standard required under Delaware law to reverse veil-piercing.[3] Because the fact-finding process undertaken by the bankruptcy court and affirmed by the district court is reserved for the trier of fact and is not appropriate in deciding summary judgment, this Court should reverse.

---

[3] As recognized by the bankruptcy court, Delaware law applies to the Trustee's *alter ego* cause of action because Greenwich Land is a limited liability company duly formed under the laws of Delaware. [cite]

### A. Applicable Legal Standards.

Summary judgment may be granted "only where there is no genuine issue of material fact to be tried, and the facts as to which there is no issue warrant judgment for the moving party as a matter of law." *In re Dana Corp.*, 574 F.3d 129, 151 (2d Cir. 2009). "In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant." *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286 (2d Cir. 2002). "If reasonable minds could differ as to the import of the evidence… and if… there is any evidence in the record from any source from which a reasonable inference in the nonmoving party's favor may be drawn, the moving party simply cannot obtain a summary judgment." *R.B. Ventures Ltd. v. Shane*, 112 F.3d 54, 59 (2d Cir. 1997). In ruling on a summary judgment motion, a court "may not make credibility determinations or weigh the evidence…. 'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *In re Dana*, 574 F.2d at 152.

In a case of first impression, the Court of Chancery of Delaware in *Manichaean Capital, LLC v. Exela Techs., Inc.*, 251 A.3d 694 (Del. Ch. 2021), held that Delaware law allows outsider reverse veil-piercing. Outsider reverse veil-piercing is implicated where "an outside third party, frequently a creditor, urges a court to render a company liable on a judgment against its member." *Id.* at 710

(citation and internal quotation marks omitted).[4] Here, the Trustee claims standing to assert creditor claims against the Appellants pursuant to Bankruptcy Code § 544(a).

Under Delaware, law reverse veil-piercing claims are analyzed initially under the same standard as traditional veil-piercing claims:

> The natural starting place when reviewing a claim for reverse veil-piercing are the traditional factors Delaware courts consider when reviewing a traditional veil-piercing claim—the so-called "alter ego" factors that include insolvency, undercapitalization, commingling of corporate and personal funds, the absence of corporate formalities, and whether the subsidiary is simply a facade for the owner.

*Manichaean*, 251 A.3d at 714-15. Courts also must consider "whether the owner is utilizing the corporate form to perpetuate fraud or an injustice." *Id.*

The Chancery Court then enumerated eight additional factors that should also be considered in determining whether to reverse pierce an entity.

> (1) the degree to which allowing a reverse pierce would impair the legitimate expectations of any adversely affected shareholders who are not responsible for the conduct of the insider that gave rise to the reverse pierce claim, and the degree to which allowing a reverse pierce would establish a precedent troubling to shareholders generally; (2) the degree to which the corporate entity whose disregard is sought has exercised dominion and

[4] In contrast, insider reverse veil-piercing is implicated where "the controlling [member] urges the court to disregard the corporate entity that otherwise separates the [member] from the corporation." *Id*. (citation and internal quotation marks omitted).

> control over the insider who is subject to the claim by the party seeking a reverse pierce; (3) the degree to which the injury alleged by the person seeking a reverse pierce is related to the corporate entity's dominion and control of the insider, or to that person's reasonable reliance upon a lack of separate entity status between the insider and the corporate entity; (4) the degree to which the public convenience, as articulated by [the Delaware General Corporation Law and Delaware's common law], would be served by allowing a reverse pierce; (5) the extent and severity of the wrongful conduct, if any, engaged in by the corporate entity whose disregard is sought by the insider; (6) the possibility that the person seeking the reverse pierce is himself guilty of wrongful conduct sufficient to bar him from obtaining equitable relief; (7) the extent to which the reverse pierce will harm innocent third-party creditors of the entity the plaintiff seeks to reach; and (8) the extent to which other claims or remedies are practically available to the creditor at law or in equity to recover the debt.

*Id*. at 715. Concluding its articulation of the applicable standards to impose outsider reverse veil-piercing, the Chancery Court stated:

> Applying this framework, Delaware courts will be well-equipped to handle the varying concerns courts and commentators have rightfully expressed regarding reverse veil-piercing. The expectations of third-party creditors and investors will be well-protected. And the public convenience factor will require the balancing of the social value of upholding the legitimate expectations of the affected corporate creditors or debtors, applying a rebuttable presumption in favor of assuring such expectations, against the importance of the policies served by allowing a reverse pierce under the particular circumstances involved.

*Id*. at 715-16 (cleaned up).

What should be apparent to this Court from the above is that the application of these standards to any but the most-clear set of circumstances is entirely inappropriate on summary judgment. In this case, the complicated set of circumstances presented raised numerous significant disputed issues with respect to nearly every factor set forth above.

### B. The Traditional Alter Ego Factors Raise Genuine Issues of Material Fact.

Recognizing that the traditional *alter ego* factors are "natural starting place when reviewing a claim for reverse veil-piercing," the Chancery Court in *Manichaean* explained further that "[w]hile these factors are useful, any single one of them is not determinative." 251 A.3d at 714. "An ultimate decision regarding veil-piercing is largely based on some combination of these factors, in addition to 'an overall element of injustice or unfairness.'" *Id*. at 706-07.[5]

The bankruptcy court did not consider Greenwich Land's solvency, and it is apparent from the record that Greenwich Land possessed the resources necessary to pay its financial obligations. SA-0031 (¶ 33), SA-0033 (¶ 46), SA-0036 (¶ 66), SA-

[5] The bankruptcy court below combined the traditional *alter ego* factors identified in *Manichaean* into a single element of determining "whether the alleged *alter ego* asserts dominion and control over the corporate entity." SA-0044; *see also* SA-0046-53. The Chancery Court in *Manichaean*—which first recognized an outsider reverse veil-piercing claim under Delaware law—describe these factors independently. Admittedly, however, domination and control over the corporate entity would fairly go to the fifth factor, "whether, in general, the company simply functioned as a façade for the dominant shareholder." *Manichaean*, 251 A.3d at 706.

0037 (¶¶ 68, 70), SA-0038 (¶¶ 74, 76, 78, 80), SA-0037 (¶ 82, 84), SA-0041-42 (¶ 91). The bankruptcy court focused instead on Greenwich Land's capitalization and found that it was "temporary at best." SA-0054. But the bankruptcy court acknowledged that "Greenwich Land received large influxes of cash … to fund its purchases of property." *Id*. According to the bankruptcy court, however, "rather than being maintained to provide for its expenses and liabilities, Greenwich Land's funds were consistently drained, without business purpose, by other entities and persons." *Id*. There was no evidence submitted that Greenwich Land did not "provide for its expenses and liabilities," and the use of funds by other entities and persons does not amount to undercapitalization. To the contrary, such is evidence of overcapitalization.

With respect to the "absence of corporate formalities" factor, the bankruptcy court ignored those formalities that Greenwich Land had honored, such as its formation, GL LLC Agreement, corporate resolutions, appointment of officers, and officers acting in their capacity as such to take actions on behalf of Greenwich Land. Admittedly, Ngok did not recall much of the details of Greenwich Land's operations and financial transactions, but she had appointed officers to act on behalf of Greenwich Land who thereafter acted in those capacities. A-0535-40, A-0699, A-0701, A-0802-833, A-2116-17, A-2119. The bankruptcy simply weighed the evidence, rejected the evidence favoring Greenwich Land's legitimacy, drew

inferences against the non-movants and accepted the Trustee's contentions as establishing "undisputed facts." While permissible by the trier of fact after trial, it is not appropriate upon a motion for summary judgment.

Finally, with respect to whether the entity is "simply a facade for the owner" factor, the bankruptcy court "conclude[d] a reasonable jury would find that the Individual Debtor so dominated and controlled Greenwich Land such that Greenwich Land had no separate economic existence from the Individual Debtor." SA-0047. Putting aside that this is not the applicable legal standard, in reaching this conclusion the bankruptcy court extensively relied upon its erroneous evidentiary rulings and inappropriately weighed the evidence and drew inferences against the non-movants and in favor of the Trustee.

Viewing only the properly considered evidence, very little supports Kwok's domination and control over Greenwich Land. The bankruptcy court concluded, as an undisputed fact, that Krasner "in his role as an officer of Greenwich Land, operated as an agent of the Individual Debtor." SA-0048; *see also* SA-0049, SA-0051. The bankruptcy court should have drawn the reasonable inference in favor of the non-movants that Krasner, as an officer of Greenwich Land, acted in such capacity when he purported to do so (for example, when signing documents as vice president of Greenwich Land).

The bankruptcy court relied extensively Attorney Conboy's testimony. SA-0048-51. Despite the Trustee's counsel's numerous attempts during Attorney Conboy's initial examination to get her to say that [redacted] Attorney Conboy repeatedly stated [redacted] A-0954 (Tr. 24:6-22), A-0957 (Tr. 27:4-18), A-0958 (Tr. 28:5-9); A-0984 (Tr. 54:10-15). Only after a nearly two-hour examination (without any representative for the Appellants being present) and then a fifteen-minute recess did Attorney Conboy abruptly contradict her testimony and state that Krasner acted [redacted] Ex. 19-1, 90:6-12. This conflicting testimony, at the very least, evidence genuine issues of material fact.

The bankruptcy court also relied extensively upon de Neree's testimony. SA-0049-51. De Neree eagerly offered his assumptions as purported facts to support the Trustee's theory that Kwok was the "decision-maker" and buyer while, in fact, de Neree knew very little if anything about Greenwich Land's corporate governance or source of funding. Ultimately, on cross examination, de Neree conceded that his belief that Kwok was the buyer of 373 Taconic Rd. was an "assumption" on his part. A-1876-77 (Tr. 88:20-89-5). De Neree also admitted that he did not know the source of funds used to pay for 373 Taconic Rd. A-1875-76 (Tr. 87:24-88:4); *see also* A-

1877-78 (Tr. 89:23-90:14). Much of de Neree's testimony could be further impeached based on his initial private conversation with the Trustee when the Trustee advocated his theory that de Neree had "done business with Miles" (as opposed to Krasner and Greenwich Land), as well as de Neree's "friend and client" relationship with another Paul Hasting's partner. A-1858 (Tr. 70:7-24), A-1889 (Tr. 101:7-22).

The bankruptcy court's repeatedly reliance upon Krasner's connection to other entities "associated with the Individual Debtor" depended upon the bankruptcy court's erroneous application of law of the case. SA-0048. This applies equally to Wang and Daniel Podhaskie, and the relevance of the shared family office. *Id*. Similarly, the Individual Debtor's invocation of his Fifth Amendment privilege should not have been relied upon to establish the absence of a dispute and proof of the underlying contention that Krasner acted as the Individual Debtor's agent. *See id*.

Almost all of other significant "undisputed facts" similarly relied upon by the bankruptcy court are equally tainted with their reliance upon: (i) law of the case to establish a connection between certain entities and Kwok, and (ii) the Debtor's and Ms. Guo's invocation of their Fifth Amendment right against self-incrimination to establish the absence of a dispute to establish the underlying proposition as an "undisputed fact." SA-0049-51.

Thus, as to the final factor—whether Greenwich Land was simply a facade for Kwok—the Appellants submitted evidence of Ngok's legitimate ownership interest and the management of its operations and finances through its duly appointed officers. The Trustee's evidence relied upon assumptions, negative inferences against the Movants, and weighing competing evidence against the Appellants and in favor of the Trustee. When considered in conjunction with Greenwich Land's solvency, capitalization and compliance with corporate formalities, the bankruptcy court erred in concluding the no genuine issue of material fact existed and the traditions *alter ego* factors established, as a matter of law, that Greenwich Land constituted Kwok's *alter ego*.

### C. The Fraud and Similar Injustice Factors Raise Genuine Issues of Material Fact.

The bankruptcy court's application of the "fraud of similar injustice" factor is entirely circular. The bankruptcy court argues that since the Debtor dominated and controlled Greenwich Land, its "corporate form has served to shield assets" from the Debtor's creditors and "has been used to subvert these bankruptcy proceedings." SA-0056 In essence, because Greenwich Land is Kwok's *alter ego*, its corporate form has caused fraud or similar injustice and therefore it should be determined to be Kwok's *alter ego*. This is a fallacy.

Conspicuously absent from the Trustee's voluminous submissions is any connection between the sources of funds used by Greenwich Land to purchase real

estate and fund other expenditures, and the debts claimed by Kwok's creditors. There is also no evidence that Kwok himself provided the funds transferred to Greenwich Land to purchase the subject real estate. HDNY provided the source of funds to purchase 33 Ferncliff Rd. (Undisputed Facts ¶ 46) No connection between HDNY and Kwok had been established by the Trustee. The Debtor's and Mr. Guo's invocation of their Fifth Amendment right against self-incrimination in response to a question is not proper evidence to establish the truth of the question. *See* SA-34 (¶¶ 48, 51).

HDNY and Saraca provided the source of funds to purchase 373 Taconic Rd. SA-0039 (¶ 84). As explained above, the bankruptcy court erroneously relied upon law of the case to establish that Saraca was "related to the Individual Debtor's media ventures." Even if the Trustee had established that predicate fact, it is insufficient to then conclude that the Debtor was the source funds transferred to Greenwich Land.

The Trustee focuses instead on the absence of assets held in Kwok's name and the benefits Kwok's creditors would receive if the bankruptcy estate could simply seize Greenwich Land's assets (which it has already accomplished and liquidated). Of course, seizure and liquidation impose injustices upon Greenwich Land and Ngok, with Ngok having lost her home which she testified had been purchased for her by her son.

### D. The Legitimate Expectations of Greenwich Land's Owner Raised Genuine Issues of Material Fact.

Ngok testified that her son had purchased first 33 Ferncliff Rd. and then 373 Taconic Rd. for her. A-1058 (Tr. 21:8-22:9), A-1066 (Tr. 29:11-13). As set forth above, the bankruptcy court erred in excluding this testimony. Ngok appropriately entered into the GL LLC Agreement and various corporate resolutions appointing individuals to serve as officers of Greenwich Land. A-0535-40, A-2116-17, A-2119. These facts as well as all of the surrounding circumstances corroborating the legitimacy of Greenwich Land established Ngok's legitimate expectations. Under Delaware law, those expectations were entitled to a "rebuttable presumption" which the bankruptcy court failed to consider. The Appellants evidence in conjunction with the rebuttable presumption establishes genuine issues of material fact that precluded summary judgment.

The Appellants did not receive the benefit of any "rebuttable presumption." They did not receive the benefit of an examination of the evidence in the light most favorable to them. Reasonable inferences were not drawn in their favor. Evidence was weighed against them. Based on the foregoing, the bankruptcy court granted summary judgment against the Appellants, determining that there is no genuine dispute of material fact and that the Trustee is entitled to judgment as a matter of law that Greenwich Land is the *alter ego* of Debtor. SA-0057. This conclusion was reached by the bankruptcy court in error and this Court should reverse.

## III. Whether the Debtor Beneficially Owned Greenwich Land Presented Genuine Issues of Material Fact.

The Trustee failed to establish, and the bankruptcy court erred in concluding that there was no genuine issue of material fact as to the Debtor's beneficial ownership of Greenwich Land. The bankruptcy court relied entirely on its conclusions with respect to the *alter ego* doctrine to summarily conclude that Kwok beneficially owned Greenwich Land. SA-0059-60. For the same reasons as those conclusions were erroneous as explained above in the context of the *alter ego* holding, they are equally erroneous in their application to the Trustee's claim that Kwok beneficially owned Greenwich Land.

Analyzing the beneficial ownership doctrine,[6] the bankruptcy court applied the factors identified in *Paloian v. Dordevic (In re Dordevic)*, 67 F.4th 372 (7th Cir. 2023). SA-0058. Many other courts in this circuit have relied upon the similar factors identified in *LiButti v. United States*, 968 F. Supp. 71, 75 n.1, 76 (N.D.N.Y. 1997), *rev'd in part on other grounds*, 178 F.3d 114 (2d Cir. 1999), to establish ownership pursuant to the nominee theory.[7] *See, e.g.*, *United States v. Case*, No. 5:06-cv-570

---

[6] The legal principle is also referred to as "equitable ownership" and the nominee theory. *See, e.g., Paloian v. Dordevic (In re Dordevic)*, 67 F.4th 372, 382-87 (7th Cir. 2023).

[7] Those six factors are: "(1) whether inadequate or no consideration was paid by the nominee; (2) whether the property was placed in the nominee's name in anticipation of a lawsuit or other liability while the transferor remains in control of the property; (3) whether there is a close relationship between the nominee and the transferor; (4) whether they failed to record the conveyance; (5) whether the transferor retains

(FJS/CFH); 5:22-cv-856 (FJS/CFH) 2024 U.S. Dist. LEXIS 22705, at *17 (N.D.N.Y. Jan. 22, 2024) (Scullin, J.) (citing *LiButti*, 968 F. Supp. at 76).

Very recently, the district court in *SEC v. Ahmed*, 783 F. Supp. 3d 652, 674-75 (D. Conn. 2025) (Oliver, J.), thoughtfully and persuasively explained the current state of the law in this circuit concerning the equitable ownership/the nominee theory. That decision followed this Court's remand with instructions to the district court to apply the nominee theory on an asset-by-asset basis as to certain specified property. *SEC v. Ahmed*, 72 F.4th 379, 409 (2d Cir. 2023).

The district court noted that although "[t]he Circuit did not endorse any particular test for determining if a relief defendant was a mere nominee," the Circuit "did explain that equitable doctrines like the nominee doctrine looked to 'intent, rather than to form.'" *Ahmed*, 783 F. Supp. 3d at 674 (quoting *Ahmed*, 72 F.4th at 408). "The nominee doctrine is but one way of determining whether an asset was in fact owned by a… defendant or whether, though placed in a… defendant's name, the asset remained truly owned by the wrongdoer." *Id*. (citations omitted); *see also Ahmed*, 72 F.4th at 408-09 (citing *Nat'l Bank v. Case*, 99 U.S. 628, 632, 25 L. Ed. 448 (1878), for the proposition that "[a] transfer for the mere purpose of avoiding

possession; and (6) whether the transferor continues to enjoy the benefits of the transferred property." *LiButti*, 968 F. Supp. at 76 (citing *Towe Antique Ford Found. v. IRS*, 791 F. Supp. 1450, 1454 (D. Mont. 1992), *aff'd*, 999 F.2d 1387 (9th Cir. 1993)).

his liability to the company or its creditors is fraudulent and void, and he remains still liable…. [I]f, in fact, the transferee is a mere tool or nominee of the transferrer, so that, as between themselves, there has been no real transfer,… the transfer will be held for nought," and *Higgins v. Smith*, 308 U.S. 473, 475, 60 S. Ct. 355, 84 L. Ed. 406 (1940), for the proposition that "the jury was instructed to find whether these sales by the taxpayer… were actual transfers of property . . . or whether they were to be regarded as simply 'a transfer by Mr. Smith's left hand, being his individual hand, into his right hand, being his corporate hand, so that in truth and fact there was no transfer at all.'").

The district court in *Ahmed* concluded that "[t]he absence of binding authority adopting a particular nominee test is consistent with the Court of Appeals' guidance that this inquiry should be one of intent rather than form." 783 F. Supp. 3d at 675. "The core inquiry—who owns the asset—controls and, at equity, that inquiry was flexible." *Id*. The district court recognized, however, that the identified factors "are highly probative in determining an assets true ownership…." *Id*.

With respect to the Second Claim, the property at issue is Ngok's membership interest in Greenwich Land. *See e.g.*, A-0003 (¶ 3); *see also*, SA-0064 (¶ 3). While there is no evidence that she paid any consideration for that interest, there is also no evidence that Greenwich Land had any value at the time of its formation. Of course, the Trustee focuses on the substantial transfer of funds and purchases of real estate

in subsequent years. Even assuming this was appropriate, there is no evidence that Kwok was the source of those funds. HDNY and Saraca provided the funds to purchase 33 Ferncliff Rd. and 373 Taconic Rd.; SA-0033 (¶ 45), SA-0039 (¶ 84); and the Trustee failed to offer any evidence that when doing so they used Kwok's funds.

The bankruptcy court also failed to refer to any evidence submitted by the Trustee establishing that Kwok formed Greenwich Land and placed its membership interest in Ngok "in anticipation of a lawsuit or other liability." SA-0059. The bankruptcy court referenced the allegation that Kwok used "Greenwich Land to frustrate collection efforts," *id*., but there was no evidence of those efforts at or about the time of Greenwich Land's formation. Greenwich Land's frustration of the bankruptcy case is entirely circular because the flawed reasoning starts with the premise that Greenwich Land holds assets that properly belong to the bankruptcy estate, the proposition sought to be established.

Greenwich Land was duly formed. A-0533. Ngok's membership interest was duly recorded" through the GL LLC Agreement and Ngok at all times retained possession of such interest. A-0535-40.

Finally, with respect to "whether the transferor continues to enjoy the benefits of the transferred property," no one ever resided at 33 Ferncliff Rd., A-1057 (Tr. 20:10-25), and Kwok only at times resided at 373 Taconic Rd. A-1067 (Tr. 30:6-15).

There is no evidence that Kwok personally received any transfers from Greenwich Land. The bankruptcy court focused on whether Kwok exercised dominion and control over Greenwich Land. SA-0059. For the reasons set forth above, the Trustee failed to establish, and the bankruptcy court erred in finding the absence of a genuine issue of material fact with respect to Kwok's dominion and control over Greenwich Land.

Thus, considering the appropriate factors and weighing the evidence and drawing all reasonable inferences in favor of the non-movants, at the very least, numerous genuine issues of material fact precluded summary judgment with respect to whether Kwok was in fact and has always been the true owner of Greenwich Land, rather than its sole member, Ngok.

## CONCLUSION

It is clear from the appropriately considered evidence presented to the bankruptcy court (and excluding the inadmissible evidence not appropriately considered on summary judgment) that genuine issues of material fact have been presented and that judgment should not have entered, as a matter of law, in favor of the Trustee. For the forgoing reasons, this Court should reverse Summary Judgment entered by the bankruptcy court on the First Claim and Second Claim of the Complaint and remand this case back to the bankruptcy court for further proceedings.

Respectfully submitted,

GREENWICH LAND, LLC, AND
HING CHI NGOK

/s/ *Stephen M. Kindseth*

Stephen M. Kindseth, Esq. (Fed. Bar No. ct14640)
James M. Moriarty, Esq. (Fed. Bar. No. ct21876)
ZEISLER & ZEISLER, P.C.
10 Middle Street, 15th Floor
Bridgeport, CT 06605
Tel. 203-368-4234
Fax. 203-368-5478
Email: skindseth@zeislaw.com
jmoriarty@zeislaw.com
Their Attorneys

February 11, 2026

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that this brief complies with the type-volume limitation of L.R. 32.1(a)(4) because it contains 12,048 words as counted using Microsoft Word, excluding parts exempted by Fed. R. App. P. 32(f). Further, this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5)(a) because this brief was prepared using Microsoft Word in Times New Roman 14-point font, a proportionally spaced typeface.

/s/ *Stephen M. Kindseth*
Stephen M. Kindseth, Esq. (Fed. Bar No. ct14640)

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that on February 11, 2026, the foregoing was filed with the Clerk of the Court for the United States Court of Appeal for the Second Circuit by using the appellate ACMS system. Participants in the case are registered ACMS users and service will be accomplished by the appellate ACMS system.

/s/ *Stephen M. Kindseth*
Stephen M. Kindseth, Esq. (Fed. Bar No. ct14640)

# SPECIAL APPENDIX

# TABLE OF CONTENTS

Memorandum of Decision and Order Granting Motion for Summary Judgment, Case No. 23-ap-5005, ECF No. 133……………...…………….**SA-0001**

Summary Judgment, Case No. 23-ap-5005, ECF No. 134……...…………**SA-0062**

Memorandum of Decision, Case No. 3:24-cv-1185, ECF No. 27………....**SA-0065**

Judgment, Case No. 3:24-cv-1185, ECF No. 28……………………….…**SA-00092**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| In re:<br><br>HO WAN KWOK, *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 22-50073 (JAM)<br><br>(Jointly Administered) |
| LUC A. DESPINS, CHAPTER 11 TRUSTEE FOR THE ESTATE OF HO WAN KWOK,<br><br>Plaintiff,<br><br>v.<br><br>GREENWICH LAND, LLC, and HING CHI NGOK,<br><br>Defendants. | Adv. P. No. 23-05005 (JAM)<br><br>Re: ECF Nos. 77, 122 |

**APPEARANCES**

Avram E. Luft (argued)[1]
G. Alexander Bongartz
Paul Hastings LLP
200 Park Avenue
New York, NY 10166

and

Nicholas A. Bassett
Paul Hastings LLP
2050 M Street NW
Washington, D.C. 20036

*Counsel for Movant Mr. Luc A. Despins, Chapter 11 Trustee for the Estate of Mr. Ho Wan Kwok, Plaintiff*

Douglas Skalka
Patrick R. Linsey
Neubert, Pepe & Montieth
195 Church Street, 13th Floor
New Haven, CT 06510

[1] Since the argument on these matters, Attorney Luft has withdrawn his appearance. (ECF Nos. 131, 132.)

Christopher J. Major (argued)
Austin D. Kim
Meister Seelig & Fein PLLC
125 Park Avenue, 7th Floor
New York, NY 10017

*Counsel for Respondents Greenwich Land, LLC and Ms. Hing Chi Ngok, Defendants*

**MEMORANDUM OF DECISION AND ORDER**
**GRANTING MOTION FOR SUMMARY JUDGMENT**

Julie A. Manning, United States Bankruptcy Judge

## I. INTRODUCTION

Before the Court is the Motion for Summary Judgment (the "Motion for Summary Judgment" or the "Motion") filed by the plaintiff Mr. Luc A. Despins, in his capacity as Chapter 11 trustee (the "Trustee") for the bankruptcy estate (the "Estate") of Mr. Ho Wan Kwok (the "Individual Debtor"). (ECF No. 77.)[2] The Motion seeks summary judgment in favor of the Trustee on the first and second claims (respectively, the "First Claim" and the "Second Claim") of the complaint (the "Complaint") (ECF No. 1) filed against the defendants Greenwich Land, LLC ("Greenwich Land") and Ms. Hing Chi Ngok ("Ms. Ngok" and, together with Greenwich Land, collectively, the "Greenwich Parties"). The First and Second Claims allege, respectively, that Greenwich Land is the *alter ego* of and/or is beneficially owned by the Individual Debtor. For the reasons stated below, the Motion is **GRANTED**.

## II. BACKGROUND

On February 15, 2022, the Individual Debtor filed a voluntary Chapter 11 petition in this Court. (Main Case ECF No. 1.) The Individual Debtor's Chapter 11 case is jointly administered with the voluntary Chapter 11 cases of two affiliated corporate debtors. (Main Case ECF Nos.

[2] References to the docket in this adversary proceeding will be styled "ECF No. __." References to the docket in the main case, *In re Kwok*, Case No. 22-50073 (JAM), will be styled "Main Case ECF No. __."

970, 1141.) For the reasons set forth therein, on June 15, 2022, the Court entered a memorandum of decision and order appointing a Chapter 11 trustee. (Main Case ECF No. 465.) *In re Kwok*, 640 B.R. 514 (Bankr. D. Conn. 2022). On July 8, 2022, Mr. Despins was appointed as the Trustee. (Main Case ECF No. 523.)

Ms. Ngok is the sole member of Greenwich Land and is currently its only officer. Ms. Ngok is the Individual Debtor's wife.[3] Greenwich Land is the record owner of, among other things, the property commonly known as 373 Taconic Road, Greenwich, Connecticut (the "Taconic Property"). The Individual Debtor listed the address of the Taconic Property as his mailing address in his Chapter 11 case. (Main Case ECF No. 81.) Greenwich Land formerly owned another piece of real estate, namely, the property commonly known as 33 Ferncliff Road, Cos Cob, Connecticut (the "Ferncliff Property").

On March 27, 2023, the Trustee commenced this adversary proceeding by filing the Complaint. (ECF Nos. 1 (redacted), 3 (sealed).) The Complaint pleads two claims for relief:

> (i) the First Claim (Complaint ¶¶ 57–62) seeks, pursuant to sections 541, 542, and 544 of title 11 of the United States Code (the "Bankruptcy Code"), a declaratory judgment that Greenwich Land is the Individual Debtor's *alter ego* and, on that basis, turnover of Greenwich Land's assets to the Estate, including the Taconic Property and other assets, such as the proceeds of the post-petition sale of the Ferncliff Property (the "Ferncliff Proceeds"), via delivery of the same to the Trustee; and
>
> (ii) the Second Claim (Complaint ¶¶ 63–66) seeks, pursuant to sections 541, 542, and 544 of the Bankruptcy Code, a declaratory judgment that Greenwich Land is beneficially owned by the Individual Debtor and, on that basis, turnover of Ms. Ngok's membership interest in Greenwich Land to the Estate via delivery of the same to the Trustee.

On May 9, 2023, the Greenwich Parties filed an answer to the Complaint. (ECF No. 34.)

---

[3] Based on statements made in the Individual Debtor's Chapter 11 case and related adversary proceedings, the Trustee appears to dispute whether Ms. Ngok and the Individual Debtor are legally married. No conclusion of law relating to the legal nature of the relationship between Ms. Ngok and the Individual Debtor is made in this decision.

On the same day the Complaint was filed, the Trustee filed an *ex parte* application for prejudgment remedy and an *ex parte* motion for a temporary restraining order. (ECF Nos. 4, 11, 12.) On March 28, 2023, for the reasons stated therein, the Court granted a prejudgment remedy and entered a temporary restraining order (the "TRO"). (ECF Nos. 14, 15.) On May 26, 2023, a consensual preliminary injunction entered (the "Consensual PI"). (ECF No. 53.)

On June 5, 2023, the Court entered a pretrial order (as amended, the "Pretrial Order"). (ECF Nos. 56, 68, 75, 91.) On September 15, 2023, in accordance with the terms of the Pretrial Order, fact discovery was completed in this adversary proceeding.

On October 10, 2023, the Trustee filed the Motion for Summary Judgment. (ECF No. 77.) The Motion seeks summary judgment on both the First and Second Claims. Together with the Motion, the Trustee filed:

(i) a memorandum of law in support (ECF Nos. 78 (redacted), 82 (sealed));

(ii) a Local Civil Rule 56(a)(1) statement of undisputed facts (the "L.R. 56(a)(1) Statement") (ECF Nos. 79 (redacted), 83 (sealed)); and

(iii) a declaration of counsel (the "Barron Declaration") with attached exhibits (each a "Trustee Exhibit" and together, collectively, the "Trustee Exhibits") (ECF Nos. 80 (redacted), 84 (sealed)).

On November 14, 2023, the Greenwich Parties filed:

(iv) a response in opposition to the Motion (ECF No. 106);

(v) a Local Civil Rule 56(a)(2) statement of undisputed facts (the "L.R. 56(a)(2) Statement") (ECF No. 105); and

(vi) a declaration of counsel (the "Major Declaration") with attached exhibits (each a "Greenwich Exhibit" and together, collectively, the "Greenwich Exhibits") (ECF No. 104).

On December 8, 2023, the Trustee filed:

(vii) a reply in support of the Motion (ECF Nos. 111 (redacted), 115 (sealed));

(viii) a reply to the L.R. 56(a)(2) Statement (the "Reply Statement" and together with the L.R. 56(a)(1) Statement and the L.R. 56(a)(2) Statement, collectively, the "Statements") (ECF Nos. 112 (redacted), 116 (sealed)); and

(ix) a supplemental declaration of counsel (the "Supplemental Barron Declaration") with attached supplemental exhibits (each a "Supplemental Trustee Exhibit" and together, collectively, the "Supplemental Trustee Exhibits", and, together with the Reply Statement and Supplemental Barron Declaration, collectively, the "Reply Documents"), consecutively enumerated with the Trustee Exhibits (ECF Nos. 113 (redacted), 117 (sealed)).

This matter is fully briefed.

On January 5, 2024, the Greenwich Parties filed a motion to strike (the "Motion to Strike") the Reply Documents. (ECF No. 122.) On January 7, 2024, the Trustee filed an objection to the Motion to Strike. (ECF No. 123.)

On January 9, 2024, a hearing was held on the Motion for Summary Judgment, during which the Greenwich Parties pressed the Motion to Strike. (*See* Hr'g Tr. 61:7 *et seq.*, ECF No. 127.) At the conclusion of the hearing, the Court took the Motion for Summary Judgment and the Motion to Strike under advisement.

This matter is ripe for adjudication.

## III. JURISDICTION

The United States District Court for the District of Connecticut has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b). This Court has authority to hear and determine this matter pursuant to 28 U.S.C. § 157(a) and the Order of Reference of the District of Connecticut dated September 21, 1984. The issues raised by the Motion are statutorily core. 28 U.S.C. §§ 157(b)(2)(A), (E).

A motion to withdraw the reference to this Court of this adversary proceeding is pending in the District of Connecticut. *Greenwich Land, LLC v. Despins ex rel. Kwok (In re Kwok)*, No. 23 mc 00062 (KAD) (D. Conn. Nov. 9, 2023). While the Court concludes that the Constitution

does not preclude it from ruling on the Motion for Summary Judgment, should a reviewing court disagree in whole or in part, the Court submits this decision, or pertinent portion thereof, as proposed conclusions of law. *See* Fed. R. Bankr. P. 9033; *cf. Stern v. Marshall*, 564 U.S. 462, 487–99 (2011).

The Greenwich Parties also argue that this matter is not properly before the Court because the Trustee has failed to join necessary parties to this adversary proceeding. The Court disagrees. The First Claim seeks relief against Greenwich Land. The Second Claim seeks relief against Ms. Ngok. The Court can "accord complete relief among existing parties" and none of the persons and entities named by the Greenwich Parties "claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may . . . impair or impede that person's ability to protect the interest; or . . . leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest." Fed. R. Civ. P. 19(a), *made applicable by* Fed. R. Bankr. P. 7019.

Venue in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## IV. SUMMARY JUDGMENT STANDARD

Upon a motion for summary judgment, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a) *made applicable by* Fed. R. Bankr. P. 7056.

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see Nick's Garage,*

*Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 114–15 (2d Cir. 2017) (citing *Anderson*). While a movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact," a movant is not required to "support its motion with affidavits or other similar materials negating the opponent's claim." *Celotex Corp. v. Catrett ex rel. Catrett*, 477 U.S. 317, 323 (1986). Where the movant meets its factual burden, an "opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *see Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010).

Finally, to succeed on the motion, the movant must be entitled, upon the undisputed material facts, to judgment as a matter of law – the judge, in ruling on the motion, is not acting as a finder of fact. *Anderson*, 477 U.S. at 250. Summary judgment should enter "where the evidence is such that it 'would require a directed verdict for the moving party.'" *Id.* at 251 (internal citations omitted).

## V. UNDISPUTED FACTS

Before setting forth the undisputed facts[4] for the purposes of the Motion for Summary Judgment, the Court must first rule on (A) the Motion to Strike and (B) the various evidentiary objections raised by the Greenwich Parties under Fed. R. Civ. P. 56(c)(2) and (4), as made applicable by Fed. R. Bankr. P. 7056, in their objection to the Motion and the L.R. 56(a)(2) Statement as well as the evidentiary objections raised by the Trustee to the statement of additional material facts in the L.R. 56(a)(2) Statement.

[4] For purposes of citation in the discussion below, each is cited as an "Undisputed Fact".

### A. Motion to Strike

In the Motion to Strike, the Greenwich Parties request that the Court strike the Reply Documents as impermissible filings on reply. The Greenwich Parties argue that replies to Local Civil Rule 56(a)(2) statements are categorically disallowed and, in the alternative, requested an opportunity to file a surreply and a continuation of the hearing on the Motion for Summary Judgment. The Trustee argues that it is within the Court's discretion whether to consider the Reply Documents.

The Court agrees with the Trustee that courts have broad discretion to consider argument and evidence first introduced on reply when determining motions for summary judgment. *See Bayway Refin. Co. v Oxygenated Mktg. & Trading A.G.*, 215 F.3d 219, 226–227 (2d Cir. 2000); *Compania del Bajo Caroni (Caromin), C.A. v. Bolivarian Republic of Venez.*, 556 F. Supp. 2d 272, 283 n. 40 (S.D.N.Y. 2008) (considering arguments and evidence submitted with reply despite belated argument by plaintiff's substitute counsel) *affirmed by* 341 F. App'x 722, 724 (2d Cir. 2009) (citing *Ruggiero v. Warner-Lambert Co.*, 424 F.3d 249, 252 (2d Cir. 2005)); *see also KLP Enters., LLC v. Sassani*, No. 3:17-cv-665 (MPS), 2018 WL 4516667, at *5 (D. Conn. 2018) (noting broad discretion and declining to consider exhibits submitted with reply because discovery had not closed and the exhibits were a surprise) (citing *Bajo Caroni*, 341 F. App'x at 724); *Beck v. Rayco Mfg., Inc.*, No. 3:14-cv-00327 (JAM), 2015 WL 737114, at *2 n. 2 (D. Conn. 2015) (considering evidence submitted on reply in response to unanticipated arguments).

Here, the Reply Documents respond to the evidentiary objections raised by the Greenwich Parties. The Reply Statement does not raise new arguments or put forward new undisputed facts. The Supplemental Trustee Exhibits attached to the Supplemental Barron Declaration are authentication declarations relating to certain Trustee Exhibits in response to the

Greenwich Parties' objections. The Reply Documents were filed thirty-two (32) days before the scheduled hearing on the Motion for Summary Judgment. In sum, they do not present an unfair surprise to the Greenwich Parties. Accordingly, the Court will not strike the Reply Documents from the record.

The Court declined to act on the Greenwich Parties' alternative request for permission to file a surreply and for a continuance of the hearing on the Motion for Summary Judgment prior to the hearing. On this record, the Greenwich Parties do not make the showing of good cause required for filing a surreply. D. Conn. L. Civ. R. 7(d). The Motion to Strike was filed two business days before the scheduled hearing on the Motion for Summary Judgment. It was filed twenty-eight (28) days after the Reply Documents were filed. Any request for further briefing and a continuance should have been made further in advance of the hearing and closer to the time the Reply Documents were filed. Moreover, as discussed above, the Reply Documents did not constitute unfair surprise.

Therefore, for the above stated reasons, the Motion to Strike is denied.

## B. Evidentiary Disputes

Turning to the evidentiary disputes between the parties, the Greenwich Parties raise several evidentiary objections to the Motion for Summary Judgment under Rules 56(c)(2) and (4). The Trustee also raises objections to the statement of additional material facts in the L.R. 56(a)(2) Statement.

### 1. Rule 56(c)(4)

Rule 56(c)(4) states "an affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show

that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

The Greenwich Parties object to the Barron Declaration on the bases that (i) Attorney Douglass Barron ("Attorney Barron") lacks personal knowledge regarding the Trustee Exhibits; and (ii) the Barron Declaration does not contain a statement that it is sworn under penalty of perjury. The Trustee argues that the Barron Declaration is not put forward as factual assertions about the content or creation of the Trustee Exhibits.

The Court is not persuaded by the Greenwich Parties' arguments. Regarding the first argument, the Barron Declaration, as it relates to the majority of Trustee Exhibits,[5] is neither a primary authentication declaration nor a declaration about the factual substance of the Trustee Exhibits. Instead, it is a declaration that the attached exhibits are true and correct copies of documents the Trustee has received through discovery or otherwise. Whether Attorney Barron has personal knowledge regarding the creation or content of the Trustee Exhibits does not matter. That is not the purpose of his declaration. *See* Fed. R. Evid. 602.

Regarding the second argument, while the Greenwich Parties are correct that the Barron Declaration lacks the sworn statement that its contents are true and correct under the penalty of perjury, the Supplemental Barron Declaration, which includes the content of the Barron Declaration, contains that sworn statement. *See* 28 U.S.C. § 1746. Any defect with the Barron Declaration has been cured by the Supplemental Barron Declaration.

Therefore, the Greenwich Parties' Rule 56(c)(4) objection is overruled.

---

[5] As will be discussed below, the Trustee argues that the Supplemental Barron Declaration authenticates Trustee Exhibit 12.

**2. Rule 56(c)(2)**

Rule 56(c)(2) requires evidence relied upon at summary judgment to be presentable in an admissible form at trial. Fed. R. Civ. P. 56(c)(2). "[M]aterial relied on at summary judgment need not be admissible in the form presented. Rather, so long as the evidence in question 'will be presented in admissible form at trial,' it may be considered on summary judgment." *Smith v. City of New York*, 697 F. App'x 88, 89 (2d Cir. 2017) (summary order) (citing *Santos v. Murdock*, 243 F.3d 681, 683 (2d Cir. 2001) (per curiam)); *see* Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence").

The Greenwich Parties raise several categories of objections to the Trustee Exhibits and the matters of which the Trustee requests the Court take judicial notice. First, they argue the Trustee has failed to authenticate certain Trustee Exhibits. Second, they argue the deposition testimony of Attorney Margaret Conboy ("Attorney Conboy") is subject to attorney-client privilege. Third, they argue the deposition testimony of Attorney Conboy and Mr. Emile de Neree ("Mr. de Neree") is made without personal knowledge of the relevant facts. Fourth, they argue that information relating to Greenwich Land's financial activities is irrelevant. Fifth, they argue that the Individual Debtor's and Ms. Mei Guo's ("Ms. Guo") – the Individual Debtor's and Ms. Ngok's daughter – invocation of their Fifth Amendment rights against self-incrimination is inadmissible at summary judgment. Sixth, they argue that past determinations of this Court in these jointly administered Chapter 11 cases and related adversary proceedings are inadmissible hearsay. The Trustee contests each of these objections.

**i. Authentication**

Regarding authentication, the Court agrees with the Trustee. First, Trustee Exhibits 6, 7, 13 through 16, 23, 28, 30, 33 through 35, 37 through 39, 41 through 45, 53 through 55, 66, and 67 would be authenticated at trial as business records produced in the ordinary course as established by Supplemental Trustee Exhibits 68 through 72, which are the authentication declarations of, respectively, Capital One, NA; Hodgson Russ LLP; Bento Technologies, Inc.; First Bank of Greenwich; and the Bank of Princeton. Fed. R. Evid. 901(b)(7); *see Off. Comm. of Unsecured Creditors v. Martin (In re Enron Creditors Recovery Corp.)*, 376 B.R. 442, 456 (Bankr. S.D.N.Y. 2007) (citing *Conoco, Inc. v. Dep't of Energy*, 99 F.3d 387, 391–92 (Fed. Cir. 1992)).

Second, Trustee Exhibits 13, 14, 16 through 18, 38, 40, 44, 52 through 55, and 67[6] are Greenwich Land's own documents, which it itself has produced and, therefore, would be presented in an admissible form at trial. "It is disingenuous and wasteful for [a party] to object that its own documents are not authenticated, and thus inadmissible at trial and on summary judgment." *Com. Data Servers, Inc. v. Int'l Bus. Machs. Corp.*, 262 F. Supp. 2d 50, 60 (S.D.N.Y. 2003). "[T]he fact that [a party] is in the best position to know if they are authentic and that they have never claimed that they are not", as with the Greenwich Parties and the Trustee Exhibits at issue here, establishes authenticity. *Com. Data Servers*, 262 F. Supp. 2d at 60 (citing Fed. R. Evid. 901(b)(4)).

Third, Trustee Exhibits 9 and 10 are domestic public documents with certifications under seal by public officials and, therefore, would be presented in an admissible form at trial. No extrinsic evidence is necessary to authenticate them. Fed. R. Evid. 902(2).

[6] Certain Trustee Exhibits are authenticated in more than one manner. This Memorandum of Decision lists such Trustee Exhibits when setting forth each applicable rationale.

Fourth, Trustee Exhibits 4, 11, and 24 are acknowledged documents. No extrinsic evidence is necessary to authenticate them. Fed. R. Evid. 902(8). Therefore, they would be presented in an admissible form at trial.

Fifth, Trustee Exhibit 12 is a transcript of the Individual Debtor's deposition taken in the adversary proceeding styled *HK International Funds Investments (USA) Ltd. v. Despins (In re Kwok)*, Case No. 22-50073 (JAM), Adv. P. No. 22-05003 (JAM) (Bankr. D. Conn. June 26, 2023). Attorney Barron was present at the deposition and, hence, has personal knowledge regarding the content of Trustee Exhibit 12. Therefore, the Supplemental Barron Declaration authenticates Trustee Exhibit 12 and it would be presented in an admissible form at trial. Fed. R. Evid. 901(b)(1). *Com. Data Servers*, 262 F. Supp. 2d at 59.

Sixth, Trustee Exhibits 8, 13 through 16, 30, 33 through 35, 37 through 39, 44, 53 through 55, 66, and 67 are bank records, which would be presented in an admissible form at trial. These Trustee Exhibits have the distinctive characteristics of bank records and the present circumstances support their authenticity. Fed. R. Evid. 901(b)(4). The Supplemental Barron Declaration swears under penalty of perjury that they are true and correct copies of documents the Trustee has received through discovery. The Greenwich Parties do not object that any of them are inauthentic, but rather that they are not presently authenticated. Moreover, an authenticating witness for the banks would, as necessary, appear and testify at any trial in this adversary proceeding. Fed. R. Evid. 901(b)(1).

Seventh, Trustee Exhibits 6, 7, 9, 10, 25 through 27, 29, and 45 are corporate records and would be presented in an admissible form at trial. As with the bank records above, these Trustee Exhibits have the distinctive characteristics of corporate records and the present circumstances support their authenticity. Fed. R. Evid. 901(b)(4). As with the bank records, the Supplemental

Barron Declaration swears under the penalty of perjury that they are true and correct copies of documents produced in discovery and the Greenwich Parties do not suggest they are inauthentic. Moreover, an authenticating witness for the relevant corporations would, as necessary, appear and testify at any trial in this adversary proceeding. Fed. R. Evid. 901(b)(1). Finally, some of these records are public documents and, therefore, a certified copy could be presented at trial. Fed. R. Evid. 902(2).

Eighth, Trustee Exhibits 8, 15 through 18, 40, 46, 47, and 50 through 52 are contracts and contractual documents, which would be presented in an admissible form at trial. As with the bank and corporate records above, these Trustee Exhibits have the distinctive characteristics of contracts or contractual documents and the present circumstances support their authenticity. Fed. R. Evid. 901(b)(4). Once again, the Supplemental Baron Declaration swears under the penalty of perjury that they are true and correct copies of documents produced in discovery and the Greenwich Parties advance no argument that they are inauthentic. Moreover, an authenticating witness among the parties to the contracts would, as necessary, appear and testify at any trial in this adversary proceeding. Fed. R. Evid. 901(b)(1).

Ninth, Trustee Exhibits 4, 11, and 24 are court filings, which would be presented in an admissible form at trial. The Court may take judicial notice of these documents.

Tenth and finally, Trustee Exhibit 22 is a declaration of the Individual Debtor prepared in connection with a consent order entered into in his Chapter 11 case regarding his invocation of his Fifth Amendment rights against self-incrimination and, therefore, would be presented in an admissible form at trial. It has the distinctive characteristics of a declaration and the present circumstances supports its authenticity. Fed. R. Evid. 901(b)(4).

Therefore, for all these reasons, the Greenwich Parties' objections regarding the authenticity of various Trustee Exhibits are all overruled for the purposes of the Motion for Summary Judgment.

**ii. Attorney Client Privilege**

The Greenwich Parties argue the deposition testimony of Attorney Conboy should be excluded as subject to Greenwich Land's attorney-client privilege. The Trustee argues this objection fails for two reasons: first, the communications discussed in Attorney Conboy's deposition testimony were conversations involving Hudson Diamond NY LLC ("HDNY"), Golden Spring (New York) Limited ("Golden Spring"), and Greenwich Land; and second, the deposition testimony has been on the public docket for about a year.

The Court agrees with the Trustee. "[A]s with all privileges, the person claiming the attorney client privilege has the burden of establishing all essential elements." *In re Horowitz*, 482 F.2d 72, 82 (2d Cir. 1973) (citing *United States v. Kovel*, 296 F.2d 918, 923 (2d Cir. 1961)). "The party asserting the privilege . . . bears the burden of establishing" that the communications to be protected are "communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice." *United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011); *see Strougo v. BEA Assocs.*, 199 F.R.D. 515, 519 (S.D.N.Y. 2001) (citing *United States v. Constr. Prod. Rsch., Inc.*, 73 F.3d 464, 473 (2d Cir. 1996)). "A party seeking the protections of the attorney-client privilege must affirmatively act to protect her communications." *Niceforo v. UBS Glob. Asset Agmt. Ams., Inc.*, 20 F. Supp. 3d 428, 437 (S.D.N.Y. 2014).

The Greenwich Parties cite to no testimony regarding communications with Greenwich Land, let alone communications that were intended to be confidential or were for the purposes of

obtaining or providing legal advice. Rather, the Greenwich Parties cite to testimony that Greenwich Land was Attorney Conboy's client. The Greenwich Parties do not meet their burden of establishing the attorney-client privilege protects the communications discussed by Attorney Conboy in her deposition testimony. *See Mejia*, 655 F.3d at 132. Moreover, the Trustee is correct that Attorney Conboy represented multiple parties in connection with the purchase and sale of the Ferncliff Property, including Greenwich Land, Golden Spring, and HDNY. She testified as to communications with those other entities, with and without the presence of Greenwich Land. The Greenwich Parties advance no argument as to why sharing communications with Golden Spring and HDNY does not defeat their assertion of privilege. It is their burden to do so. *United States v. Schwimmer*, 892 F.2d 237, 243–44 (2d Cir. 1989); *HSH Nordbank AG N.Y. Branch v. Swerdlow*, 259 F.R.D. 64, 71–72 (S.D.N.Y. 2009). Moreover, Golden Spring has been adjudged to be the Individual Debtor's *alter ego* and, therefore, its privilege has passed to the Trustee. (Consent Order Regarding Control of Attorney-Client Privilege, Main Case ECF No. 856.)

For these reasons, the Court overrules the Greenwich Parties' objection to the admissibility of Attorney Conboy's testimony at trial on the basis of attorney-client privilege.

**iii. Personal Knowledge**

The Greenwich Parties argue Attorney Conboy and Mr. de Neree's deposition testimony is largely inadmissible because they lack personal knowledge about the ownership of Greenwich Land, the Individual Debtor's record relationship to Greenwich Land, internal deliberations of Greenwich Land, and the source of the funds used to purchase the Ferncliff and Taconic Properties. The Trustee argues the Greenwich Parties misconstrue the purpose for which the

testimony of Attorney Conboy and Mr. de Neree is put forward and that they have the relevant personal knowledge.

The Court agrees with the Trustee. "A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony." Fed. R. Evid. 602. The Trustee puts forward Attorney Conboy and Mr. de Neree's testimony as direct evidence of the Individual Debtor's alleged use and control of Greenwich Land in relation to the purchases of the Ferncliff and Taconic Properties and the sale of the Ferncliff Property. The Trustee does not put forward the deposition testimony as evidence the Individual Debtor – or any other person – was a record member or officer of Greenwich Land or as evidence as to the source of the funds used to purchase the Ferncliff and Taconic Properties. (*See* L.R. 56(a)(1) Statement ¶¶ 23, 28.)

Therefore, the Greenwich Parties' objection that the testimony of Attorney Conboy and Mr. de Neree would be inadmissible at trial due to lack of personal knowledge is overruled.

**iv. Relevance**

The Greenwich Parties argue much of the Trustee's evidence is irrelevant because it does not tend to establish who was a record member or officer of Greenwich Land or relate to the ownership and use of the Ferncliff and Taconic Properties. The Trustee argues the Trustee Exhibits tend to establish the Individual Debtor's dominion and control over Greenwich Land and its assets – whether or not the Individual Debtor is a record member or officer of Greenwich Land and whether or not his alleged use of Greenwich Land is in keeping with its stated purpose of owning property in Greenwich, Connecticut – as well as Greenwich Land's role in a scheme to unjustly keep assets away from his creditors.

In the Complaint, the Trustee alleges, among other things, (i) Greenwich Land is a façade whose corporate form was abused such that it shares its economic identity with the Individual Debtor and (ii) the Individual Debtor owns Greenwich Land despite not being its record owner. In stating the undisputed facts below, the Court has determined the Trustee Exhibits cited are relevant because they have a "tendency to make a fact more or less probable than it would be without the evidence" and the fact in question "is of consequence in determining the action" because the cited exhibits relate to, among other things, the Individual Debtor's use and control of Greenwich Land. Fed. R. Evid. 401. The Court has undertaken an analysis of the Trustee Exhibits and determined that the probative value of the evidence in question is not substantially outweighed by any counterbalance considered by courts. Fed. R. Evid. 403.

Therefore, the cited Trustee Exhibits would be admissible at trial. Fed. R. Evid. 402.

**v. Admissibility of Invocation of Fifth Amendment**

The Greenwich Parties argue an invocation of Fifth Amendment rights against self-incrimination cannot be a basis of an adverse inference at summary judgment. To highlight the lack of any genuine dispute of material fact about certain issues, the Trustee argues the Individual Debtor's and Ms. Guo's invocations of their Fifth Amendment rights against self-incrimination are relevant, juxtaposed against Ms. Ngok's, Ms. Conboy's, and Mr. de Neree's testimony.

The Court agrees with the Trustee. The Greenwich Parties are correct that an adverse inference on the basis of an invocation of Fifth Amendment rights against self-incrimination is improper at summary judgment. *Stichting ter Behartiging van de Belangen van Oudaandeelhouders in het Kapitaal van Saybolt Int'l B.V. v. Schreiber*, 407 F.3d 34, 55 (2d Cir. 2005). However, the Individual Debtor's and Ms. Guo's invocation of the Fifth Amendment has

limited relevance insofar as it establishes they do not dispute the testimony of Ms. Ngok, Ms. Conboy, and Mr. de Neree. Given this matter is before a court, not a jury, and the Court's awareness that an adverse inference is impermissible at summary judgment, the relevance of the Individual Debtor's and Ms. Guo's invocation of their Fifth Amendment rights against self-incrimination is not outweighed by prejudice to the Greenwich Parties. Fed. R. Evid. 401–03.

Therefore, the Court will consider this evidence and give it appropriate weight. The Greenwich Parties' objection is overruled.

**vi. Judicial Notice and Law of the Case**

The Greenwich Parties argue the Trustee seeks to apply *res judicata* to preclude them from rearguing claims and issues previously litigated in these jointly administered Chapter 11 cases and related adversary proceedings. The Trustee argues he is not trying to preclude the Greenwich Parties from putting forth evidence contradicting such rulings and that the rulings are admissible, supplemental evidence that supports summary judgment.

The Court agrees with the Trustee. *Res judicata* – whether claim or issue preclusion – operates to preclude or estop a party from litigating certain claims or issues. *New Hampshire v. Maine*, 532 U.S. 742, 748–49 (2001) ("Claim preclusion generally refers to the effect of a prior judgment in foreclosing successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit. Issue preclusion generally refers to the effect of a prior judgment in foreclosing successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, whether or not the issue arises on the same or a different claim."). Here, the Trustee has not sought to preclude the Greenwich Parties from litigating whether certain entities and persons are associated

with the Individual Debtor. More importantly, the Court has not estopped or precluded the Greenwich Parties from presenting evidence disputing these issues.

Distinct from *res judicata*, it is within the Court's discretion whether prior determinations in these jointly administered Chapter 11 cases and related adversary proceedings constitute law of the case. *Krakowski v. Am. Airlines, Inc. (In re AMR Corp.)*, 567 B.R. 247, 254 (Bankr. S.D.N.Y. 2017) (citing *Arizona v. California*, 460 U.S. 605, 618 (1983); *De Johnson v. Holder*, 564 F.3d 95, 99 (2d Cir. 2009); *Aramony v. United Way of Am.*, 254 F.3d 403, 410 (2d Cir. 2001)), *aff'd sub nom. Krakowski v. Allied Pilots Ass'n (In re AMR Corp.)*, 834 F. App'x 660 (2d Cir. 2021), *cert. denied*, *Krakowski v. Allied Pilots Ass'n*, 142 S. Ct. 347 (2021). "Unlike the more precise requirements of res judicata, law of the case is an amorphous concept. As most commonly defined, the doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case," although the doctrine does not prevent a court from revisiting its prior determinations or allowing renewed argument on an issue. *Arizona*, 460 U.S. at 618. Unlike *res judicata*, it is not essential to law of the case that the parties before the court were involved in the previous litigation. *In re Motors Liquidation*, 590 B.R. 39, 62, 66–68 (S.D.N.Y. 2018), *aff'd sub nom. Reichwaldt v. General Motors LLC (In re Motors Liquidation)*, 792 F. App'x 28 (2d Cir. 2019); *but see Westerbeke Corp. v. Daihatsu Moto Co., Ltd.*, 304 F.3d 200, 218–19 (2d Cir. 2002) (holding that, under New York as opposed to federal law, law of the case requires the parties participated in the previous litigation).

Finally, the Court may also take judicial notice of case filings and the determinations of the Court in these jointly administered Chapter 11 cases and related adversary proceedings, if not for the truth of the matters asserted, for the fact that such filings, findings, and rulings were

made. *AMR Corp.*, 567 B.R. at 250. Similarly, the Court may take judicial notice of filings in other cases and determinations made by other courts for this same purpose. *Liberty Mutual Ins. Co. v. Rotches Pork Packer, Inc.*, 969 F.2d 1384, 1388–89 (2d Cir. 1992); *Chevron Corp. v. Donziger*, 974 F. Supp. 2d 362, 605–06, 606 n. 1560 (S.D.N.Y. 2014), *aff'd by* 833 F.3d 74 (2d Cir. 2016).

Here, for the most part, the Trustee requests the Court take judicial notice of certain court filings in other courts and in these jointly administered Chapter 11 cases and related adversary proceedings. The Greenwich Parties do not object to this request.

The Trustee also requests, however, that the Court acknowledge, for the truth of the matter asserted, its prior determinations that Golden Spring and HK International Funds Investments (USA) Limited, LLC ("HK USA") are *alter egos* of the Individual Debtor and that Saraca Media Group, Inc. ("Saraca") is related to the Individual Debtor's media ventures. While the Greenwich Parties object to having these rulings be determined law of the case, the Greenwich Parties advance no evidence to dispute the relevant proposed undisputed, material facts. Instead, they suggest more discovery needs to be undertaken on these issues. However, the Greenwich Parties have had their opportunity to undertake such discovery. Pursuant to the Pretrial Order, fact discovery closed on September 15, 2023 in this adversary proceeding. No additional discovery could be taken in this adversary proceeding absent further order of the Court. The time for the Greenwich Parties to dispute the Court's prior rulings was in their responsive pleadings to the Motion for Summary Judgment.

Therefore, given the lack of any evidence to the contrary, the Court, within its discretion, determines that these matters are law of the case, for the purposes of the Motion for Summary Judgment, to the extent set forth below in the statement of undisputed facts.

### 3. The Trustee's Objections to the L.R. 56(a)(2) Statement

Turning to the Trustee's objections to the L.R. 56(a)(2) Statement, the Trustee raises three categories of objections. First, he objects to the Greenwich Parties' reliance on Ms. Ngok's Rule 2004 deposition testimony insofar as that testimony contradicts her testimony in this adversary proceeding. Second, he raises various relevancy objections to the proposed additional material facts. Third, he objects that numerous proposed additional facts are unsupported by their D. Conn. L. Civ. R. 56(a)(3) citations to the record and exhibits.

Regarding the Trustee's first objection, he argues the Greenwich Parties cannot rely on Ms. Ngok's Rule 2004 testimony that Mr. Qiang Guo ("Mr. Guo") – Ms. Ngok's and the Individual Debtor's son – created Greenwich Land and bought the Ferncliff and Taconic Properties for Ms. Ngok. He asserts the Greenwich Parties cannot rely on this testimony because (a) in her testimony during the deposition of her and Greenwich Land in this adversary proceeding, Ms. Ngok testified she did not know the source of the funds used to purchase the Ferncliff and Taconic Properties, which answer accords with the Greenwich Parties' answers to interrogatories; and (b) the Greenwich Parties did not disclose Mr. Guo as a party with relevant knowledge about the matter of this adversary proceeding. The Trustee contends Ms. Ngok seeks to perjure herself to prevent summary judgment. The Greenwich Parties dispute the Trustee's contention that Ms. Ngok seeks to perjure herself and argue that Ms. Ngok's testimony during her Rule 2004 deposition creates a genuine dispute of material fact.

The Court agrees with the Trustee. The Greenwich Parties cannot defeat summary judgment by contradicting their sworn statements and admissions as well as positions taken in this adversary proceeding. *See Trans-Orient Marine Corp. v. Star Trading & Marine, Inc.*, 925 F.2d 566, 572–73 (2d Cir. 1991). Ms. Ngok, in her individual capacity and in her capacity as the

Rule 30(b)(6) corporate representative of Greenwich Land, testified at her deposition taken in this adversary proceeding that (a) she did not know the source of the funds used to purchase the Ferncliff and Taconic Properties; (b) she did not know why the entities that transferred the funds did so; and (c) she did not know who would know why the entities transferred the funds. (*Compare* Tr. Ex. 21, at *35:5–7, 52:21–25, 55:4–16, 83:1–11 *with* Tr. Ex. 20, at *21:8–22:17, 29:11–24.) Ms. Ngok testified she asked her son, Mr. Guo, to help sell the Ferncliff Property but otherwise did not mention him during her deposition taken in this adversary proceeding. (Tr. Ex. 21, at *92:17–22.) Similarly, in the Greenwich Parties' responses to interrogatories, they averred they had no knowledge of the source of funds used to purchase the Ferncliff and Taconic Properties. (Tr. Ex. 3, Response Nos. 1–2, 4–5.) Furthermore, the Greenwich Parties do not dispute that they failed to include Mr. Guo among their initial disclosures as a person with relevant knowledge. Finally, the Greenwich Parties do not proffer any evidence in support of the proposed additional material fact that Mr. Guo purchased the Ferncliff and Taconic Properties for his mother, Ms. Ngok, other than Ms. Ngok's Rule 2004 deposition testimony.

The record in this adversary proceeding makes clear that the Greenwich Parties abandoned Ms. Ngok's prior Rule 2004 testimony that her son purchased the Ferncliff and Taconic Properties. The Greenwich Parties cannot revive that testimony at the eleventh hour, after discovery has closed, in order to prevent summary judgment. *See Trans-Orient*, 925 F.2d at 572–73. Therefore, the Court will not consider Ms. Ngok's prior testimony regarding her son in determining the undisputed material facts for the purposes of summary judgment. The Court will not reach the allegations of perjury.

Regarding the Trustee's relevancy objections, the Court sustains some and overrules others as indicated by the statement of undisputed facts below. For example, the Court overrules

the Trustee's objections to certain additional material facts regarding Ms. Ngok's record ownership of Greenwich Land and her use of the Taconic Property, although the Greenwich Parties' presentation of these facts is needlessly cumulative and not reflected below. As a contrary example, the Court sustains the Trustee's objections to several proposed additional facts regarding Mr. de Neree's knowledge of Mandarin Chinese. These additional facts seem intended to show that Mr. de Neree was not privy to the conversations between Ms. Ngok and her children when they visited the Taconic Property. However, the Greenwich Parties do not put forward any evidence on the substance or importance of those conversations. "[A] party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Hicks*, 593 F.3d at 166 (citing *Fletcher v. Atex, Inc.*, 68 F.3d 1451, 1456 (2d Cir. 1995)). Accordingly, the Court will not speculate as to the content of those conversations at summary judgment and the proposed additional facts on this issue are, therefore, irrelevant. Beyond these examples, the Court makes other rulings on the Trustee's relevancy objections as indicated by the statement of undisputed facts below.

Regarding the Trustee's D. Conn. L. Civ. R. 56(a)(3) objections, upon review of the Trustee and Greenwich Exhibits and the citations thereto, the Court has, made its determinations as indicated by the statement of undisputed facts below.

### C. Statement of Undisputed Facts[7]

Upon review of: (i) the Statements;(ii) the Barron Declaration, the Supplemental Barron Declaration, and Major Declaration together with the attached Trustee Exhibits, Supplemental

[7] This statement of undisputed facts is largely derived from the L.R. 56(a)(1) Statement, upon review of the citations to the Trustee Exhibits, the objections raised and additional facts stated in the L.R. 56(a)(2) Statement, and the Reply Statement. The Court has also drawn on the proposed additional material facts in the L.R. 56(a)(2) Statement. However, as discussed above, many of the proposed additional material facts set forth in the L.R. 56(a)(2) Statement are repetitive, irrelevant, or unsupported by citations to evidence.

Trustee Exhibits, and Greenwich Exhibits, including for their relevance and the inclusion of citations to supporting evidence; and (iii) the record of this adversary proceeding, the jointly administered Chapter 11 cases, and related adversary proceedings, including for its relevance, the Court, having above ruled on the Motion to Strike and the evidentiary disputes between the parties; and unsealing material to the extent necessary to issue this Opinion and warranted under section 107 of the Bankruptcy Code and precedent of the United States Court of Appeals for the Second Circuit,[8] states the following undisputed facts for the purposes of the Motion for Summary Judgment:

***Greenwich Land and Its Corporate Form, Ownership, Officers, and Place of Business***

1. Greenwich Land is a Delaware limited liability company. (Tr. Ex. 1.)

2. Ms. Ngok is the sole member of Greenwich Land. (Tr. Ex. 2.)

3. The limited liability company agreement states Ms. Ngok, as sole member, has certain powers and authority regarding Greenwich Land. (Tr. Ex. 2 ¶ 6.)

4. Ms. Ngok, Ms. Yanping "Yvette" Wang ("Ms. Wang"), Mr. Max Krasner ("Mr. Krasner"), and Mr. Daniel Podhaskie ("Mr. Podhaskie") have, at times, served as officers of

[8] Upon performing a particularized review of documents submitted in support of and in opposition to the Motion for Summary Judgment, pursuant to the balancing test propounded by the United States Court of Appeals for the Second Circuit in *Brown v. Maxwell*, 929 F.3d 41 (2d Cir. 2019), the Court determines, to the extent necessary to publish this unredacted Opinion, (i) the performance of the judicial function requires the unsealing of the material previously sealed by orders (the "Sealing Orders") of the Court (*see* ECF Nos. 87, 88, 119); and (ii) the strong presumption of public access to the material submitted at summary judgment is not rebutted by the privacy and commercial information interests in maintaining the sealing of the material, *Maxwell*, 929 F.3d at 47; *see* 11 U.S.C. § 107; *United States v. Amodeo*, 71 F.3d 1044, 1050–51 (2d Cir. 1995); *In re Purdue Pharma*, 632 B.R. 34 (Bankr. S.D.N.Y. 2021). Moreover, the parties have agreed that the content of the Statements may be unsealed and publicly filed. (Jan. 9, 2024 Hr'g Tr. at 70:7–77:15, ECF No. 127.) Therefore, such materials are unsealed to such extent. Except as provided herein, the Sealing Orders remain in full force and effect until further order of the Court.

Greenwich Land. Greenwich Land has had no other officers. Presently, only Ms. Ngok is an officer of Greenwich Land.

5. During a Rule 2004 deposition of Ms. Ngok in her individual capacity taken in the Individual Debtor's Chapter 11 case on January 5, 2023 (the "January 2023 Ngok Deposition"), she testified:

a. she does not know the name of anyone who is or has ever been an officer of Greenwich Land (Tr. Ex. 20, at *47:12–48:1, 78:14–21);

b. she has never had any interaction with Ms. Wang in connection with Greenwich Land and she did not know whether Ms. Wang was an officer or employee of Greenwich Land (Tr. Ex. 20, at *47:1–11);

c. she is not familiar with Mr. Podhaskie, and she "do[es]n't know this person" (Tr. Ex. 20, at *51:13–15, 85:1–4); and

d. she is "not familiar" with Mr. Krasner (Tr. Ex. *20, at 45:17–18).

6. During a deposition of Ms. Ngok in her individual capacity and in her capacity as the Rule 30(b)(6) corporate representative of Greenwich Land taken in this adversary proceeding on September 11, 2023 (the "September 2023 Ngok Deposition"), she testified Mr. Krasner "has nothing to do with [her], and [she has] no relationship with him whatsoever." (Tr. Ex. 21, at *164:21–165:5.)

7. Ms. Wang, Mr. Krasner, and Mr. Podhaskie each opened bank accounts on behalf of Greenwich Land. (Tr. Exs. 13–16; Supp. Tr. Exs. 68 ¶¶ 35, 50, 71 ¶ 6, 72 ¶ 19.)

8. On behalf of Greenwich Land, Mr. Krasner executed sale agreements and other closing documents related to the purchases of the Ferncliff and Taconic Properties and the sale of the Ferncliff Property. (Tr. Exs. 17, 18, 52.)

9. On behalf of Greenwich Land, Golden Spring, and HDNY, Mr. Krasner communicated with Attorney Conboy regarding real estate matters. (Tr. Ex. 19, at *18:13–22:17.)

10. Ms. Wang, Mr. Krasner, and Mr. Podhaskie have occupied positions at entities allegedly controlled by the Individual Debtor, including the Individual Debtor's adjudged *alter ego*, Golden Spring. (Tr. Exs. 4 ¶ 1, 6–10, 11 ¶ 9a, 64; Supp. Tr. Ex. 69 ¶¶ 8, 9.)

11. During a deposition in another adversary proceeding related to the Individual Debtor's Chapter 11 case taken on March 2, 2023 (the "March 2023 Kwok Deposition"), the Individual Debtor invoked his Fifth Amendment rights against self-incrimination regarding whether Ms. Wang, Mr. Krasner, and Mr. Podhaskie were his employees and/or agents. (Tr. Ex. 12, at *33:11–24, 34:7–20, 86:11–87:5.)

12. In a sworn declaration dated May 11, 2023 (the "May 2023 Kwok Declaration"), the Individual Debtor invoked his Fifth Amendment rights against self-incrimination regarding whether he has control over Ms. Wang, Mr. Krasner, and Mr. Podhaskie. (Tr. Ex. 22 ¶¶ 2, 36, 46.)

13. Greenwich Land has maintained an address at 162 East 64th Street, New York, New York (the "64th Street Address"). (*See, e.g.*, Tr. Ex. 23; Supp. Tr. Ex. 69 ¶ 10.)

14. The 64th Street Address has been used by, among others:

a. the Individual Debtor (Main Case ECF No. 1);

b. the Individual Debtor's *alter ego* Golden Spring (Main Case ECF No. 1; Order Granting Motion for Default Judgment, *Despins ex rel. Kwok v. Golden Spring (New York) LTD (In re Kwok)*, Case No. 22-50073 (JAM), Adv. P. No. 23-05018 (JAM) (Bankr. D. Conn. Dec. 4, 2023), ECF No. 35);

c. the Individual Debtor's *alter ego* HK USA (Tr. Ex. 25; Memorandum of Decision and Order Granting Motion for Summary Judgment, *HK Int'l Funds Invs.*

*(USA) Ltd. v. Despins ex rel. Kwok (In re Kwok)*, Case No. 22-50073 (JAM), Adv. P. No. 22-05003 (JAM) (Bankr. D. Conn. May 18, 2023), ECF No. 221);

d. HDNY (Tr. Ex. 28; Supp. Tr. Ex. 69 ¶ 11);

e. other entities associated with the Individual Debtor, *e.g.*, GTV Media Group, Inc., Saraca, Hudson Diamond Holding LLC ("HD Holding"), and the Rule of Law Foundation (Tr. Exs. 26–29; Supp. Tr. Ex. 69 ¶ 11; Corrected Memorandum of Decision Granting in Part Motion for Preliminary Injunction (the "PI Decision") ¶¶ 3, 7, *Pac. All. Asia Opportunity Fund LP v. Kwok (In re Kwok)*, Case No. 22-50073 (JAM), Adv. P. No. 22-05032 (JAM) (Bankr. D. Conn. Jan. 13, 2023), ECF No. 133); and

f. Attorney Aaron Mitchell, who represents the Individual Debtor in, among other matters, his Chapter 11 case (Tr. Ex. 24).

15. During the March 2023 Kwok Deposition, the Individual Debtor asserted his Fifth Amendment rights against self-incrimination regarding whether he beneficially owns Greenwich Land. (Tr. Ex. 12, at *96:17–20.)

16. In the May 2023 Kwok Declaration, the Individual Debtor asserted his Fifth Amendment rights against self-incrimination regarding whether he controls Greenwich Land. (Tr. Ex. 22 ¶ 126.)

***Greenwich Land's Financial Activity***

17. In the Greenwich Parties' supplemental responses to interrogatories (the "Supplemental Responses"), the Greenwich Parties admit:

a. Ms. Ngok "did not directly participate in real estate transactions or any banking or other financial transactions of Greenwich Land" (Tr. Ex. 3 Response No. 1; *see also* Tr. Ex. 3 Response Nos. 2, 5); and

b. Ms. Ngok "does not know the source of the funds in [Greenwich Land's] bank accounts" (Tr. Ex. 3 Response No. 2)

18. During the September 2023 Ngok Deposition, Ms. Ngok testified:

a. she does not know at which banks Greenwich Land has or had bank accounts (Tr. Ex. 21, at *28:8–14); and

b. she does not know who has or had the right to spend money from Greenwich Land bank accounts (Tr. Ex. 21, at *28:23–29:11).

***(i) Greenwich Land's Bento Account***

19. In or around October 2020, Greenwich Land opened a Bento for Business ("Bento") bank account. (Tr. Ex. 30, at *HWK-Bento:000497–98; Supp. Tr. Ex. 70 ¶¶ 5–39.)

20. During the September 2023 Ngok Deposition, Ms. Ngok testified she does not know what Bento is. (Tr. Ex. 21, at *113:1–3.)

21. Ms. Ngok, Mr. Krasner, Ms. Guo – the Individual Debtor's and Ms. Ngok's daughter, Mr. Chunguang Han ("Mr. Han") – the family chef (*see* Tr. Ex. 21, at *142:12–144:8), and Mr. Podhaskie used debit cards in their names under Greenwich Land's Bento account, and each spent funds in Greenwich Land's Bento account as follows:

| **Cardholder** | **Ms. Ngok** | **Mr. Krasner** | **Mr. Podhaskie** | **Ms. Guo** | **Mr. Han** | **Total** |
|---|---|---|---|---|---|---|
| **Spending 10/26/2020–7/31/2023** | **$718,978.56**<br>2,788 debit transactions | **$358,879.29**<br>294 debit transactions | **$1,739.46**<br>2 debit transactions | **$321,893.24**<br>1,349 debit transactions | **$129,191.77**<br>386 debit transactions | **$1,530,682.32**<br>4,819 debit transactions |

(Tr. Ex. 30 at *HWK-Bento:000499–701; Supp. Tr. Ex. 70 ¶¶ 5–39.)

22. Ms. Guo and Mr. Han were never officers or employees of Greenwich Land. They never held any role at Greenwich Land.

23. During the September 2023 Ngok Deposition, Ms. Ngok testified she does not know why Ms. Guo, her daughter, and Mr. Han, the family chef, were issued cards for the Greenwich Land Bento account despite not being employees, officers, directors, managers, or members of Greenwich Land. (Tr. Ex. 21, at *150:23–51:6.)

Case: 25-2742, 02/11/2026, DktEntry: 37.1, Page 91 of 153

24. On November 5, 2022, Mr. Krasner resigned from his position as Vice President of Greenwich Land. (Tr. Ex. 32, at *2.)

25. After November 5, 2022, Mr. Krasner, using a debit card associated with Greenwich Land's Bento account, or, another individual using the same Bento debit card, spent at least $62,823.13, including without limitation:

a. on January 27, 2023, more than $18,000.00 on Hermès goods or services (Tr. Ex. 30, at *HWK-Bento: 000668; Supp. Tr. Ex. 70 ¶¶ 5–39);

b. between November 17, 2022 and February 17, 2023, more than $8,400.00 on Paul Miller GT-Inc. Bentley goods or services (Tr. Ex. 30, at *HWK-Bento: 000646, 000672; Supp. Tr. Ex. 70 ¶¶ 5–39);

c. on January 18, 2023, more than $5,900.00 on Barclay Rex goods or services (Tr. Ex. 30, at *HWK-Bento: 000667; Supp. Tr. Ex. 70 ¶¶ 5–39);

d. on February 27, 2023, more than $3,800.00 on Prada USA goods and services (Tr. Ex. 30, at *HWK-Bento: 000676; Supp. Tr. Ex. 70 ¶¶ 5–39);

e. on December 12, 2022, more than $1,300.00 on Lois Vuitton goods or services (Tr. Ex. 30, at *HWK-Bento: 000655; Supp. Tr. Ex. 70 ¶¶ 5–39); and

f. between November 17, 2022 and February 24, 2023, more than $8,400.00 at Harry Cipriani, a restaurant located inside the Sherry-Netherland Hotel, wherein the Individual Debtor has resided in an apartment owned by Genever Holdings LLC, which corporate entity's Chapter 11 case is jointly administered with the Individual Debtor's Chapter 11 case (Tr. Ex. 30, at *HWK-Bento: 000647, 000650–51, 000666–68, 000670–72, 000674; Supp. Tr. Ex. 70 ¶¶ 5–39).

(Tr. Ex. 30, at *HWK-Bento: 000643–92; Supp. Tr. Ex. 70 ¶¶ 5–39.)

26. During the September 2023 Ngok Deposition, Ms. Ngok testified she does not know why Mr. Krasner spent money from Greenwich Land's Bento account after he resigned from his position with Greenwich Land. (Tr. Ex. 21, at *161:9–162:1, 163:9–23, 163:25–164:12.)

27. On March 28, 2023, the Court, for the reasons stated therein, entered the TRO, enjoining the Greenwich Parties from, among other things, transferring and dissipating any property and/or assets of Greenwich Land. (ECF No. 14.)

28. On May 26, 2023, the Court entered the Consensual PI, enjoining the Greenwich Parties from, among other things, transferring and dissipating any property and/or assets of Greenwich Land. (ECF No. 53.)

29. Between March 28, 2023 and July 31, 2023, persons with access to Greenwich Land's Bento bank accounts spent more than $34,300.00 of Greenwich Land's funds. (Tr. Ex. 30, at *HWK-Bento: 000682, 000691, 000695, 000699, 000702; Supp. Tr. Ex. 70 ¶¶ 5–39.)

***(ii) Greenwich Land's Bank of Princeton Account***

30. In September 2020, Greenwich Land opened an account at The Bank of Princeton ("BP"). (Tr. Ex. 15; Supp. Tr. Ex. 72 ¶ 19.)

31. On October 15, 2020, Greenwich Land's BP account received a transfer of $5,000,000.00 from Savio Law LLC ("Savio Law"). (Tr. Ex. 35; Supp. Tr. Ex. 72 ¶ 11.)

32. On October 21 and 23, 2020, Greenwich Land's BP account received transfers of $999,893.22 and $3,999,915.00, respectively, from ACA Capital Group Ltd. ("ACA Capital"). (Tr. Ex. 35; Supp. Tr. Ex. 72 ¶ 11.)

33. During the September 2023 Ngok Deposition, Ms. Ngok testified she does not know why, in October 2020, Greenwich Land received in its BP account approximately $10,000,000.00, in aggregate, from Savio Law and ACA Capital. (Tr. Ex. 21, at *174:22–175:3.)

34. During the March 2023 Kwok Deposition, the Individual Debtor asserted his Fifth Amendment rights against self-incrimination regarding whether he is the beneficial owner of and/or holds exclusive control over ACA Capital. (Tr. Ex. 12, at *72:23–73:11.)

35. In the May 2023 Kwok Declaration, the Individual Debtor asserted his Fifth Amendment rights regarding whether he has control over ACA Capital. (Tr. Ex. 22 ¶ 62.)

36. On October 26, 2020 and November 12, 2020, Greenwich Land transferred, respectively, $32,220.00 and $38,500.00 from its BP account to Sherry-Lehman Inc. (Tr. Ex. 33, 35; Supp. Tr. Ex. 72 ¶ 11.)

37. On both November 3, 2020 and December 16, 2020, Greenwich Land transferred $50,000.00 from its BP account to its Bento account. (Tr. Exs. 30, at *HWK-Bento: 000499, 000503, 33, 38; Supp. Tr. Exs. 70 ¶¶ 5–39, 72 ¶¶ 15, 18.)

38. On November 12, 2020, Greenwich Land transferred $200,000.00 from its BP account to an account at First County Bank held in the name of Ms. Ngok. (Tr. Exs. 33, 37; Supp. Tr. Ex. 72 ¶¶ 13, 15.)

39. On November 20, 2020, Greenwich Land transferred $9,000,000.00 from its BP account to the BP account held in the name of Lamp Capital LLC ("Lamp Capital"). (Tr. Exs. 33, 34; Supp. Tr. Ex. 72 ¶¶ 15, 21.)

40. During the September 2023 Ngok Deposition, Ms. Ngok testified she does not know why, in November 2020, Greenwich Land transferred $9,000,000.00 to Lamp Capital (Tr. Ex. 21, at *173:21–25, 174:3–11), and who authorized the transfer from Greenwich Land to Lamp Capital (Tr. Ex. 21, at *175:5–8).

41. On December 18, 2020, Greenwich Land transferred $628,863.22 from its BP account to its bank account at Capital One Bank ("Capital One"). (Tr. Ex. 38, 39; Supp. Tr. Ex. 72 ¶¶ 17, 18.)

42. On December 21, 2020, the Greenwich Land BP account was closed. (Tr. Ex. 15; Supp. Tr. Ex. 72 ¶ 19.)

***Greenwich Land's Real Estate Transactions***

43. In the Supplemental Responses, the Greenwich Parties admit:

a. Ms. Ngok "did not directly participate in real estate transactions or any banking or other financial transactions of Greenwich Land" (Tr. Ex. 3 Response No. 1; *see also* Tr. Ex. 3 Response Nos. 2, 5); and

b. Ms. Ngok "does not know the source of funds used to purchase [the Ferncliff and Taconic Properties]" (Tr. Ex. 3 Response No. 4).

***(i) Purchase of the Ferncliff Property***

44. Greenwich Land purchased and later sold the real property and fixtures located at 33 Ferncliff Road, Cos Cob, Connecticut 06807, above defined as the "Ferncliff Property".

45. During the January 2023 Ngok Deposition, Ms. Ngok was shown a picture of the Ferncliff Property and did not recognize it. (Tr. Ex. 20, at *134:12–20.)

46. The purchase of the Ferncliff Property was funded as follows:

a. on August 16, 2019, HDNY transferred $1,500,000.00 from its Capital One account to Greenwich Land's Capital one account (Tr. Exs. 43, 44; Supp. Tr. Ex. 68 ¶¶ 18, 49);

b. on August 19, 2019, Greenwich Land transferred $137,000.00 from its Capital One account to the custodial account of Greenwich Land's counsel, Whitman Breed Abbot & Morgan ("Whitman Breed"), which amount corresponded to the down payment on the Ferncliff Property (Tr. Exs. 17, at *GREE000195, 44; Supp. Tr. Ex. 68 ¶ 18); and

c. on August 27, 2019, Greenwich Land transferred another $1,244,373.29 from its Capital One account to Whitman Breed's custodial account, which amount corresponded to the remainder of the purchase price for the Ferncliff Property and associated expenses (Tr. Exs. 17, at *GREE000195–96, 44; Supp. Tr. Ex. 68 ¶ 18).

47. During the September 2023 Ngok Deposition, Ms. Ngok testified:

a. she has never heard of HDNY (Tr. Ex. 21, at *35:5–7);

b. she did not know why, on August 16, 2019, HDNY transferred $1,500,000.00 to Greenwich Land (Tr. Ex. 21, at *55:4–8); and

c. she does not remember whether she asked HDNY to transfer $1,500,000.00 to Greenwich Land (Tr. Ex. 21, at *52:21–25).

48. During the March 2023 Kwok Deposition, the Individual Debtor asserted his Fifth Amendment rights against self-incrimination regarding whether he owned and/or controlled HDNY. (Tr. Ex. 12, at *49:15–50:7.)

49. Ms. Guo – the daughter of the Individual Debtor and Ms. Ngok – is the indirect record owner of HDNY through her record ownership of HD Holding. (Tr. Exs. 7, 41; Supp. Tr. Ex. 69 ¶¶ 6, 9.)

50. Ms. Wang, Mr. Krasner, and Mr. Podhaskie are or were authorized signatories of HDNY. (Tr. Exs. 7, 42; Supp. Tr. Ex. 69 ¶¶ 9, 12.)

51. During a deposition of Ms. Guo taken in this adversary proceeding on September 13, 2023 (the "September 2023 Guo Deposition"), she asserted her Fifth Amendment rights against self-incrimination regarding whether the Individual Debtor owned and controlled HDNY and directed transfers of its money to Greenwich Land. (Tr. Ex. 31, at *40:17–44:17, 68:13–21, 74:15–75:20.)

52. During the September 2023 Guo Deposition, Ms. Guo invoked her Fifth Amendment rights against self-incrimination regarding whether her father, the Individual Debtor, directed the transfer of approximately $1,500,000.00 from HDNY to Greenwich Land for the purchase of the Ferncliff Property. (Tr. Ex. 31, at *65:12–21, 67:6–25, 69:24–70:5.)

53. Attorney Conboy is a partner at Whitman Breed, the law firm that represented Greenwich Land, Golden Spring, and HDNY, as local counsel, with respect to the purchase and sale of the Ferncliff Property and other matters related to Connecticut real estate, except the purchase of the Taconic Property. (Tr. Ex. 19, at *18:13–22:13.)

54. During deposition in this adversary proceeding taken on September 12, 2023 (the "September 2023 Conboy Deposition"), Attorney Conboy testified:

Case: 25-2742, 02/11/2026, DktEntry: 37.1, Page 96 of 153

a. she referred to the Individual Debtor as her client (Tr. Exs. 19, at *33:12–23, 33:25–34:4, 37:13–38:1, 61, 62);

b. she received instructions from Mr. Krasner (Tr. Ex. 19, at *22:14–17, 51:16–25, 66:22–25);

c. she never communicated with Ms. Ngok (Tr. Ex. 19, at *22:19–22); and

d. she was advised on multiple occasions that the Individual Debtor was making decisions, including as to (i) the acceptance of offers, (ii) the selection of furniture, and (iii) whether to move forward on any potential property purchase (Tr. Exs. 19, at *49:4–18, 51:16–53:22, 62–64).

55. During the January 2023 Ngok Deposition, Ms. Ngok admitted she never lived at the Ferncliff Property, stating it was in a dangerous area. (Tr. Ex. 20, at *21:1–7.)

***(ii) Lease of the Ferncliff Property***

56. Dated September 3, 2019, a lease agreement was executed by and between Mr. Krasner on behalf of Greenwich Land, and Mr. Dinggang Wang ("Mr. Wang") to rent the Ferncliff Property to Mr. Wang. (Tr. Ex. 46 Ex. A.)

57. During the September 2023 Ngok Deposition, Ms. Ngok testified she is not familiar with Mr. Wang (Tr. Ex. 21, at *175:9–15) and does not know anything about his tenancy at the Ferncliff Property (Tr. Ex. 21, at *175:16–176:19, 178:14–18).

58. Dated September 24, 2019, a waiver agreement was executed by and between Mr. Krasner on behalf of Greenwich Land, and Mr. Wang, which waived Mr. Wang's rental obligation in return for Mr. Wang providing complimentary "professional services to assist Greenwich [Land] and its affiliates with various projects including, but not limited to, media consulting." (Tr. Ex. 47 Ex. A.)

59. A lease renewal agreement and a "Residential Lease Renewal Waiver Agreement", each dated October 9, 2020, were executed by and between Mr. Krasner on behalf of Greenwich Land, and Mr. Wang, under which Mr. Wang's rental obligation was waived "in exchange for

Wang's agreement to provide professional services to assist Greenwich and its affiliates, including Saraca, with its various projects . . ..." (Tr. Exs. 46–47.)

60. This Court has previously found Saraca to be connected to the Individual Debtor's media ventures. (*See* PI Decision ¶ 3.)

61. A fuel supply contract and a gas bill were delivered to the Ferncliff Property under the Individual Debtor's name. (Tr. Exs. 50–51.)

***(iii) Sale of the Ferncliff Property and the Ferncliff Proceeds***

62. On May 6, 2021, the Clerk of Court for the Delaware Superior Court issued an out of state subpoena to be served on Greenwich Land by Pacific Alliance Asia Opportunity Fund L.P. ("PAX"), which subpoena instructed Greenwich Land that, pursuant to N.Y. C.P.L.R. 5222(b), dissipation of its assets could result in a contempt citation in the New York Supreme Court action styled *Pacific Alliance Asia Opportunity Fund L.P. v. Kwok Ho Wan*, Index No. 652077/2017 (N.Y. Sup. Ct. Feb. 9, 2022). (Tr. Ex. 36.)

63. On February 15, 2022, the Individual Debtor filed his voluntary Chapter 11 petition with the Court.

64. On April 6, 2022, Mr. Krasner opened an account at First Bank of Greenwich ("First Bank") for Greenwich Land. (Tr. Ex. 16; Supp. Tr. Ex. 71 ¶ 6.)

65. On April 28, 2022, Greenwich Land sold the Ferncliff Property. (Tr. Ex. 52, at *GREE000426.)

66. Whitman Breed represented Greenwich Land in the sale of the Ferncliff Property. On April 28, 2022 – the date of sale, Whitman Breed transferred the sale proceeds of $2,207,243.89, the above-defined "Ferncliff Proceeds", to Greenwich Land's account at First Bank of Greenwich ("First Bank"). (Tr. Ex. 53; Supp. Tr. Ex. 71 ¶ 5.)

67. During the September 2023 Ngok Deposition, Ms. Ngok testified she has no recollection of what Greenwich Land did with the Ferncliff Proceeds. (Tr. Ex. 21, at *92:23–93:4.)

68. Between May 2022 and March 2023, $630,000.00 of the Ferncliff Proceeds were transferred from Greenwich Land's account at First Bank to its Bento account in 63 separate transfers, each in the amount of $10,000.00. (Tr. Exs. 30, 54; Supp. Tr. Exs. 70 ¶¶ 5–39, 71 ¶¶ 5, 6.)

69. During the September 2023 Ngok Deposition, Ms. Ngok testified she does not know (a) why, between May 2022 and March 2023, Greenwich Land transferred, in aggregate, $630,000.00 to its Bento account through 63 transfers, (b) who authorized these transfers, or (c) who had authority to authorize these transfers. (Tr. Ex. 21, at *117:18–18:21.)

70. Between May 2022 and December 2022, Greenwich Land transferred $875,000.00 from its First Bank account to Gypsy Mei Food Services LLC ("Gypsy Mei"). (Tr. Ex. 55; Supp. Tr. Ex. 71 ¶ 7.)

71. During the September 2023 Ngok Deposition, Ms. Ngok testified she was not familiar with Gypsy Mei and did not know why Greenwich Land transferred $875,000.00 of the Ferncliff Proceeds between May and December 2022 to Gypsy Mei or who at Greenwich Land authorized the transfers. (Tr. Ex. 21, at *127:14–17, 131:25–132:9, 132:17–20.)

72. Ms. Guo is a member of Gypsy Mei. (Tr. Ex. 45, at *HR0003019–23; Supp. Tr. Ex. 69 ¶ 5.)

73. During the September 2023 Guo Deposition, she invoked her Fifth Amendment rights against self-incrimination regarding (a) whether her father, the Individual Debtor, directed the $875,000.00 in transfers from Greenwich Land to Gypsy Mei, for his own benefit; and (b)

whether all the $875,000.00 transferred from Greenwich land to Gypsy Mei remained under the authority and control of the Individual Debtor. (Tr. Ex. 31, at *101:18–102:13, 103:21–104:11.)

74. On June 6, 2022, August 22, 2022, and October 13, 2022, Greenwich Land transferred $79,914.88, $59,590.26, and $53,311.90, respectively, from its First Bank account to Zeisler & Zeisler PC ("Zeisler") for a total of $192,917.04 transferred to Zeisler on those dates. (Tr. Ex. 55; Supp. Tr. Ex. 71 ¶ 7.)

75. Zeisler is counsel to both the Individual Debtor and Ms. Guo in the Individual Debtor's Chapter 11 case and counsel to Ms. Guo in several related adversary proceedings. Zeisler does not represent Greenwich Land or Ms. Ngok in the Individual Debtor's Chapter 11 case or related adversary proceedings.

76. On November 23, 2022, Greenwich Land transferred $19,575.00 from its First Bank account to Lawall & Mitchell LLC ("L&M"). (Tr. Ex. 55; Supp. Tr. Ex. 71 ¶ 7.)

77. L&M is counsel to the Individual Debtor in his Chapter 11 case. L&M does not represent Greenwich Land or Ms. Ngok in the Individual Debtor's Chapter 11 case or related adversary proceedings.

78. On February 2, 2023, Greenwich Land transferred $29,748.62 from its First Bank account to Chiesa Shahinian & Giantomasi P.C. ("CSG"). (Tr. Ex. 55; Supp. Tr. Ex. 71 ¶ 7.)

79. CSG is counsel to Ms. Guo in the Individual Debtor's Chapter 11 case and several related adversary proceedings. CSG does not represent Greenwich Land or Ms. Ngok in the Individual Debtor's Chapter 11 case or related adversary proceedings.

80. On December 7, 2022, Greenwich Land transferred $75,000.00 from its First Bank account to V.X. Cerda & Associates ("Cerda"). (Tr. Ex. 55; Supp. Tr. Ex. 71 ¶ 7.)

81. Cerda does not represent Greenwich Land or Ms. Ngok in the Individual Debtor's Chapter 11 case or related adversary proceedings.

82. Between September and December 2022, Greenwich Land transferred $26,297.50 from its First Bank account to the Mar-a-Lago Club ("Mar-a-Lago"). (Tr. Ex. 55; Supp. Tr. Ex. 71 ¶ 7.)

83. During the September 2023 Ngok Deposition, Ms. Ngok testified that she had not been to Mar-a-Lago in at least four (4) years. (Tr. Ex. 21, at *137:5–8.)

***(iv) Purchase of the Taconic Property***

84. The purchase of the real property and fixtures located at 373 Taconic Road, Greenwich, Connecticut 06831, above defined as the "Taconic Property", was funded as follows:

a. on February 12, 2020, HDNY transferred $500,000.00 from its Capital One account to Greenwich Land's Capital One account (Tr. Exs. 66–67; Supp. Tr. Ex. 68 ¶¶ 7, 46);

b. on February 13, 2020, Greenwich Land transferred $460,000.00 from its Capital One account to an account of the law firm Ivey, Barnum & O'Mara ("Ivey Barnum") (Tr. Ex. 67; Supp. Tr. Ex. 68 ¶ 7), its counsel in connection with the purchase of the Taconic Property (Tr. Ex. 18, at *GREE000330), which amount corresponded to the down payment in connection with the purchase (Tr. Ex. 40);

c. on February 18, 2020, Greenwich Land received a transfer of $2,000,000.00 into its Capital One account from Saraca (Tr. Ex. 67; Supp. Tr. Ex. 68 ¶ 7), and, on February 19, 2020, HDNY transferred another $2,300,000.00 from its Capital One account to Lamp Capital's Capital One account (Tr. Exs. 66–67; Supp. Tr. Ex. 68 ¶¶ 7, 46); and

d. on February 19, 2020, Greenwich Land transferred $4,187,846.77 from its Capital One account to an account of Ivey Barnum (Tr. Ex. 67; Supp. Tr. Ex. 68 ¶ 7), which amount corresponded to the balance of the purchase price of the Taconic Property and certain expenses (Tr. Ex. 40).

85. During the September 2023 Ngok Deposition, Ms. Ngok testified that she did not know why, in February 2020, HDNY and Saraca had transferred funds to Greenwich Land. (Tr. Ex. 21, at *83:1–11.)

86. During the September 2023 Guo Deposition, Ms. Guo, the indirect, record owner of HDNY, invoked her Fifth Amendment rights against self-incrimination regarding whether her father, the Individual Debtor, directed the transfer in February 2020 of $2,800,000.00 from HDNY to Greenwich Land for the purchase of the Taconic Property. (Tr. Ex. 31, at *75:21–77:5.)

87. During a deposition in this adversary proceeding taken on August 24, 2024 (the "August 2024 de Neree Deposition"), Mr. de Neree, the buyer-side real estate broker in connection with the purchase of the Taconic Property (Tr. Ex. 48, at *12:20–13:3, 14:4–20, 18:13–20:21, 21:3–22:4, 39:22–40:24), testified that:

a. on February 11, 2020, the Individual Debtor was present at a showing of the Taconic Property (Tr. Ex. 48, at *45:11–22), where he told Mr. de Neree, in English, that he was willing to make an offer of $4,600,000.00 to purchase the Taconic Property (Tr. Ex. 48, at *45:23–47:25);

b. based on his interactions with the Individual Debtor, Mr. de Neree understood that it was the Individual Debtor who was purchasing the Taconic Property under Greenwich Land (Tr. Ex. 48, at *51:11–22, 54:5–19);

c. the Individual Debtor made the decision to purchase the Taconic Property, set the offer price, and had the details of the transaction handled by Mr. Krasner, whom Mr. de Neree understood to be the Individual Debtor's assistant (Tr. Ex. 48, at *46:10–47:12, 54:20 – 55:1);

d. on February 15, 2020, the Individual Debtor and Mr. de Neree were together at the Taconic Property again to meet with an interior designer and architect about changes the Individual Debtor wanted to make to the Taconic Property (Tr. Ex. 48, at *56:14–58:8);

e. the Individual Debtor's wife, daughter, and son were present at a visit to the Taconic Property, at which visit the Individual Debtor was also present, but Mr. de Neree never knew or does not remember their names (Tr. Ex. 48, at *69:7 – 23; 107:11–18); and

f. the Individual Debtor never expressed to Mr. de Neree that Ms. Ngok was the one purchasing the Taconic Property and Mr. de Neree never understood that someone other than the Individual Debtor was making the decision to buy the Taconic Property (Tr. Ex. 48, at *108:16–09:1).

88. Ms. Ngok lives at the Taconic Property.

89. Since Greenwich Land's purchase of the Taconic Property on February 19, 2020, the Individual Debtor has used the Taconic Property as his residence, where he has resided with his wife, Ms. Ngok, when not residing elsewhere, such as at his apartment in the Sherry-Netherland Hotel or at a mansion in Mahwah, New Jersey. (Decl. of Mr. Ho Wan Kwok ¶ 6, Main Case ECF No. 107.) (Tr. Ex. 21, at *80:23–81:13.)

***Greenwich Parties' Lack of Relevant Knowledge***

90. As stated above, in the Supplemental Responses, the Greenwich Parties admit, among other things:

a. Ms. Ngok "did not directly participate in real estate transactions or any banking or other financial transactions of Greenwich Land" (Tr. Ex. 3 Response No. 1; *see also* Tr. Ex. 3 Response Nos. 2, 5);

b. Ms. Ngok "does not know the source of the funds in [Greenwich Land's] bank accounts" (Tr. Ex. 3 Response No. 2);

c. Ms. Ngok "does not know the source of funds used to purchase [the Ferncliff and Taconic Properties]" (Tr. Ex. 3 Response No. 3); and

d. Ms. Ngok "does not know anything about the [Ferncliff Proceeds]" (Tr. Ex. 3 Response No. 4).

91. As stated above, during the September 2023 Ngok Deposition, Ms. Ngok, in her individual capacity and in her capacity as the Rule 30(b)(6) corporate representative of Greenwich Land, testified, among other things:

a. Ms. Ngok did not know at which banks Greenwich Land has or had bank accounts (Tr. Ex. 21, at *28:8–14);

b. Ms. Ngok does not know who has or had the right to spend money from Greenwich Land bank accounts (Tr. Ex. 21, at *28:23–29:11);

c. Ms. Ngok has never heard of HDNY (Tr. Ex. 21, at *35:5–7);

d. Ms. Ngok does not know why, on August 16, 2029, HDNY transferred $1,500,000.00 to Greenwich Land (Tr. Ex. 21, at *55:4–8) and does not remember whether she asked HDNY to transfer $1,500,000.00 at that time (Tr. Ex. 21, at *52:21–25);

e. Ms. Ngok does not know why, in February 2020, HDNY and Saraca transferred a total of $4,800,000.00 to Greenwich Land (Tr. Ex. 21, at *83:1–11);

f. Ms. Ngok has no recollection of what Greenwich Land did with the Ferncliff Proceeds (Tr. Ex. 21, at *92:23–93:4);

g. Ms. Ngok does not know what Bento is (Tr. Ex. 21, at *113:1–3) and does not know why, between May 2022 and March 2023, Greenwich Land made 63 transfers of $10,000.00 each – for a total transfer of $630,000.00 – to Bento, who authorized these transfers, or who had authority to authorize these transfers (Tr. Ex. 21, at *117:18–118:21);

h. Ms. Ngok is not familiar with Gypsy Mei (Tr. Ex. 21, at *127:14–17), does not know why, between May 2022 and December 2022, Greenwich Land transferred a total of $875,000.00 to Gypsy Mei (Tr. Ex. 21, at *132:17–20), or who at Greenwich Land authorized the transfers to Gypsy Mei (Tr. Ex. 21, at *131:25–132:9);

i. Ms. Ngok does not know why Ms. Guo, her daughter, and Mr. Han, the family chef, were issued cards for the Greenwich Land Bento account despite not being employees, officers, directors, managers, or members of Greenwich Land (Tr. Ex. 21, at *150:23–151:6);

j. Ms. Ngok does not know why Mr. Krasner spent money from Greenwich Land's Bento account after he resigned from his position with Greenwich Land (Tr. Ex. 21, at *161:9–162:1, 163:9–23, 163:25–164:12);

k. Ms. Ngok does not know why, in October 2020, Greenwich Land received approximately $10,000,000.00, in aggregate, from Savio Law and ACA Capital (Tr. Ex. 21, at *174:22–175:3), why, in November 2020, Greenwich Land transferred $9,000,000.00 to Lamp Capital (Tr. Ex. 21, at *173:21–25, 174:3–11), and who authorized the transfer from Greenwich Land to Lamp Capital (Tr. Ex. 21, at *175:5–8);

l. Ms. Ngok is not familiar with Mr. Wang (Tr. Ex. 21, at *175:9–15) and does not know anything about his tenancy at the Ferncliff Property (Tr. Ex. 21, at *175:16–176:19, 178:14–18).

92. As stated above, during the January 2023 Ngok Deposition, Ms. Ngok testified, among other things:

a. Ms. Ngok is not familiar with Mr. Krasner (Tr. Ex. 20, at *45:17–19);

b. Ms. Ngok is not familiar with Mr. Podhaskie (Tr. Ex. 20, at *51:13–14);

c. Ms. Ngok does not know the name of anyone who is or has ever been an officer of Greenwich Land (Tr. Ex; 20, at *47:12–48:1, 78:14–21); and

d. Ms. Ngok does not recognize the Ferncliff Property (Tr. Ex. 20, at *134:12–20).

## VI. DISCUSSION

The Motion for Summary Judgment seeks summary judgment on both (A) the First Claim of the Complaint alleging Greenwich Land is the *alter ego* of the Individual Debtor and, therefore, its property is property of the Estate, which property the Trustee seeks to have turned over; and (B) the Second Claim of the Complaint alleging Greenwich Land is beneficially owned and controlled by the Individual Debtor and, therefore, Ms. Ngok's membership interest in it is property of the Estate, which property the Trustee seeks to have turned over.

Section 541(a)(1) provides that a bankruptcy estate is comprised, in pertinent part, of "all legal or equitable interests of the debtor in property as of the commencement of the case". A debtor's legal and equitable interests in property are determined by applicable non-bankruptcy law. *Butner v. United States*, 440 U.S. 48, 55 (1979) (holding state law governs property rights) (case determined under the former Bankruptcy Act); *see Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Elec. Co.*, 549 U.S. 443, 450–51 (2007) (citing *Butner* and holding state law governed substance of claims relating to state law property rights); *Cohen v. de la Cruz*, 523 U.S. 213, 221 (1998) (holding law under the former Bankruptcy Act remains vital under the Bankruptcy Code absent indication of contrary congressional intent). Section 542(a) of the Bankruptcy Code provides for turnover of property of a bankruptcy estate via delivery to its trustee.

The applicable non-bankruptcy law is determined by the choice of law rules of this Court's forum state, namely, Connecticut. *Geron ex rel. Thelen LLP v. Seyfarth Shaw LLP (In re Thelen LLP)*, 736 F.3d 213, 219 (2d Cir. 2013). The Court concludes that Connecticut courts would apply Delaware law to both the First and Second Claims, which relate to the internal affairs and corporate governance of Greenwich Land. *See Weber v. U.S. Sterling Securities, Inc.*, 924 A.2d 816, 822–23 (Conn. 2007) (applying local law of state of formation to *alter ego* action and other internal affairs regarding an LLC); RESTATEMENT (SECOND) OF CONFLICT OF LAWS §§ 6, 303, 304. Moreover, the parties agree with this conclusion, applying Delaware law in their arguments.

### A. First Claim – *Alter Ego*

#### 1. Legal Standard

Turning to the Trustee's First Claim, "Delaware courts use the terms 'piercing the corporate veil' and 'alter ego' theory interchangeably." *Harrison v. Soroof Int'l, Inc.*, 320 F. Supp. 3d 602, 609 n. 4 (D. Del. 2018). Under Delaware law, *alter ego* or piercing the corporate veil has two elements: (i) the corporate entity whose form is to be disregarded is so dominated and controlled by its alleged *alter ego* that the corporate entity and its *alter ego* are, in fact, a single economic unit; and (ii) the corporate form to be disregarded causes fraud or some similar injustice. *See Pauley Petroleum Inc. v. Cont'l Oil Co.*, 239 A.2d 629, 633 (Del. 1968); *Wallace ex rel. Cencom Cable Income Partners II, Inc. v. Wood*, 752 A.2d 1175, 1184 (Del. Ch. 1999); *Geyer v. Ingersoll Publ'ns Co.*, 621 A.2d 784, 793 (Del. Ch. 1992); *see also Fletcher*, 68 F.3d at 1457 (applying Delaware law); *Tronox Inc. v. Anadarko Petroleum Corp. (In re Tronox Inc.)*, 549 B.R. 21, 43–44 (Bankr. S.D.N.Y. 2016) (applying Delaware law).

As to the first element, whether the alleged *alter ego* asserts dominion and control over the corporate entity, several factors are considered, including "(1) whether the company was

adequately capitalized for the undertaking; (2) whether the company was solvent; (3) whether corporate formalities were observed; (4) whether the dominant shareholder siphoned company funds; and (5) whether, in general, the company simply functioned as a facade for the dominant shareholder." *Manichaean Cap., LLC v. Exela Techs., Inc.*, 251 A.3d 694, 706 (Del. Ch. 2021) (internal citations omitted); *see Blair v. Infineon Tech., AG*, 720 F. Supp. 2d 462, 470–71 (D. Del. 2010). None of these factors are dispositive in determining dominion and control. *Manichaean Cap.*, 251 A.3d at 706–07; *Infineon Tech.*, 720 F. Supp. 2d at 471.

As to the second element, whether the corporate form causes fraud or similar injustice, it is not necessary to establish fraud – it is only necessary to establish injustice, *Fletcher*, 68 F.3d at 1457, or fraudulent intent in the creation of the corporate form – it is only necessary to establish that the corporate form *causes* fraud or a similar injustice, *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 177 (2d Cir. 2008) (applying Delaware law); *see Martin v. D.B. Martin Co.*, 88 A. 612, 615–16 (Del. Ch. 1913).

Delaware law allows outsider reverse veil-piercing, namely, making the assets of an entity available to the creditors of its parent or owner upon motion of said creditors. *Manichaean Cap.,* 251 A.3d at 714–15. In considering whether to reverse pierce the corporate veil, courts consider "the traditional factors Delaware courts consider when reviewing a traditional veil-piercing claim", discussed above, as well as additional factors reflecting the concern that creditors and other stakeholders of the entity might have their legitimate expectations thwarted. *Id.* Section 544 of the Bankruptcy Code provides bankruptcy trustees statutory standing to bring an outsider reverse veil-piercing action on behalf of creditors at large. 11 U.S.C. § 544(a); *see St. Paul Fire & Marine Ins. Co. v. PepsiCo, Inc.*, 884 F.2d 688, 700 (2d Cir. 1989); *Titan Real Estate Ventures, LLC v. MJCC Realty Ltd. P'ship (In re Flanagan)*, 415

B.R. 29, 47 (D. Conn. 2009); *see also Reid v. Wolf (In re Wolf)*, 644 B.R. 725, 748 (N.D. Ill. 2022); *Spradlin v. Beads & Steeds Inns, LLC (In re Howland)*, 516 B.R. 163, 166–67 (Bankr. E.D. Ky. 2014); *In re Archdiocese of Milwaukee*, 483 B.R. 693, 697 (Bankr. E.D. Wis. 2012).

**2. Conclusions of Law**
**i. Dominion and Control**

Regarding the first element of *alter ego*, the Trustee argues the Individual Debtor's dominion and control over Greenwich Land is established by (a) Greenwich Land being capitalized only by funding from entities related to the Individual Debtor and its capital similarly being transferred to such entities without business purpose; (b) Greenwich Land's bank accounts being used to fund personal spending of the Individual Debtor, his family, and his associates, including those who were never or were only formerly officers of Greenwich Land, unrelated to its purported business purpose of owning real estate in Greenwich, Connecticut; (c) the Individual Debtor's control over the purchase, use, and sale of the Ferncliff Property; (d) the Individual Debtor's control over the purchase of the Taconic Property and his residence therein; (e) Greenwich Land being staffed by known associates and employees of the Individual Debtor and sharing its business address with numerous entities related to the Individual Debtor; (f) the disregard for corporate formalities demonstrated by the foregoing; and (g) the extent to which Greenwich Land is merely a façade for the Individual Debtor, as demonstrated by the foregoing.

The Greenwich Parties argue the Trustee has not met his burden at summary judgment. They argue the Trustee has scant evidence to support a determination of dominion and control, because, as discussed above, they assert (1) much of the Trustee's evidence would be, for the plethora of reasons discussed above, inadmissible at trial and, as such, cannot be relied upon at summary judgment; (2) the Court cannot draw an adverse inference based on the individual Debtor's and Ms. Guo's invocation of their Fifth Amendment rights against self-incrimination;

and (3) the Court cannot take judicial notice of prior orders in these jointly administered Chapter 11 cases and related adversary proceedings or hold them to be law of the case. Moreover, the Greenwich Parties argue what evidence remains is, standing alone, insufficient to establish dominion and control. Finally, as discussed above, they contend there is a genuine dispute of material fact as to whether Mr. Guo, the Individual Debtor's and Ms. Ngok's son, bought the Ferncliff and Taconic Properties.

Above, the Court has overruled the Greenwich Parties' evidentiary objections and has ruled that they cannot rely on Ms. Ngok's deposition testimony taken in the Individual Debtor's Chapter 11 case to support their assertion that her son, Mr. Guo, purchased the Ferncliff and Taconic Properties for her. Therefore, the issue that remains is whether the undisputed facts stated above establish as a matter of law that the Individual Debtor exercised dominion and control over Greenwich Land. For the reasons stated below, the Court concludes a reasonable jury would find that the Individual Debtor so dominated and controlled Greenwich Land such that Greenwich Land had no separate economic existence from the Individual Debtor. *See Anderson*, 477 U.S. at 248.

**a. Individual Debtor's Control over Greenwich Land's Officers and Operations**

The undisputed facts establish that the Individual Debtor controlled Greenwich Land's officers and operations.

First, for her part, Ms. Ngok has neither knowledge of nor control over Greenwich Land's officers and operations. (Undisputed Facts 1–16, 90–92.) Ms. Ngok does not know Greenwich Land's former officers Mr. Krasner or Mr. Podhaskie, both of whom opened bank accounts for Greenwich Land and spent its funds and the latter of whom, Mr. Krasner, worked on Greenwich Land's real estate transactions. (*Compare* Undisputed Facts 4–6 *with* Undisputed

Facts 7–9, 21, 54, 56–59, 64, 87.) Without this knowledge, she could not and did not know and control their activities on behalf of Greenwich Land. (Undisputed Facts 90–92). While Ms. Ngok knows Ms. Wang personally, she is unaware of her former role at Greenwich Land. (Undisputed Facts 4–7.)

Second, Mr. Krasner, in his role as an officer of Greenwich Land, operated as an agent of the Individual Debtor. (Undisputed Facts 10–12, 54, 87.) The testimony of Attorney Conboy and Mr. de Neree is that Mr. Krasner acted as an agent for the Individual Debtor in his actions to further Greenwich Land's real estate transactions. (Undisputed Facts 54, 87.) As discussed above, Ms. Ngok has no knowledge of and did not control Mr. Krasner's actions on behalf of Greenwich Land. (Undisputed Facts 1–16, 90–92.) Mr. Krasner has occupied positions at other entities associated with the Individual Debtor, including his adjudged *alter ego*, Golden Spring. (Undisputed Facts 10, 50.) Provided the opportunity, the Individual Debtor did not dispute his control over Mr. Krasner. (Undisputed Facts 11–12.)

Third, Mr. Krasner was the officer principally involved in Greenwich Land's largest transactions – its real estate transactions. (Undisputed Facts 54, 56–59, 64, 87.)

Fourth, Ms. Wang and Mr. Podhaskie have also occupied positions at other entities associated with the Individual Debtor, including his adjudged *alter ego*, Golden Spring. (Undisputed Facts 10, 50.)

Fifth and finally, Greenwich Land shares its business address with other entities associated with the Individual Debtor, including his adjudged *alter ego*, Golden Spring. (Undisputed Fact 14.)

For all these reasons, the Court concludes there is no genuine dispute of material fact that the Individual Debtor controlled Greenwich Land's operations and officers. *See Anderson*, 477 U.S. at 248; *Matsushita Elec.*, 475 U.S. at 586.

**b. Individual Debtor's Dominion and Control over Real Estate**

Moreover, the undisputed facts establish that the Individual Debtor exerted dominion and control over Greenwich Land's real estate.

First, the Individual Debtor controlled the purchase of the Ferncliff and Taconic Properties and sale of the Ferncliff Property. Attorney Conboy's testified that the Individual Debtor, through the entities HDNY, Golden Spring, and Greenwich Land, and his agent, Mr. Krasner, controlled the purchase and sale of the Ferncliff Property. (Undisputed Fact 54.) Mr. de Neree's testified that the Individual Debtor, through various entities at different times, and through his agent, Mr. Krasner, controlled the purchase of the Taconic Property. (Undisputed Fact 87.) Furthermore, Mr. de Neree testified that he directly interacted with the Individual Debtor while he was searching for a Greenwich property and was told directly by the Individual Debtor that he would purchase the Taconic Property. (Undisputed Fact 87.) Ms. Ngok's testimony, on her own behalf and in her capacity as the Rule 30(b)(6) corporate representative of Greenwich Land, and the Greenwich Parties' admissions, do not dispute the testimony of Attorney Conboy and Mr. de Neree, but rather demonstrates their lack of knowledge about these real estate transactions and the entities and persons involved in them. (Undisputed Facts 5–6, 43, 45, 47, 85, 90–92.) The Individual Debtor and Ms. Guo do not dispute the testimony of Attorney Conboy and Mr. de Neree. (Undisputed Facts 11–12, 15–16, 48, 52, 86.)

Second, the Individual Debtor funded the purchase of the Ferncliff and Taconic Properties. HDNY funded the purchase of the Ferncliff Property. (Undisputed Fact 46.)

Attorney Conboy testified she understood the Individual Debtor to be the client on matters related to, among other entities, HDNY. (Undisputed Facts 53–54.) This testimony is undisputed. Ms. Ngok testified she had never heard of HDNY, does not know why it transferred the funds to purchase the Ferncliff Property, and does not remember whether she asked HDNY to do so. (Undisputed Fact 47; *see* Undisputed Fact 43.) The record owner of HDNY, Ms. Guo, did not dispute that her father, the Individual Debtor, funded the purchase of the Ferncliff Property. (Undisputed Fact 51–52.) HDNY and Saraca funded the purchase of the Taconic Property. (Undisputed Fact 84.) Mr. de Neree testified that the Individual Debtor intended to purchase the Taconic Property. (Undisputed Fact 87.) This testimony is also undisputed. As stated above, Saraca is related to the Individual Debtor's media ventures. (Undisputed Fact 60.) Similarly, as discussed above, the record regarding the purchase of the Ferncliff Property establishes that the Individual Debtor uses HDNY to fund real estate purchases. (Undisputed Facts 46–47, 51–54.) Ms. Ngok testified she did not know why HDNY and Saraca transferred the funds used to purchase the Taconic Property to Greenwich Land. (Undisputed Fact 85; *see* Undisputed Fact 43.) Ms. Guo did not dispute that the Individual Debtor caused HDNY to transfer the funds. (Undisputed Fact 86.)

Third, the Individual Debtor controlled the use of the Ferncliff and Taconic Properties. The Individual Debtor controlled Greenwich Land's involvement with the Ferncliff Property from purchase through its eventual sale. As discussed in the preceding paragraph, the Individual Debtor funded and controlled the purchase of the Ferncliff Property. (Undisputed Facts 1–16, 43–55.) Moreover, the Ferncliff Property was rented to Mr. Wang in exchange for his services to Saraca and its affiliates, which are involved in the Individual Debtor's media ventures. (Undisputed Facts 56–61.) Ms. Ngok does not know who Mr. Wang is and had no knowledge of

his tenancy at the Ferncliff Property. (Undisputed Fact 57.) Utilities at the Ferncliff Property were billed to the Individual Debtor personally. (Undisputed Fact 61.) Finally, as discussed above, the Individual Debtor controlled the sale of the Ferncliff Property. (Undisputed Facts 1–16, 43, 54, 62–66.) The Individual Debtor also, as discussed above, funded and controlled the purchase of the Taconic Property (Undisputed Facts 1–16, 43, 84–89) and, from time to time, he resides in the Taconic Property with Ms. Ngok (Undisputed Facts 88–89). The Taconic Property is the basis upon which this Court was a proper venue for the Individual Debtor to file his voluntary Chapter 11 petition.

Fourth and finally, the Individual Debtor controlled the disposition of the Ferncliff Proceeds. Ms. Ngok testified she did not recall what happened to the Ferncliff Proceeds. (Undisputed Fact 67–71.) Mr. Krasner, who both Attorney Conboy and Mr. de Neree understood to be the Individual Debtor's agent in matters related to, among other entities, Greenwich Land (Undisputed Facts 54, 87; *see* Undisputed Facts 5–6), opened the account at First Bank, which received the Ferncliff Proceeds. (Undisputed Facts 64–66.) The Ferncliff Proceeds were used to, among other things: (i) pay the Individual Debtor's and Ms. Guo's legal fees related to these jointly administered Chapter 11 cases and related adversary proceedings (Undisputed Facts 74–79), which representation is, in part, shared representation; (ii) to pay Mar-a-Lago despite Ms. Ngok not visiting it after the Ferncliff Proceeds were acquired (Undisputed Facts 82–83); (iii) to fund Greenwich Land's Bento account without Ms. Ngok's knowledge (Undisputed Facts 68–69); and (iv) to fund an entity held by Ms. Guo without Ms. Ngok's knowledge (Undisputed Facts 71–72).

For all these reasons, the Court concludes there is no genuine dispute of material fact that the Individual Debtor asserts dominion and control over Greenwich Land's real estate. *See*

*Anderson*, 477 U.S. at 248; *Matsushita Elec.*, 475 U.S. at 586. The Individual Debtor purchased, used, and disposed of Greenwich Land's real estate as if it were his own.

**c. Dominion and Control over Finances**

Further still, the undisputed facts establish the Individual Debtor exerted dominion and control over Greenwich Land's financial activity.

First, as stated above, the Individual Debtor funded Greenwich Land's real estate transactions. (Undisputed Facts 5–6, 43, 46–47, 51–54, 60, 84–85, 87.)

Second, as also stated above, the Individual Debtor controlled the use of the Ferncliff Proceeds. (Undisputed Facts 5–6, 54, 64–72, 74–79, 82–83, 87.)

Third, Ms. Ngok neither has knowledge regarding nor exercised control over Greenwich Land's other financial transactions and bank accounts. (Undisputed Facts 17–18, 20, 23, 26, 33, 40, 67–71.) Ms. Ngok does not know at which banks Greenwich Land has or had an account. (Undisputed Fact 18.) She does not know what Bento is, despite the Bento debit card in her name associated with the Greenwich Land Bento account spending more than $700,000.00. (Undisputed Facts 20–21.) Similarly, Ms. Ngok does not know the source of the funds in Greenwich Land's accounts. (Undisputed Facts 18, 33, 40, 47, 85.) Ms. Ngok also lacks knowledge of and control over why and how Greenwich Land spends its funds. (Undisputed Facts 18, 23, 26, 67–71.)

Fourth and finally, Greenwich Land's funds were spent by the Individual Debtor's relatives and associates, including Ms. Ngok, Mr. Krasner, Mr. Podhaskie, Ms. Guo, and Mr. Han. (Undisputed Fact 21.) As noted above, Ms. Ngok does not even know who Mr. Krasner and Mr. Podhaskie are. (Undisputed Facts 5–6.) Yet, as also noted above, Mr. Krasner and Mr. Podhaskie have occupied positions at Greenwich Land as well as at other entities associated with

Case: 25-2742, 02/11/2026, DktEntry: 37.1, Page 114 of 153

the Individual Debtor, including his adjudged *alter ego*, Golden Spring. (Undisputed Facts 4, 7, 10.) In addition, Mr. Krasner in particular acted as the Individual Debtor's agent with respect to Greenwich Land. (Undisputed Facts 8, 9, 50, 54, 87.) Moreover, Mr. Krasner continued to spend Greenwich Land's funds – without the knowledge of Ms. Ngok – after ceasing to be an officer. (Undisputed Facts 24–26.) Similarly, Ms. Ngok does not know why Ms. Guo and Mr. Han spent Greenwich Land's funds despite being uninvolved with its business. (Undisputed Fact 23.)

For all these reasons, the Court concludes there is no genuine dispute of material fact that Individual Debtor dominated and controlled Greenwich Land's financial affairs, transactions, and assets. *See Anderson*, 477 U.S. at 248; *Matsushita Elec.*, 475 U.S. at 586. The Individual Debtor treated Greenwich Land's financial assets as his own.

**d. Disregard of Corporate Form**

Finally, the undisputed facts establish that Greenwich Land's corporate form was disregarded.

First, Ms. Ngok, the record sole member of Greenwich Land and, as of the hearing on the Motion for Summary Judgment, the sole remaining officer of Greenwich Land has, as discussed extensively above, no knowledge of and exerted no control over Greenwich Land's officers, operations, real estate, and bank accounts. (Undisputed Facts 5–6, 17–18, 43, 90–92.) Greenwich Land was operated without direction from Ms. Ngok, contrary to the powers and authority vested in her. (*Compare* Undisputed Facts 5–6, 17–18, 43, 90–92 *with* Undisputed Fact 3.) Instead, as discussed above, the Individual Debtor controlled the officers and operations of Greenwich Land. (Undisputed Facts 1–16, 54, 87.)

Second, Greenwich Land's assets were used to benefit other entities and persons than itself. As discussed above, Mr. Wang's rent for living in the Ferncliff Property was waived, without Ms. Ngok's knowledge, in exchange for Mr. Wang providing media services to Saraca and affiliated entities rather than in consideration of services rendered Greenwich Land. (Undisputed Facts 56–59.) As also discussed above, the Ferncliff Proceeds were (i) used to pay legal expenses incurred by persons and entities other than Greenwich Land; (ii) transferred to entities for no consideration to Greenwich Land or Ms. Ngok; and (iii) placed into a bank account where they were spent by persons unrelated to Greenwich Land or whose relationship with Greenwich Land had terminated – all, again, without the knowledge of Ms. Ngok. (Undisputed Facts 19–29, 64–83.)

Third and finally, Greenwich Land's capitalization was temporary at best. Greenwich Land received large influxes of cash – for reasons unknown to Ms. Ngok – to fund its purchases of property. However, rather than being maintained to provide for its expenses and liabilities, Greenwich Land's funds were consistently drained, without business purpose, by other entities and persons. (Undisputed Facts 17–43, 46–47, 64–85.)

For all these reasons, the Court concludes there is no genuine dispute of material fact that the corporate form of Greenwich Land was disregarded. *See Anderson*, 477 U.S. at 248; *Matsushita Elec.*, 475 U.S. at 586. Greenwich Land operated as the quintessential shell company.

**e. The Individual Debtor Dominated and Controlled Greenwich Land**

As set forth in the foregoing, there is no genuine dispute of material fact that, under Delaware law, the Individual Debtor dominated and controlled Greenwich Land. *See Manichaean Cap.*, 251 A.3d at 706. Greenwich Land functioned as a façade for the Individual

Debtor who controlled its assets as if they were his own; Greenwich Land's corporate form was disregarded by the Individual Debtor, his associates, his family members, and entities associated with him; Greenwich Land's funds were siphoned by the Individual Debtor, his associates, his family members, and entities associated with him; and Greenwich Land was only temporarily capitalized and solvent as funds transited through it in accordance with the purposes of the Individual Debtor. *See id.* The Trustee is entitled to the conclusion as a matter of law that the Individual Debtor dominated and controlled Greenwich Land. *See Anderson*, 477 U.S. at 250; *Manichaean Cap.*, 251 A.3d at 706; *Infineon Tech.*, 720 F. Supp. 2d at 471.

**ii. Fraud or Similar Injustice**

Regarding the second element of *alter ego*, the Trustee argues Greenwich Land's corporate form causes fraud or similar injustice because it serves to shield the Individual Debtor's assets from his creditors and has been used to subvert New York law and the Bankruptcy Code. The Greenwich Parties argue Ms. Ngok engaged in no wrongdoing with respect to Greenwich Land.

The Court concludes, based on the undisputed facts, there is no genuine dispute of material fact that Greenwich Land's corporate form causes fraud or similar injustice. *See Anderson*, 477 U.S. at 248; *Matsushita Elec.*, 475 U.S. at 586.

Greenwich Land's corporate form has served to shield assets, particularly the Ferncliff and Taconic Properties and the Ferncliff Proceeds, from the Individual Debtor's creditors, which assets, as discussed above, the Individual Debtor dominates and controls as if they were his own. None of Greenwich Land's assets were disclosed on the Individual Debtor's schedules and statements – wherein he disclosed less than $4,000 in assets – as being available for creditors. (*See* Main Case ECF No. 77–79.)

Moreover, Greenwich Land's corporate form has been used to subvert these bankruptcy proceedings in contravention of law, this Court's orders, and the Greenwich Parties' own agreements entered into before the Court. Greenwich Land (a) sold the Ferncliff Property after being served with the PAX Subpoena, which restricted its disposition of assets pursuant to New York state law, and the imposition of the automatic stay in the Individual Debtor's Chapter 11 case, which restricted his disposition of assets; and (b) dissipated the Ferncliff Proceeds after being served with the PAX Subpoena and the imposition of the automatic stay; after the entry of the TRO; and after the entry of the Consensual PI. (Undisputed Facts 19–29, 62–83.)

Finally, Greenwich Land is a closely held limited liability company whose sole member is the Individual Debtor's wife, and which exists, as discussed above, to hold real estate and move money that the Individual Debtor controls. In the fraudulent transfer context, each of these facts is considered a badge of fraud. *Salomon ex rel. Kaiser v. Kaiser (In re Kaiser)*, 722 F.2d 1574, 1582–83 (2d Cir. 1983). In the present context, each is indicative that the corporate form causes fraud or similar injustice.

The Greenwich Parties' argument to the contrary is not persuasive. The applicable standard is not whether Ms. Ngok engaged in any wrongdoing. Rather, the standard is whether Greenwich Land's corporate form caused fraud or similar injustice. *NetJets*, 537 F.3d at 177.

For all these reasons, the Trustee is entitled to the conclusion as a matter of law that the corporate form of Greenwich Land causes fraud or similar injustice. *See Anderson*, 477 U.S. at 250; *Pauley Petroleum*, 239 A.2d at 633; *NetJets*, 537 F.3d at 177; *Fletcher*, 68 F.3d at 1457; *D.B. Martin Co.*, 88 A. at 615–16.

**iii. Greenwich Land Is the Individual Debtor's *Alter Ego***

For the reasons stated above, the traditional elements of *alter ego* are established by the undisputed facts before the Court at summary judgment. *See Pauley Petroleum*, 239 A.2d at 633; *Cencom Cable*, 752 A.2d at 1184; *Ingersoll Publ'n*, 621 A.2d at 793; *see also Fletcher*, 68 F.3d at 1457 (applying Delaware law); *Tronox*, 549 B.R. at 43–44 (same). The Court also concludes reverse veil-piercing would not, on the undisputed facts before it, unfairly harm the legitimate expectations of Greenwich Land's creditors. As stated above at length, (a) Greenwich Land's capitalization and solvency are ephemeral: Greenwich Land's assets were purchased with funds it received for no consideration and Greenwich Land's assets were transferred for no consideration; (b) Greenwich Land routinely engaged in activity outside its purported business purpose of owning land in Greenwich, Connecticut; and (c) Greenwich Land is currently being drained of its assets in contravention of law, this Court's orders, and its own agreements entered into before the Court. *See Manichaean Cap.*, 251 A.3d at 714–15.

Therefore, the Court concludes the Trustee is entitled to judgment as a matter of law on the record of undisputed material that Greenwich Land is the *alter ego* of the Individual Debtor. *See Anderson*, 477 U.S. at 250; *Pauley Petroleum*, 239 A.2d at 633; *Cencom Cable*, 752 A.2d at 1184; *Ingersoll Publ'n*, 621 A.2d at 793; *see also Fletcher*, 68 F.3d at 1457 (applying Delaware law); *Tronox*, 549 B.R. at 43–44 (same).

**B. Second Claim – Beneficial Ownership**

**1. Legal Standard**

Turning to the Trustee's Second Claim, Delaware also recognizes beneficial ownership claims. *See Salt Dome Oil Corp. v. Schenk*, 41 A.2d 583, 586 (Del. 1945) (citing *Chadwick v. Parkhill Corp.*, 141 A. 823 (Del. Ch. 1928)); *see also Hudak v. Procek*, 806 A.2d 140 (Del. 2002); *Preston v. Allison*, 650 A.2d 646 (Del. 1994); *Hannigan v. Italo Petroleum Corp. of Am.*,

77 A.2d 209, 213 (Del. 1949). Furthermore, creditors may bring beneficial ownership actions. *See LiButti v. United States*, 968 F. Supp. 71, 75 (N.D.N.Y. 1997), *aff'd in part, rev'd in part on other grounds*, 178 F.3d 114 (2d Cir. 1999); *Paloian ex rel. Dordevic v. Dordevic (In re Dordevic)*, 633 B.R. 553, 558 (Bankr. N.D. Ill. 2021), *aff'd by* 67 F.4th 372 (7th Cir. 2023). Section 544 of the Bankruptcy Code provides bankruptcy trustees statutory standing to bring a beneficial ownership claim on behalf of creditors at large. 11 U.S.C. § 544(a); *see PepsiCo*, 884 F.2d at 700; *Titan Real Estate*, 415 B.R. at 47.

Courts consider, among other things, whether "(1) there is a close personal relationship between the nominee and the transferor; (2) the nominee paid little or no consideration for the property; (3) the parties placed the property in the name of the nominee in anticipation of collection activity; (4) the parties did not record the conveyance; and, (5) the transferor continues to exercise dominion and control over the property." *Dordevic*, 67 F.4th at 381.

**2. Conclusions of Law**

The Trustee argues application of the *Dordevic* factors establishes the Individual Debtor equitably owns Greenwich Land. He argues (a) Ms. Ngok is the Individual Debtor's wife; (b) Ms. Ngok is not the source of any substantial portion of Greenwich Land's assets or the funds used to purchase those assets; (c) Ms. Ngok's nominal ownership of Greenwich Land is used to frustrate collection activity; and (d) the Individual Debtor dominates and controls Greenwich Land.

The Greenwich Parties raise the objections to the Trustee's evidence discussed above. On those bases, the Greenwich Parties assert the Trustee has insufficient evidence to establish the Individual Debtor's dominion and control over Greenwich Land. The Greenwich Parties also

argue there is a genuine dispute of material fact as to whether Mr. Guo, the Individual Debtor's and Ms. Ngok's son, bought the Ferncliff and Taconic Properties.

As discussed above, the Court has overruled the Greenwich Parties' evidentiary objections. The Court will not consider Ms. Ngok's earlier Rule 2004 deposition testimony regarding Mr. Guo because it contradicts her deposition testimony in this adversary proceeding, the Greenwich Parties' admissions in this adversary proceeding, and the Greenwich Parties' disclosures in this adversary proceeding. The remaining issue, therefore, is whether the undisputed facts set forth above establish the Trustee is entitled to judgment as a matter of law that the Individual Debtor equitably owns Greenwich Land.

The Court concludes there is no genuine dispute of material fact and the Trustee is entitled to judgment as a matter of law that the Individual Debtor beneficially owns Greenwich Land. The Individual Debtor's dominion and control over Greenwich Land has been extensively discussed regarding the First Claim. For the reasons stated above, the Court incorporates its conclusion in the preceding discussion that the Individual Debtor dominates and controls Greenwich Land. Similarly, the use of Greenwich Land to frustrate collection efforts, including in the Individual Debtor's Chapter 11 case, has been discussed above. The Court incorporates that discussion herein and concludes therefrom that Greenwich Land's corporate form frustrates collection efforts. Ms. Ngok's nominal ownership contributes to that frustration. Moreover, Ms. Ngok's complete lack of knowledge regarding and responsibility for the funding of Greenwich Land is also discussed extensively above. The Court again incorporates that discussion herein and concludes therefrom that Ms. Ngok is not the source of Greenwich Land's assets. Finally, it is uncontested that Ms. Ngok has a close relationship with the Individual Debtor: the Greenwich Parties assert she is his wife. Hence, on the undisputed facts before the Court, four out of the

five *Dordevic* factors support the conclusion that the Individual Debtor equitably owns Greenwich Land. 67 F.4th at 381.

Therefore, on the basis of the undisputed record, the Court concludes the Trustee is entitled to judgment as a matter of law that the Individual Debtor equitably owns Greenwich Land. *See Anderson*, 477 U.S. at 250; *Dordevic*, 67 F.4th at 381.

## VII. CONCLUSION AND ORDER

For the reasons stated above, the Court grants the Motion for Summary Judgment as to both the First and Second Claims of the Complaint. Given the undisputed facts, the Trustee is entitled to judgment as a matter of law that, under Delaware law, (A) Greenwich Land is the *alter ego* of the Individual Debtor and (B) the Individual Debtor equitably owns Greenwich Land. *See* Fed. R. Civ. P. 56, *made applicable by* Fed. R. Bankr. P. 7056; *Celotex*, 477 U.S. at 323; *Anderson*, 477 U.S. at 248–51; *Matsushita Elec.*, 475 U.S. at 586. Therefore, pursuant to 11 U.S.C. §§ 541, 542, and 544, the Trustee is entitled to judgment as a matter of law that, respectively, all Greenwich Land's assets and Ms. Ngok's membership interest in Greenwich Land are property of the Estate. Accordingly, it is hereby

**ORDERED:** The Motion for Summary Judgment (ECF No. 77) is **GRANTED**. Pursuant to Fed. R. Civ. P. 58(a), made applicable in this adversary proceeding by Fed. R. Bankr. P. 7058, a separate judgment shall enter consistent with this Opinion and Order; and it is further

**ORDERED:** The Motion to Strike (ECF No. 122) is **DENIED**; and it is further

**ORDERED:** The documents submitted in support of and in opposition to the Motion for Summary Judgment are unsealed to the extent necessary to publish this Opinion. Except as provided herein, the Sealing Orders (ECF Nos. 87, 88, 119) remain in full force and effect until further order of the Court.

Dated at Bridgeport, Connecticut this 2nd day of July, 2024.



**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| In re:<br><br>HO WAN KWOK, *et al.*,<br><br>Debtors. | Chapter 11<br><br>Case No. 22-50073 (JAM)<br><br>(Jointly Administered) |
| LUC A. DESPINS, CHAPTER 11 TRUSTEE FOR THE ESTATE OF HO WAN KWOK,<br><br>Plaintiff,<br><br>v.<br><br>GREENWICH LAND, LLC, and HING CHI NGOK,<br><br>Defendants. | Adv. P. No. 23-05005 (JAM)<br><br>Re: ECF Nos. 77, 133 |

**SUMMARY JUDGMENT**

Upon review of the Motion for Summary Judgment (the "Motion") (ECF No. 77) filed by plaintiff Mr. Luc A. Despins, in his capacity as the Chapter 11 trustee (the "Trustee") for the bankruptcy estate (the "Estate") of Mr. Ho Wan Kwok (the "Individual Debtor"), which Motion seeks summary judgment on the first and second claims (respectively, the "First Claim" and "Second Claim") of the complaint (the "Complaint") (ECF No. 1) brought against defendants Greenwich Land, LLC ("Greenwich Land") and Ms. Hing Chi Ngok ("Ms. Ngok", and, together with Greenwich Land, collectively, the "Greenwich Parties") for, pursuant to 11 U.S.C. §§ 541, 542, and 544 and Delaware law (i) declaratory judgment that, respectively, Greenwich Land's assets are property of the Estate on the basis of *alter ego* and Ms. Ngok's membership interest in Greenwich Land is property of the Estate on the basis of beneficial ownership; and (ii), on those bases, respectively judgement requiring turnover of Greenwich Land's assets and Ms. Ngok's

membership interest in Greenwich Land to the Estate via delivery of the same to the Trustee; and after a hearing held on January 9, 2024, the Court, pursuant to Fed. R. Civ. P. 56, made applicable by Fed. R. Bankr. P. 7056, entered the Memorandum of Decision and Order Granting Motion for Summary Judgment (the "Decision") (ECF No. 133), granting the Motion because, as set forth in the Decision, there is no genuine dispute of material fact and the Trustee is entitled to judgment as a matter of law on the basis of the undisputed facts. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett ex rel. Catrett*, 477 U.S. 317, 323 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–51 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 114–15 (2d Cir. 2017).

The Decision determines all claims set forth in the Complaint and in this adversary proceeding. Accordingly, pursuant to Fed. R. Civ. P. 58, made applicable by Fed. R. Bankr. P. 7058, judgment is hereby entered as set forth below. It is hereby ORDERED THAT:

1. Judgment is hereby entered as set forth herein in favor of the Trustee on the First and Second Claims of the Complaint.

2. On the First Claim, judgment is hereby entered that:

a. Under applicable Delaware law, Greenwich Land is an *alter ego* of the Individual Debtor and has no existence separate and apart from the Individual Debtor.

b. Pursuant to 11 U.S.C. § 541, any and all of the assets held by Greenwich Land at any time prior to the date the Individual Debtor filed his voluntary Chapter 11 petition, February 15, 2022 (the "Petition Date"), constituted property of the Individual Debtor; and any and all assets held by Greenwich Land at any time from Petition Date to the present constituted and constitute, as applicable, property of the Estate.

c. Pursuant to 11 U.S.C. § 541, all current property of Greenwich Land, including without limitation the real property located at 373 Taconic Road in Greenwich, Connecticut, and Greenwich Land's bank accounts, contract rights, and causes of action, are property of the Estate to be administered by the Trustee.

d. Pursuant to 11 U.S.C. § 542, the Greenwich Parties shall, on or before July 22, 2024, turnover all property of Greenwich Land to the Estate via delivery of the same to the Trustee.

3. On the Second Claim, judgment is hereby entered that:

a. Pursuant to applicable Delaware law, the Individual Debtor is the equitable owner of Greenwich Land.

b. Pursuant to 11 U.S.C. § 541, Ms. Ngok's membership interest in Greenwich Land is property of the Estate.

c. Pursuant to 11 U.S.C. § 542, the Greenwich Parties shall, on or before July 22, 2024, turnover Ms. Ngok's membership interest in Greenwich Land to the Estate via delivery of the same to the Trustee.

4. The Trustee is authorized to take all actions necessary or appropriate to effectuate this Judgment.

5. This Judgment is effective immediately. No stay pursuant to Fed. R. Bankr. P. 7062 shall be effective. The Court hereby waives any limitations set forth in Fed. R. Bankr. P. 7062 on the Trustee's ability to enforce this Judgment upon its entry.

6. The Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Judgment.

Dated at Bridgeport, Connecticut this 2nd day of July, 2024.



**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| IN RE: KWOK,<br>*Debtors* | BANKR. NO. 22-50073 (JAM)<br>*Chapter 11* |
| GREENWICH LAND, LLC and HING CHI NGOK,<br>*Appellants*,<br>v.<br><br>LUC A. DESPINS, CHAPTER 11 TRUSTEE,<br>*Trustee-Appellee*. | ADV. PRO. NO. 23-5005<br>CIVIL NO. 3:24-CV-1185 (KAD)<br><br>SEPTEMBER 11, 2025 |

**MEMORANDUM OF DECISION**

Kari A. Dooley, United States District Judge:

Greenwich Land, LLC ("Greenwich Land") and Hing Chi Ngok ("Ms. Ngok") (collectively, "Appellants") challenge the order of the Bankruptcy Court granting Chapter 11 Trustee Luc A. Despins' ("Trustee" or "Appellee") Motion for Summary Judgment (the "MSJ Order"), in which the Bankruptcy Court determined: (a) that Greenwich Land is the alter ego of the Individual Debtor Ho Wan Kwok (the "Debtor" or "Kwok"); (b) that the Debtor equitably owns Greenwich Land; and (c) that Greenwich Land's assets, as well as Ms. Ngok's membership interest in Greenwich Land, are property of the Debtor's bankruptcy estate (the "Estate"). *See Despins v. Greenwich Land, LLC, et al.*, No. 23-AP-5005 (Bankr. D. Conn. July 2, 2024), ECF No. 133. For the reasons set forth below, the MSJ Order is **AFFIRMED**.

**Facts and Procedural History**

The Court presumes the parties' familiarity with the underlying facts and repeats only those necessary for deciding the appeal.[1]

<u>Greenwich Land</u>

Greenwich Land is a Delaware LLC which owned, *inter alia*, property at 373 Taconic Road in Greenwich, Connecticut (the "Taconic Road Property"), which it purchased in February 2020. *See* MSJ Order at ¶¶ 1, 84. Greenwich Land has maintained an address at 162 East 64th Street, New York, New York, which has also been used by: the Debtor; the Debtor's attorney, Aaron Mitchell; the Debtor's adjudged alter egos, Golden Spring and HK USA; Hudson Diamond NY LLC ("HDNY"), and numerous other entities associated with the Debtor. *See id.* at ¶¶ 13–14.

Ms. Ngok is the Debtor's wife, and previously resided at the Taconic Road Property. Though Yanping "Yvette" Wang ("Ms. Wang"), Max Krasner ("Mr. Krasner"), and Daniel Podhaskie ("Mr. Podhaskie") have each, at times, served as officers of Greenwich Land, Ms. Ngok is presently the sole member of Greenwich Land. Nevertheless, Ms. Ngok has testified that she does not know the name of anyone who is or ever has been an officer of Greenwich Land; that she has never had any interaction with Ms. Wang in connection with Greenwich Land; and that she was not familiar with Mr. Podhaskie or Mr. Krasner. In addition to Greenwich Land, Ms. Wang, Mr. Krasner, and Mr. Podhaskie have occupied positions at other entities allegedly controlled by the Debtor, including his adjudged alter ego, Golden Spring.

Previously, the Debtor has invoked his Fifth Amendment rights against self-incrimination regarding: (a) whether Ms. Wang, Mr. Krasner, and Mr. Podhaskie were his employees and/or

[1] In the MSJ Order, the Bankruptcy Court set forth the undisputed facts after first ruling on Appellants' Motion to Strike, as well as the various evidentiary objections raised by both parties in their briefing on the Trustee's Motion for Summary Judgment. As discussed below, this Court affirms each of the various evidentiary rulings challenged by Appellants. Thus, the facts herein are derived from the undisputed facts set forth in the MSJ Order.

agents, and whether he has control over those individuals; and (b) whether he beneficially owns and/or controls Greenwich Land. *Id.* at ¶¶ 11–12, 15–16.

Greenwich Land's Financial Activity

Ms. Ngok has admitted that she did not participate directly in any banking or other financial transactions of Greenwich Land, and indeed, does not know at which banks Greenwich Land has or had bank accounts, or the source(s) of the funds in those accounts. *Id.* at ¶¶ 17–18.

Nevertheless, Ms. Ngok, as well as Mr. Krasner, Mr. Podkaskie, Ms. Ngok's daughter ("Ms. Guo"), and even the Kwok family chef, used debit cards in their names under Greenwich Land's Bento for Business bank account (the "Bento Account"). *See id.* at ¶ 21. Additionally, though Mr. Krasner resigned from his position as Vice President of Greenwich Land in November 2022, he continued to use his Bento Account debit card for several months thereafter. *See id.* at ¶¶ 24–25. Ms. Ngok does not know why Ms. Guo and the family chef were issued cards for the Bento Account despite not being employees, officers, directors, managers, or members of Greenwich Land; or why Mr. Krasner spent money from the Bento Account after he resigned. *Id.* at ¶¶ 23, 26.

In September 2020, Greenwich Land opened a bank account at The Bank of Princeton (the "BP Account"). *Id.* at ¶ 30. For more than a year thereafter, the BP Account received and/or effectuated transfers totaling tens of millions of dollars to/from: Savio Law LLC ("Savio Law"); ACA Capital Group Ltd. ("ACA Capital"); Sherry-Lehman Inc.; the Bento Account; an account at First County Bank held in Ms. Ngok's name; Lamp Capital LLC ("Lamp Capital"); and Greenwich Land's Capital One Bank account. *See id.* at ¶¶ 31, 32, 36–39, 41. Ms. Ngok has testified that she does not know why the foregoing transfers to/from Savio Law, ACA Capital, and Lamp Capital were received. *Id.* at ¶¶ 33, 40. Moreover, the Debtor has asserted his Fifth

Amendment rights against self-incrimination regarding whether he is the beneficial owner of and/or exclusively controls ACA Capital. *Id.* at ¶ 34.

Greenwich Land's Real Estate Transactions

On behalf of Greenwich Land, Mr. Krasner executed sale agreements and other closing documents related to Greenwich Land's purchase of the Taconic Road Property, as well as the purchase (and subsequent sale) of a property located at 33 Ferncliff Road in Cos Cob, Connecticut (the "Ferncliff Property").

*The Ferncliff Property*

On or about August 2019, Greenwich Land purchased the Ferncliff Property. *See id.* at ¶ 46. Such purchase was funded via a $1.5 million transfer from HDNY's Capital One account to Greenwich Land's Capital One account. *See id.*

On September 3, 2019, Greenwich Land, through Ms. Krasner, leased the Ferncliff Property to Dinggang Wang ("Mr. Wang"). *Id.* at ¶ 56. On September 24, 2019, a waiver agreement was executed by and between Mr. Krasner on behalf of Greenwich Land, and Mr. Wang, which waived Mr. Wang's rental obligation in return for Mr. Wang providing complimentary "professional services to assist Greenwich [Land] and its affiliates with various projects including, but not limited to, media consulting." *Id.* at ¶ 58.

On May 6, 2021, the Delaware Superior Court issued an out-of-state subpoena to be served on Greenwich Land by the Debtor's largest creditor, Pacific Alliance Asia Opportunity Fund L.P. ("PAX"), instructing Greenwich Land that it was forbidden to dissipate its assets. *Id.* at ¶ 62. On February 15, 2022, the Debtor filed his voluntary Chapter 11 petition with the Bankruptcy Court. *Id.* at ¶ 63.

On April 28, 2022, Greenwich Land sold the Ferncliff Property, and the proceeds therefrom (the "Ferncliff Proceed") were transferred to Greenwich Land's account at First Bank of Greenwich ("First Bank"), which Mr. Krasner had opened just a few weeks prior. *See id.* at ¶¶ 64–66. Over the next 11 months, the Ferncliff Proceeds were transferred to the Bento Account, Gypsy Mei Food Services LLC ("Gypsy Mei"), the Mar-a-Lago Club, and various law firms representing the Debtor.

Ms. Ngok: (a) did not directly participate in the purchase and sale of the Ferncliff Property; (b) does not know the source(s) of the funds used to purchase the Ferncliff Property; (c) is not familiar with Mr. Wang and his tenancy at the Ferncliff Property; and (d) indeed, never lived at the Ferncliff Property and was unable to recognize a photo of it. *See id.* at ¶¶ 43, 45, 55.

Attorney Margaret Conboy is a partner at Whitman Breed Abbot & Morgan ("Whitman Breed"), the law firm that represented Greenwich Land, Golden Spring, and HDNY, as local counsel, with respect to the purchase and sale of the Ferncliff Property. *Id.* at ¶ 53. In that capacity, Attorney Conboy referred to the Debtor as her client, received instructions from Mr. Krasner, never communicated with Ms. Ngok, and was otherwise advised that the Debtor was making key decisions regarding real estate transactions. *See id.* at ¶ 54.

*The Taconic Road Property*

On or about February 2020, Greenwich Land purchased the Taconic Road Property. *Id.* at ¶ 84. Such purchase was funded via: (a) a $500,000.00 transfer from HDNY to Greenwich Land's Capital One account; (b) a $2 million transfer from Saraca Media Group, Inc. ("Saraca") to Greenwich Land's Capital One account; and (c) a $2.3 million transfer from HDNY to Lamp Capital's Capital One account. *See id.* Ms. Ngok does not know why, in February 2020, HDNY and Saraca transferred funds to Greenwich Land. *Id.* at ¶ 85. According to Emile de Neree ("Mr.

de Neree"), the buyer-side real estate broker in connection with the purchase of the Taconic Property, the Debtor, *inter alia*: made the decision to purchase the Taconic Road Property under Greenwich Land; set the offer price; and arranged for the details of the transaction to be handled by Mr. Krasner. *See id.* at ¶ 87. At the time of the MSJ Order, Ms. Ngok resided at the Taconic Road Property, and previously, the Debtor had used the Taconic Road Property as one of his primary residences. *See id.* at ¶ 89.

HDNY

Notwithstanding that Ms. Guo—the Debtor and Ms. Ngok's daughter—is the indirect record owner of HDNY, Ms. Ngok has never heard of HDNY. *Id.* at ¶ 47. Moreover, Ms. Guo asserted her Fifth Amendment rights against self-incrimination regarding whether the Debtor owned and controlled HDNY and directed the aforementioned $1.5 million transfer to Greenwich Land for the purchase of the Ferncliff Property, as well as the $2.8 million worth of HDNY transfers associated with the purchase of the Taconic Road Property. *Id.* at ¶¶ 51–52, 86. Ms. Wang, Mr. Krasner, and Mr. Podhaskie are or were authorized signatories of HDNY. *Id.* at ¶ 50.

The Adversary Proceeding

On March 27, 2023, the Trustee commenced the underlying Adversary Proceeding seeking: (1) a declaratory judgment that Greenwich Land is the Debtor's alter ego, and that the Debtor—not Ms. Ngok—is the equitable owner of Greenwich Land; and (2) ordering turnover of Greenwich Land's assets and membership interest to the Trustee. *See* Complaint, Adv. Proc., ECF No. 1. Though the Trustee's underlying alter ego claim arises under Delaware law, the Adversary Proceeding seeks declaratory relief pursuant to Sections 541, 542, and 544 of the Bankruptcy Code. *See generally id.* In support of its claims, the Trustee asserts, *inter alia*, that:

Case: 25-2742, 02/11/2026, DktEntry: 37.1, Page 132 of 153

a. Greenwich Land was managed by the Debtor's agents and/or employees, who comprised, with Defendant Ngok, all the officers of Greenwich Land (which currently has no officers at all).
b. The purported owner of Greenwich Land, Defendant Ngok, knows nothing about Greenwich Land and was never meaningfully involved in its affairs.
c. Greenwich Land uses the same address as the Debtor and his other shell companies.
d. Greenwich Land and its assets were funded by other Debtor shell companies.
e. The Debtor was the decision-maker directing Greenwich Land's purchases and sales of real estate, as recognized by the attorneys and brokers working on such transactions, who took direction from the Debtor through his agent and/or employee Max Krasner.
f. The Debtor uses Greenwich Land's principal asset as his residence and Greenwich Land pays the Debtor's expenses in connection with his residence there.

*See id.* at 24–25.

On October 10, 2023, the Trustee filed a Motion for Summary Judgment as to both of his claims. MSJ, Adv. Proc., ECF No. 77. On January 5, 2024, Appellants filed a Motion to Strike the various exhibits attached to the Trustee's summary judgment reply brief (the "Reply Documents"). Motion to Strike, Adv. Proc., ECF No. 122. On January 9, 2024, the Bankruptcy Court held a hearing on the Motion for Summary Judgment and the Motion to Strike, and thereafter took both motions under advisement.

The MSJ Order

On July 2, 2024, the Bankruptcy Court issued the MSJ Order. *See* MSJ Order, Adv. Proc., ECF No. 133. At the outset, the Bankruptcy Court resolved various evidentiary objections asserted by both parties, as well as Appellants' Motion to Strike.[2]

[2] The Bankruptcy Court denied Appellants' Motion to Strike, finding that it had broad discretion to consider argument and evidence first introduced on reply, and that the Reply Documents themselves were responsive to the evidentiary objections raised in Appellants' opposition, and did not otherwise constitute unfair surprise. *See* MSJ Order at 8–9.

*Evidentiary Issues*

The Bankruptcy Court first overruled Appellants' objection, pursuant to Rule 56(c)(4) of the Federal Rules of Civil Procedure, to the Declaration of Douglass Barron (the "Barron Declaration"), which was submitted in connection with the Trustee's initial summary judgment papers. *Id.* at 10. Appellants argued that Attorney Barron lacked personal knowledge regarding the exhibits annexed to the Barron Declaration, and that the Barron Declaration does not contain a statement that it is sworn under penalty of perjury. The Bankruptcy Court was unpersuaded and overruled the objection, insofar as: (a) the Barron Declaration is neither a primary authentication declaration nor a declaration about the factual substance of the Trustee's exhibits, and is instead merely a declaration that such exhibits are true and correct copies of the documents included therein; and (b) even to the extent the Barron Declaration lacks a sworn statement that its contents are true and correct under penalty of perjury, any such defect was cured through the subsequent declaration submitted in connection with the Trustee's reply brief (the "Supplemental Barron Declaration"). *Id.*

Pursuant to Rule 56(c)(2) of the Federal Rules of Civil Procedure, Appellants also objected to the admissibility of certain evidence relied on by the Trustee, as follows: (1) the Trustee failed to authenticate various exhibits; (2) the deposition testimony of Attorney Conboy is subject to attorney-client privilege; (3) the deposition testimony of both Attorney Conboy and Mr. de Neree was made without personal knowledge of the relevant facts; (4) the information relating to Greenwich Land's financial activities is irrelevant; (5) the Debtor and Ms. Guo's invocation of the Fifth Amendment is inadmissible at summary judgment; and (6) the past determinations of the Bankruptcy Court in the jointly administered Chapter 11 cases and related adversary proceedings

are inadmissible hearsay. The Bankruptcy Court overruled each of these objections. Appellants challenge these evidentiary rulings on appeal.

First, regarding authentication, the Bankruptcy Court found that the challenged exhibits are each admissible insofar as they are either: (a) business records authenticated by the various declarations submitted with the Trustee's reply; (b) Greenwich Land's own documents; (c) domestic public documents with certifications under seal by public officials; (d) acknowledged documents within the meaning of Fed. R. Evid. 902(8); (e) deposition transcripts, bank records, corporate records, and/or contractual documents authenticated through the Supplemental Barron Declaration; (f) judicially noticeable court filings; or (g) a declaration of the Debtor with the distinctive characteristics of a declaration and otherwise authenticated under Fed. R. Evid. 901(b)(4). *Id.* at 12–14.

Second, the Bankruptcy Court concluded that Appellants had failed to meet their burden of establishing an attorney-client privilege as to Attorney Conboy's deposition testimony. *See id.* at 15–16. More specifically, Judge Manning observed that the purportedly privileged testimony was merely to identify Greenwich Land as Attorney Conboy's client, as opposed to testimony regarding legal advice and/or other confidential communications between Attorney Conboy and Greenwich Land. *Id.* The Bankruptcy Court further emphasized that Attorney Conboy also represented Golden Spring and HDNY in connection with the purchase and sale of the Ferncliff Property, and that Appellants advanced no argument as to why sharing communications with Golden Spring and HDNY would not defeat their assertion of privilege in any event. *Id.* at 16.

Third, regarding personal knowledge, the Bankruptcy Court found that the Trustee offered Attorney Conboy and Mr. de Neree's testimony not as evidence that the Debtor was a record member or officer of Greenwich Land or as evidence as to the source of the funds used to purchase

the Ferncliff Property and/or the Taconic Road Property, but rather, as direct evidence of the Debtor's alleged use and control of Greenwich Land in relation to these real estate transactions.

Fourth, the Bankruptcy Court determined that the Trustee's evidence was relevant, and its probative value was "not substantially outweighed by any counterbalance considered by courts." *Id.* at 18 (citing Fed. R. Evid. 403).

Fifth, the Bankruptcy Court overruled Appellants' objection as to any adverse inference arising from the Debtor and Ms. Guo's invocations of their Fifth Amendment rights against self-incrimination when questioned about Greenwich Land and its ownership, financial transactions, etc. *Id.* at 18–19. While the Bankruptcy Court acknowledged that an "adverse inference on the basis of an invocation of Fifth Amendment rights against self-incrimination is improper at summary judgment," Judge Manning concluded that the Debtor and Ms. Guo's invocations of the Fifth Amendment nevertheless had limited relevance because the substance of the testimony of Ms. Ngok, Ms. Conboy, and Mr. de Neree, were largely undisputed by Ms. Guo and the Debtor.

Sixth, the Bankruptcy Court overruled Appellants' objection to the Court's consideration of its prior determinations that Golden Spring and HK USA are alter egos of the Debtor, and that Saraca is related to the Debtor's media ventures. *See id.* at 21. Although Appellants challenged these determinations under the law of the case doctrine, the objection was overruled because Appellants did not adduce any evidence disputing these prior determinations despite having the opportunity to undertake discovery in the Adversary Proceeding. *Id.* And given the lack of contrary evidence, the Bankruptcy Court, within its discretion, determined that these prior rulings were properly relied upon as law of the case. *Id.*

The Bankruptcy Court also resolved certain of the Trustee's evidentiary objections. As relevant here, the Bankruptcy Court sustained the Trustee's objection to Appellants' reliance on

Ms. Ngok's prior Rule 2004 testimony that her son, Qiang Guo ("Mr. Guo"), created Greenwich Land and purchased the Ferncliff Property and Taconic Road Property for Ms. Ngok.[3] *Id.* at 22–23. Judge Manning observed that Ms. Ngok's prior testimony directly conflicts with the testimony given by Ms. Ngok in the Adversary Proceeding, namely: that Ms. Ngok did not know the source of the funds used to purchase the Ferncliff Property and Taconic Road Property; did not know why the entities that transferred the funds did so; and did not know who would know why the entities transferred the funds. *See id.* Judge Manning further relied on Appellants' failure to list Mr. Guo in their initial disclosures, as well as their responses to the Trustee's interrogatories, which indicate that Appellants had no knowledge of the source of funds used to purchase the Ferncliff Property and Taconic road Property. *Id.* at 23. As such, the Bankruptcy Court declined to permit Appellants to "revive [Ms. Ngok's prior testimony] at the eleventh hour, after discovery has closed, in order to prevent summary judgment." *Id.*

*Summary Judgment*

Having resolved the foregoing preliminary issues, the Bankruptcy Court set forth the undisputed facts, and turned to the merits of the Trustee's two claims.

As to the Trustee's alter ego claim, the Bankruptcy Court determined as a threshold matter that Section 544 of the Bankruptcy Code provides bankruptcy trustees statutory standing to bring an outsider reverse veil-piercing action on behalf of creditors at large. *Id.* at 45. From there, applying Delaware alter ego/reverse veil piercing law, the Bankruptcy Court concluded that "a reasonable jury would find that the Debtor so dominated and controlled Greenwich Land such that Greenwich Land had no separate economic existence from the Debtor," based on the following:

[3] The MSJ Order also resolved several additional evidentiary objections raised by the Trustee, *See* MSJ Order at 22–24. However, to the extent Appellants do not challenge these rulings, the Court does not discuss each of them herein.

> (a) Greenwich Land being capitalized only by funding from entities related to the Individual Debtor and its capital similarly being transferred to such entities without business purpose; (b) Greenwich Land's bank accounts being used to fund personal spending of the Individual Debtor, his family, and his associates, including those who were never or were only formerly officers of Greenwich Land, unrelated to its purported business purpose of owning real estate in Greenwich, Connecticut; (c) the Individual Debtor's control over the purchase, use, and sale of the Ferncliff Property; (d) the Individual Debtor's control over the purchase of the Taconic Property and his residence therein; (e) Greenwich Land being staffed by known associates and employees of the Individual Debtor and sharing its business address with numerous entities related to the Individual Debtor; (f) the disregard for corporate formalities demonstrated by the foregoing; and (g) the extent to which Greenwich Land is merely a façade for the Individual Debtor, as demonstrated by the foregoing.

*Id.* at 46.

The Bankruptcy Court further rejected Appellants' arguments in opposition, which were principally premised on their overruled evidentiary objections. *Id.* at 46–47.

Next, regarding the Trustee's beneficial ownership claim, the Bankruptcy Court applied Delaware beneficial ownership law and evaluated the factors set forth in *In re Dordevic*, 633 B.R. 553, 558 (Bankr. N.D. Ill. 2021), *aff'd by* 67 F.4th 372 (7th Cir. 2023) ("*Dordevic*"). *Id.* at 58. Specifically, the Bankruptcy Court found that: (a) the Debtor dominates and controls Greenwich Land, for the reasons set forth in connection with the foregoing alter ego analysis; (b) for substantially the same reasons, Greenwich Land's corporate form frustrates collection efforts; (c) Ms. Ngok is not the source of Greenwich Land's assets, as evidenced by her complete lack of knowledge regarding, and responsibility for, the funding of Greenwich Land; and (d) Ms. Ngok unquestionably has a close relationship with the Debtor. *See id.* at 59. Accordingly, the Bankruptcy Court concluded that four out of the five *Dordevic* factors support the conclusion that the Debtor equitably owns Greenwich Land. *Id.* at 59–60. Once again, the Bankruptcy Court rejected Appellants' arguments in opposition, insofar as they were premised on overruled evidentiary objections. *Id.* at 58–59.

In light of the foregoing findings, the Bankruptcy Court granted the Trustee's Motion for Summary Judgment, having determined that the Trustee was entitled to judgment as a matter of law that, pursuant to applicable Delaware law and Sections 541, 542, and 544 of the Bankruptcy Code: (1) Greenwich Land is the alter ego of the Debtor; (2) the Debtor equitably owns Greenwich Land; and accordingly, (3) all Greenwich Land's assets, as well as Ms. Ngok's membership interest in Greenwich Land, are property of the Estate. *Id.* at 60. This appeal timely followed.[4]

**Standard of Review**

This Court has jurisdiction to hear appeals from decisions of the Bankruptcy Court pursuant to 28 U.S.C. § 158(a), which provides in relevant part that "[t]he district courts of the United States shall have jurisdiction to hear appeals . . . from final judgment, orders, and decrees . . . of bankruptcy judges." *Salim v. VW Credit, Inc.*, 577 B.R. 615, 621 (E.D.N.Y. 2017). "A district court may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." *In re Margulies*, 566 B.R. 318, 328 (S.D.N.Y. 2017) (citation omitted).

A bankruptcy court's grant of summary judgment is reviewed *de novo*. *See Springfield Hospital, Inc. v. Guzman*, 28 F.4th 403, 415 (2d Cir. 2022) (citing *In re Treco*, 240 F.3d 148, 155 (2d Cir. 2001)). A motion for summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *In re Dana Corp.*, 574 F.3d 129, 151 (2d Cir. 2009).

---

[4] On July 12, 2024, Appellants filed a Motion to Stay Pending Appeal. Adv. Proc., ECF No. 139. On August 12, 2024, Appellants withdrew their Motion to Stay in light of the Bankruptcy Court's Consent Order Resolving Motion for Stay Pending Appeal and Enforcing Summary Judgment, wherein, by agreement of the parties, *inter alia*, Ms. Ngok would vacate the Taconic Road Property and turn over exclusive possession thereof to the Trustee for the benefit of the Estate. *See* Adv. Proc., ECF No. 166. Consistent with the Bankruptcy Court's ensuing Order Authorizing and Approving Sale of the Greenwich Property, in the Debtor's main bankruptcy case, on October 18, 2024, the Taconic Road Property was sold, and the proceeds therefrom distributed to the Trustee. *See In re: Kwok*, No. 22-BK-50073, ECF No. 3690.

"Matters left to the [bankruptcy] court's discretion are reviewed for abuse of discretion." *In re Adelphia Commc'ns Corp.*, 342 B.R. 122, 126 (S.D.N.Y. 2006) (internal quotation marks omitted). A district court abuses its discretion when it bases its ruling "on an erroneous view of the law or on a clearly erroneous assessment of the evidence, or render[s] a decision that cannot be located within the range of permissible decisions." *In re Sims*, 534 F.3d 117, 132 (2d Cir. 2008) (citations and internal quotation marks omitted); *see also In re Motors Liquidation Co.*, No. 10-CV-4322 (JGK), 2011 WL 2462773, at *2 (S.D.N.Y. June 20, 2011) ("[a] ruling is an abuse of discretion only if the bankruptcy court bases its ruling on a mistaken application of the law or a clearly erroneous finding of fact.") (citations and internal quotations marks omitted). A bankruptcy court's evidentiary rulings are reviewed for abuse of discretion. *Manley v. AmBase Corp.*, 337 F.3d 237, 247 (2d Cir. 2003). "In addition, the Second Circuit has explained, an evidentiary ruling that is an abuse of discretion is, however, only reversible if it also affects a party's substantial rights." *In re Bernard L. Madoff Inv. Sec., LLC*, 605 B.R. 570, 582 (S.D.N.Y. 2019), *aff'd sub nom. In re Bernard L. Madoff Inv. Sec. LLC*, 830 F. App'x 669 (2d Cir. 2020) (citing *Schering Corp. v. Pfizer Inc.*, 189 F.3d 218, 224 (2d Cir. 1999)).

**Discussion**

On appeal of the MSJ Order, Appellants argue that: (1) the Bankruptcy Court erred in its threshold evidentiary rulings, to include its determinations regarding law of the case and the Debtor and Ms. Guo's invocations of the Fifth Amendment; (2) without the evidence and other considerations upon which the Bankruptcy Court wrongly relied, the Trustee cannot meet his burden on summary judgment; and (3) regardless, the evidentiary record fails to establish that Greenwich Land is the Debtor's alter ego, or that the Debtor equitably owns Greenwich Land. In response, the Trustee argues that: (a) the Bankruptcy Court did not abuse its discretion in ruling

on the parties' threshold evidentiary objections; and (b) the Bankruptcy Court did not err in concluding, on the basis of the undisputed facts, that Greenwich Land is the Debtor's alter ego and that the Debtor equitably owns Greenwich Land. The Court agrees with the Trustee.[5]

Threshold Findings

Before the Court can evaluate the Bankruptcy Court's determinations on the merits, it must first assess Judge Manning's threshold findings. At the outset, and prior to setting forth the undisputed facts upon which the summary judgment determination was made, the Bankruptcy Court overruled various of Appellants' objections regarding: (1) the admissibility of the Trustee's evidence; (2) the Trustee's purported application of *res judicata* and his reliance on prior determinations made by the Bankruptcy Court in other adversary proceedings related to the Debtor's broader Chapter 11 case; and (3) the Trustee's request that the Bankruptcy Court consider the Debtor and Ms. Guo's invocations of their Fifth Amendment right against self-incrimination. The Bankruptcy Court also sustained the Trustee's objection to Appellants' reliance on Ms. Ngok's prior, conflicting Rule 2004 testimony. The foregoing evidentiary rulings must be reviewed under an abuse of discretion standard, *see Manley*, 337 F.3d at 247, and for the reasons discussed below, the Court finds that the Bankruptcy Court did not abuse its discretion in any of these threshold determinations.

---

[5] Appellants further contend that the Bankruptcy Court does not have constitutional authority to enter a final judgment in this case, and that, in nevertheless issuing the MSJ Order and "divest[ing] Mrs. [Ngok] of her home," "the Bankruptcy Court usurped the District Court's role in ruling on the motion to withdraw the reference and deprived Appellants of their constitutional right to have the action decided in an Article III court." Appellant Br. at 24. This argument is unpersuasive for several reasons. As an initial matter, the Court has now denied Appellants' Motion for Withdrawal of the Reference, and therein concluded that the Trustee's claims in this Adversary Proceeding are "core." *See In re Kwok*, Case No. 3:23-CV-62 (KAD), ECF No. 26, at 6–7. The Court additionally indicated that it would, in due course, review the instant appeal *de novo*. And indeed, the Court has herein done so, where appropriate. Accordingly, any genuine concerns regarding Appellants' purported right to have this action decided in an Article III court are misplaced, and indeed, a "red herring." *See* Trustee Br. at 42. Additionally, the Court observes that on August 20, 2024, Appellants voluntarily withdrew their Motion to Stay Pending Appeal and jointly stipulated to the enforcement of the MSJ Order. As such, Appellants' complaints regarding the ensuing sale of the Taconic Road Property appear to have resolved by agreement.

*Evidentiary Rulings*

Having reviewed each of the evidentiary rulings below, this Court finds that the Bankruptcy Court properly exercised its discretion when overruling Appellants' objections to the Trustee's evidence on authenticity, privilege, personal knowledge, and/or relevance grounds.

As to authenticity, though Appellants are correct that evidence relied upon at summary judgment must be *presentable* in an admissible form at trial, *see* Fed. R. Civ. P. 56(c)(2), the Bankruptcy Court accurately observed that "material relied on at summary judgment need not be admissible *in the form presented*. Rather, so long as the evidence in question 'will be presented in admissible form at trial,' it may be considered on summary judgment." *See* MSJ Order at 11 (quoting *Smith v. City of New York*, 697 F. App'x 88, 89 (2d Cir. 2017) (summary order) (citing *Santos v. Murdock*, 243 F.3d 681, 683 (2d Cir. 2001) (*per curiam*)). And indeed, the Bankruptcy Court proceeded to set forth measured explanations as to why each of the contested exhibits would or could be presented in an admissible form at trial. *See* MSJ Order at 12–14. On appeal, Appellants do not challenge the Bankruptcy Court's assessment as inconsistent with *Smith* or the Federal Rules of Evidence. Rather, they argue that the Barron Declaration was insufficient to authenticate the Trustee's exhibits, and otherwise assert that "the Trustee made no showing that the documents would be admissible at trial." *See* Appellant Br. at 33–34. But these arguments are misplaced. Indeed, insofar as the Barron Declaration was neither a primary authentication declaration nor a declaration about the factual substance of the Trustee's exhibits, Mr. Barron's personal knowledge (or lack thereof) regarding the creation or content of those exhibits is immaterial to their authenticity. Beyond that, Appellants offer only conclusory assertions as to the inadmissibility of the Trustee's exhibits, which are entirely unpersuasive, given the Bankruptcy Court's thorough and well-reasoned analysis.

Next, the Court has little difficulty concluding that the Bankruptcy Court did not abuse its discretion in finding that Appellants had not met their burden of establishing an attorney-client privilege in connection with Attorney Conboy's testimony. Indeed, Appellants failed to cite any purportedly privileged communications in Attorney Conboy's testimony regarding Greenwich Land. *See United States v. Mejia*, 655 F.3d 126, 132 (2d Cir. 2011) ("The party asserting the privilege . . . bears the burden of establishing" that the communications to be protected are "communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal advice"). On appeal, Appellants do not meaningfully argue otherwise.[6]

Lastly, the Court concludes that the Bankruptcy Court properly exercised its discretion in overruling Appellants' challenge to Mr. de Neree and Attorney Conboy's personal knowledge of Greenwich Land's ownership, funding, etc., as well as the relevance of their testimony regarding Greenwich Land's real estate transactions. As they did in the Adversary Proceeding, Appellants misconstrue the purpose for which the testimony of Mr. de Neree and Attorney Conboy was offered. This testimony was not, as Appellants suggest, offered to establish that the Debtor was a record member or officer of Greenwich Land, or to establish the source of the funds used to purchase the Ferncliff Property and/or the Taconic Road Property. Rather, the testimony was put forward as evidence of the Debtor's alleged use and control of Greenwich Land, based upon Mr. de Neree and Attorney Conboy's first hand observations of Greenwich Land's real estate transactions and the Debtor's substantial involvement therein, as well as Ms. Ngok's lack of

[6] Beyond their conclusory—and thus, unpersuasive—argument that "[t]he Court should disregard the deposition testimony of [Attorney] Conboy, because she was counsel for Greenwich Land and any conversations with Greenwich Land are privileged," Appellants only contend that "it is [Greenwich Land]'s privilege and the Trustee could not accomplish a waiver by deposing Conboy outside the presence of [Greenwich Land]." *See* Appellant Br. at 13, 37. But any notion of a privilege waiver ignores Appellants' threshold burden of establishing that the attorney-client privilege applies in the first instance, which they have not met. Moreover, the Court observes that in their reply brief on appeal, Appellants fail to address the Trustee's arguments on this issue.

involvement. The Bankruptcy Court did not abuse its discretion in permitting this very relevant and probative testimony on summary judgment.

*Law of the Case*

Appellants also challenge the Bankruptcy Court's application of the law of the case doctrine; specifically, Judge Manning's reliance in this case on her own determinations in other related adversary proceedings that Golden Spring and HK USA are alter egos of the Debtor, and that Saraca is related to the Debtor's media ventures. The Court is not persuaded that the Bankruptcy Court abused its discretion in this regard, much less "flipped the law of the case doctrine on its head," as Appellants assert. *See* Appellant Br. at 25. "Under the law of the case doctrine, a decision on an issue of law made at one stage of a case becomes binding precedent to be followed in subsequent stages of the same litigation." *In re PCH Assocs.*, 949 F.2d 585, 592 (2d Cir. 1991). As Appellants concede, courts have discretion when deciding whether or not to apply the law of the case doctrine, which is broadly regarded as "an amorphous concept." *Arizona v. California*, 460 U.S. 605, 618 (1983). Moreover, as relevant here, "courts have held that the law-of-the-case doctrine 'applies to different adversary proceedings filed within the same main bankruptcy case.'" *In re Motors Liquidation Co.*, 590 B.R. 39, 62 (S.D.N.Y. 2018), *aff'd*, 943 F.3d 125 (2d Cir. 2019), and *aff'd*, 792 F. App'x 28 (2d Cir. 2019), and *aff'd*, 957 F.3d 357 (2d Cir. 2020) (citing *In re Moise*, 575 B.R. 191, 205 (Bankr. E.D.N.Y. 2017)); *In re Montagne*, No. 08-1024, 2010 WL 271347, at *6 (Bankr. D. Vt. Jan. 22, 2010) ("Since different adversary proceedings in the same main case do not constitute different 'cases,' it would follow that the law of the case doctrine as articulated in one adversary proceeding would apply in another adversary proceeding filed in the same case.")). Further, Appellants do not dispute, as observed by Judge Manning in the MSJ Order, that during the discovery period in this Adversary Proceeding,

Appellants failed to challenge the factual basis for the Bankruptcy Court's prior findings as to Golden Spring, HK USA, and Saraca. Thus, Appellants *did* have a full and fair opportunity to litigate the issues decided in prior adversary proceedings; yet, they chose not to do so. For these reasons, the Bankruptcy Court's application of the law of the case was not an abuse of discretion.[7] *See In re Sims*, 534 F.3d at 132.

*Fifth Amendment*

Appellants claim that the Bankruptcy Court improperly drew adverse inferences from the Debtor and Ms. Guo's invocations of the Fifth Amendment, and relied on such inferences to make ultimate findings of fact in support of the MSJ Order. *See* Appellant Br. at 32. Once again, Appellants mischaracterize the MSJ Order. The Bankruptcy Court acknowledged that it is improper at summary judgment to draw an adverse inference on the basis of an invocation of Fifth Amendment right against self-incrimination. *See* MSJ Order at 18; *see also Stichting ter Behartiging van de Belangen van Oudaandeelhouders in het Kapitaal van Saybolt Int'l B.V. v. Schreiber*, 407 F.3d 34, 55 (2d Cir. 2005). And indeed, when considering the Debtor and Ms. Guo's invocations of the Fifth Amendment, Judge Manning explicitly did not draw any such inferences. Rather, she observed that the invocations had "limited relevance," and were used only for the purpose of establishing that the Debtor and Ms. Guo *did not dispute* the relevant testimony of Ms. Ngok, Attorney Conboy, and Mr. de Neree regarding, *inter alia*, the Debtor's dominion and control over Greenwich Land (and Ms. Ngok's lack thereof). *See* MSJ Order at 18–19. The Bankruptcy Court did not, as Appellants suggest, rely on the invocations as evidence (directly or by inference) that the Debtor controls and/or beneficially owns Greenwich Land, HDNY, or ACA

[7] To the extent the Bankruptcy Court took judicial notice of its prior findings as to Golden Spring, HK USA, and Saraca not for the truth of those determinations, but merely for the fact that such findings were made, Appellants do not appear to have any objection.

Capital; that the Debtor has control over Ms. Wang, Mr. Krasner, and Mr. Podkaskie; or that the Debtor directed the transfer of funds to/from Greenwich Land in connection with various real estate transactions.[8] As such, the Bankruptcy Court did not abuse its discretion in considering the Debtor and Ms. Guo's invocations of the Fifth Amendment for the limited purpose identified in the MSJ Order.

*Rule 2004 Testimony*

In assessing the record evidence, the Bankruptcy Court declined to consider Ms. Ngok's Rule 2004 testimony from a prior unrelated adversary proceeding that her son, Mr. Guo, created Greenwich Land and purchased the Ferncliff Property and Taconic Road Property for Ms. Ngok. This prior testimony conflicted with Ms. Ngok's testimony in this Adversary Proceeding. Although noted in their brief on appeal, Appellants advance no argument that the Bankruptcy Court erred in this regard. However, in their reply brief, Appellants explicitly argue that the Bankruptcy Court erred "in not considering [Ms. Ngok]'s prior testimony regarding her son." Appellant Reply at 8–9. While it is not generally permissible to raise issues for the first time in a reply brief, *see Knipe v. Skinner*, 999 F.2d 708, 711 (2d Cir. 1993), the Court concludes that the Bankruptcy Court did not abuse its discretion in sustaining the Trustee's objection to Ms. Ngok's prior testimony. *See Manley*, 337 F.3d at 247.

---

[8] Appellants further claim that the Debtor and Ms. Guo's invocations of the Fifth Amendment should not be considered insofar as the Debtor and Ms. Guo had no personal knowledge of the relevant issues. This argument is frivolous. Indeed, the summary judgment record is replete with evidence indicating, *inter alia*, that the Debtor had extensive awareness of and involvement in Greenwich Land's real estate transactions, and had close relationships with all of Greenwich Land's nominal owners, including his own wife. The record evidence also indicates that entities owned and/or associated with Ms. Guo received and/or transferred funds to Greenwich Land, and that Ms. Guo herself spent money from Greenwich Land's Bento Account. Thus, any suggestion that the Debtor and Ms. Guo lacked "personal knowledge of the relevant issues" is absurd.

Alter Ego

Turning to the merits, the Court finds that the Bankruptcy Court did not err in concluding as a matter of law that Greenwich Land is the Debtor's alter ego. On appeal, Appellants do not contest the Bankruptcy Court's reliance on applicable Delaware law or the general framework it sets out regarding alter ego determinations. Rather, they broadly challenge the sufficiency of the evidence adduced on summary judgment. In response, the Trustee argues that the record evidence supports the Bankruptcy Court's alter ego determination, and that Appellants have otherwise "proffered no evidence that might come close to establishing a genuine dispute of material fact preventing summary judgment on the Trustee's claims." Trustee Br. at 49. The Court agrees with the Trustee.

*Applicable Law*

Under Delaware law, alter ego or veil piercing is a doctrine of equity, and "has been described as a form of 'derivative liability.'" *In re Tronox Inc.*, 549 B.R. 21, 43–44 (S.D.N.Y. 2016) (citing *United States v. Bestfoods*, 524 U.S. 51, 65 (1998)).[9] Alter ego entails two inquiries: (1) whether the corporate entity whose form is to be disregarded is so dominated and controlled by its alleged alter ego that the corporate entity and its alter ego are, in fact, a single economic unit; and (2) whether the corporate form to be disregarded causes fraud or some similar injustice. *See In re Firestar Diamond, Inc.*, 654 B.R. 836, 875 (Bankr. S.D.N.Y. 2023) (applying Delaware law). In assessing the alter ego's dominion and control over the corporate entity, courts consider a number of factors—none of which are dispositive on their own—including: (i) whether the company was adequately capitalized; (ii) whether the company was solvent; (iii) whether corporate

[9] "The terms 'alter ego theory' and 'piercing the corporate veil' are used interchangeably in Delaware law." *Winner Acceptance Corp. v. Return on Capital Corp.*, No. 3088-VCP, 2008 WL 5352063, at *5 n. 32 (Del.Ch. Dec. 23, 2008) (citation omitted).

formalities were observed; (iv) whether the dominant shareholder siphoned company funds; and (v) whether, in general, the company functioned as a facade for the dominant shareholder. *See Manichaean Cap., LLC v. Exela Techs., Inc.*, 251 A.3d 694, 706–07 (Del. Ch. 2021) (internal citations omitted); *see also Blair v. Infineon Tech., AG*, 720 F. Supp. 2d 462, 470–71 (D. Del. 2010). As to the fraud or similar injustice component, the Trustee "need not prove that there was actual fraud but must show a mingling of the operations of the entity and its owner plus an 'overall element of injustice or unfairness.'" *NetJets Aviation, Inc. v. LHC Commc'ns, LLC*, 537 F.3d 168, 176 (2d Cir. 2008). Likewise, the Trustee "need not prove that the corporation was created with fraud or unfairness in mind. It is sufficient to prove that it was so used." *Id.* at 177.

Additionally, in specifically considering whether to reverse pierce the corporate veil (as the Trustee asserts here), courts consider both the traditional veil piercing factors discussed above, as well as additional factors reflecting the concern that creditors and other stakeholders of the entity might have their legitimate expectations thwarted. *See Manichaean*, 251 A.3d at 714–15.

*The Debtor and Greenwich Land*

Applying Delaware's alter ego framework, the Court concludes that there is no genuine issue of material fact that Greenwich Land is the alter ego of the Debtor, and that reverse veil piercing is appropriate under the circumstances. Significant to the Court's conclusion are the following undisputed facts:

- Ms. Ngok, the nominal owner, had no knowledge of Greenwich Land, its officers, or its operations, to include Greenwich Land's financial transactions and bank accounts;
- By contrast, the Debtor funded and otherwise controlled Greenwich Land's purchase of both the Ferncliff Property and the Taconic Road Property, as well as Greenwich Land's sale of the Ferncliff Property and the proceeds therefrom, which were subsequently used for various purposes unrelated to Greenwich Land's purported business;
- Mr. Krasner, as an officer of Greenwich Land, operated as the Debtor's agent, and was heavily involved in Greenwich Land's real estate transactions;

- Mr. Krasner, as well as Ms. Wang and Mr. Podhaskie, have held positions at other entities associated with the Debtor, including his adjudged alter ego, Golden Spring;
- Greenwich Land shares its business address with other entities associated with the Debtor, including his adjudged alter ego, Golden Spring;[10]
- Greenwich Land's assets were used to benefit entities and/or persons other than itself;
- Greenwich Land received large transfers of funds to finance its real estate transactions, including from entities and/or bank accounts tied to the Debtor, his family members, and his associated entities; and
- The Debtor, as well as his associates, family members, and associated entities, all siphoned funds from Greenwich Land, including through luxury purchases, counsel fees, and other expenses unrelated to Greenwich Land's purported business purposes.

In the absence of any countervailing evidence, these undisputed facts establish that each of the *Manichaean* factors favors reverse veil piercing, and that an overall element of injustice or unfairness is present here insofar as Greenwich Land was used to shield the Debtor's assets from his creditors. Additionally, there are no innocent shareholders of Greenwich Land who will be adversely impacted by reverse veil piercing, nor would reverse veil piercing otherwise unfairly harm the legitimate expectations of Greenwich Land's creditors. Rather, to the extent the Taconic Road Property has been brought into the Estate, the Debtor's creditors will gain additional protection through reverse veil piercing. In short, the Debtor unquestionably exercised dominion and control over Greenwich Land; and this dominion and control contributed to shielding Greenwich Land's assets from the Debtor's creditors and the Estate.

Appellants take issue with whether the individual facts relied upon support the Bankruptcy Court's conclusion. In essence, Appellants ask the Court to evaluate each fact in a vacuum. But this construction of Delaware alter ego law is wrong. Indeed, given the equitable nature of alter

[10] Though determined subsequent to the MSJ Order, the Court nevertheless observes that HDNY—whose $1.5 million transfer to Greenwich Land's Capital One account funded the purchase of the Ferncliff Property—has now also been adjudged as the Debtor's alter ego, and shares the same business address. *See Despins v. Lamp Capital LLC, et al.*, No. 23-AP-5023 (Bankr. D. Conn. June 30, 2025), ECF No. 138. An appeal of such determination is presently pending before this Court. *See In re Kwok*, No. 3:25-CV-1131 (KAD).

ego claims, courts apply a holistic approach to assessing whether the *Manichaean* factors, *in combination*, demonstrate that the corporate entity and its alter ego are, in fact, a single economic unit. *See NetJets Aviation, Inc.*, 537 F.3d at 177 ("numerous factors come into play when discussing whether separate legal entities should be regarded as alter egos, . . . and the legal test for determining when a corporate form should be ignored in equity cannot be reduced to a single formula that is neither over-nor under-inclusive.") (citations and alterations omitted). Standing alone, Ms. Ngok's lack of control over Greenwich Land's financial transactions, or Greenwich Land's shared business address with Golden Spring, might be insufficient to support reverse veil piercing. Likewise, the involvement of Greenwich Land's officers (*e.g.*, Mr. Krasner, Ms. Wang, and Mr. Podhaskie) with other Debtor-associated entities does not itself demonstrate that the Debtor dominated Greenwich Land. Nevertheless, *in combination*, these (and numerous other) undisputed facts fit neatly within the framework articulated by the Delaware Chancery Court in *Manichaean*.

In light of the foregoing, the Bankruptcy Court's order granting summary judgment on the Trustee's first claim is AFFIRMED.

<u>Beneficial Ownership</u>

The Court next concludes that the Bankruptcy Court properly concluded as a matter of law that the Debtor is the beneficial owner of Greenwich Land. On this issue, in addition to incorporating their above-discussed (and rejected) arguments, Appellants principally argue that the Bankruptcy Court erred in its reliance on, and application of, the *Dordevic* factors. Appellants additionally argue that the Bankruptcy Court "conducted no independent analysis of [the *Dordevic*] factors." The Court is not persuaded.

As an initial matter, the Bankruptcy Court did not err in its consideration of the *Dordevic* factors. In *Dordevic*, the bankruptcy court "appl[ied] the common-law factors generally applied by federal courts to determine the existence of a nominee relationship," "[b]ecause there is no established test for this question under Florida law." 633 B.R. at 557. Other courts have similarly looked to federal law for guidance where the law of the forum state does not have a bright-line test for determining nominee ownership. *See id.* at 557–58 (collecting cases from Florida, Virginia, and Texas). Here, the parties do not dispute that while Delaware recognizes beneficial ownership claims, it has no accompanying bright-line test.[11] As such, the Bankruptcy Court did not err in applying the common-law factors discussed in *Dordevic*.

Nor did the Bankruptcy Court err in its analysis of the *Dordevic* factors. The court in *Dordevic* explained that "courts consider several factors in determining whether a titleholder is actually serving as a nominee for the benefit of another, including whether: (1) there is a close personal relationship between the nominee and the transferor; (2) the nominee paid little or no consideration for the property; (3) the parties placed the property in the name of the nominee in anticipation of collection activity; (4) the parties did not record the conveyance; and (5) the transferor continues to exercise dominion and control over the property." 633 B.R. at 558 (citing *United States v. Szaflarski*, 614 F. App'x 836, 838–39 (7th Cir. 2015) (internal alterations and quotation marks omitted)). Regarding the first factor, the Bankruptcy Court observed that the Debtor's close relationship with the nominee (*i.e.*, his wife) is uncontested. Then, as to the second, third, and fifth factors, the Bankruptcy Court incorporated by reference its extensive prior

[11] Instead, Appellants argue that *Dordevic* is inapplicable because it is factually and procedurally inapposite. But the Court agrees with the Trustee that the specific facts at issue in *Dordevic* are immaterial. Indeed, the Bankruptcy Court relied on *Dordevic* not due to its factual similarity to the instant Adversary Proceeding, but rather, due to the five-factor common law test that it sets out regarding beneficial ownership claims. Thus, Appellants' assertions in this regard are unavailing.

Case: 25-2742, 02/11/2026, DktEntry: 37.1, Page 151 of 153

discussion regarding the alter ego analysis, specifically as to: (a) Ms. Ngok's complete lack of knowledge and responsibility for the funding of Greenwich Land and its real estate transactions; (b) the Debtor's dominion and control over Greenwich Land; and (c) Greenwich Land's corporate form being used to shield assets from the Debtor's creditors, thereby frustrating collection efforts. In light of this, Appellants' assertion that the Bankruptcy Court "summarily conclude[ed]" that the Debtor beneficially owned Greenwich Land is again, a mischaracterization of the MSJ Order.[12] Rather, the Bankruptcy Court thoroughly examined the record evidence and the undisputed facts and accurately concluded that four of the five *Dordevic* factors support the Debtor's equitable ownership of Greenwich Land. For these reasons, the Bankruptcy Court's order granting summary judgment on the Trustee's second claim is AFFIRMED.[13]

---

[12] Appellants do not cite to any authority barring or even criticizing the practice of incorporating by reference prior analysis. And this argument is especially weak in light of Appellants' own repeated incorporation by reference of its prior arguments, to include their evidentiary objections.

[13] Appellants also argue that the Trustee lacks standing to prosecute his alter ego and beneficial ownership claims and that the Bankruptcy Court erred in concluding that "Section 544 of the Bankruptcy Code provides bankruptcy trustees with standing to bring reverse veil-piercing claims on behalf of creditors at large." Appellant Br. at 42. However, the Court need not determine this issue, because Appellants failed to raise this argument in the proceedings below. Indeed, "[g]enerally, a district court will not address arguments that were not presented to the bankruptcy court." *In re IIG Glob. Trade Fin. Fund, Ltd.*, No. 23-CV-4350 (ER), 2024 WL 1134734, at *10 (S.D.N.Y. Mar. 15, 2024) (citing *Universal Church v. Geltzer*, 463 F.3d 218, 228 (2d Cir. 2006)); *In re Salander*, 503 B.R. 559, 569 (S.D.N.Y. 2013) ("[I]ssues not raised in bankruptcy court cannot be raised in first instance on appeal."); *see also Mhany Mgmt. v. Inc. Vill of Garden City & Garden City Bd. of Trustees*, 985 F. Supp. 2d 390, 411 (E.D.N.Y. 2013) ("Statutory standing arguments, unlike constitutional standing arguments, can be waived.") (citation omitted). The Court further observes that Appellants do not refute the Trustee's waiver argument in their reply brief, and in fact, do not address the issue of standing at all.

**Conclusion**

For all of the foregoing reasons, the Court **AFFIRMS** in its entirety the order of the Bankruptcy Court granting summary judgment in favor of the Trustee. Accordingly, the Clerk of Court is directed to enter judgment in favor of the Trustee and close this case.

**SO ORDERED** at Bridgeport, Connecticut, this 11th day of September 2025.

*/s/ Kari A. Dooley*
KARI A. DOOLEY
UNITED STATES DISTRICT JUDGE

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

IN RE: KWOK,
DEBTOR

BANKR. NO. 22-50073, 23-05005
CIVIL NO. 3:24-CV-01185 (KAD)

GREENWICH LAND, LLC, HING CHI NGOK,
Appellants,

v.

LUC A. DESPINS,
*Chapter 11 Trustee*
Appellee.

**JUDGMENT**

This action having come before the Court on a notice of appeal from Bankruptcy Court before the Honorable Kari A. Dooley, United States District Judge; and the Court having considered the full record of the case including applicable principles of law; and having entered an order on September 11, 2025, affirming the Bankruptcy Court;

It is therefore;

ORDERED, ADJUDGED and DECREED that Judgment is entered in favor of the Appellee and the case is closed.

Dated at Bridgeport, Connecticut, this 29th day of September 2025.

DINAH MILTON KINNEY, Clerk
By /s/ Kristen Gould
Deputy Clerk

EOD: 9/29/2025